# EXHIBIT B

# Jefferies Engagement Letter

# Engagement Letter

June 15, 2009

**White Energy Holding Company**
5005 LBJ Highway, Suite 1400
Dallas, TX 75244

Attn:   David M. Diwik
        Chief Executive Officer

Re: Advisory Services

This agreement (the "Agreement") confirms that Jefferies & Company, Inc. ("Jefferies") has been engaged by White Energy, Inc. and its debtor affiliates (collectively, the "Debtors") to act as exclusive financial advisor to the Debtors in their bankruptcy cases (the "Cases").

1.   Services.

   (a)   In connection with the Cases, Jefferies will perform the following financial advisory services for the Debtors:

   (i)   become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, assets, financial condition and prospects of the Debtors;

   (ii)   advise the Debtors on the current state of the "restructuring market";

   (iii)   assist and advise the Debtors in developing, examining, analyzing, and where appropriate implementing, any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization (a "Plan"), a sale of all or a material portion of the Debtors' assets or equity, including under section 363 of chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), and including any "credit bid" made pursuant to section 363(k) of the Bankruptcy Code (a "Credit Bid"), a liquidation, or otherwise (the "Restructuring"), including the valuation of any securities that may be issued in connection therewith; and

   (iv)   render such other financial advisory services as may from time to time be agreed upon by the Debtors and Jefferies, including, but not limited to, providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.

   (b)   In addition, the Debtors hereby retain Jefferies and Jefferies shall have the right to act as sole and lead manager, bookrunner, placement agent, arranger,

underwriter and/or initial purchaser, as the case may be, in connection with the structuring, issuance, sale or placement (any or all of the foregoing, the "Financing", and each of a Financing and a Restructuring, individually and collectively, a "Transaction"), whether in one or more public or private transactions, of (i) debt securities or bank debt of the Debtors and (ii) preferred or common equity or equity-linked securities of the Debtors (collectively, "Equity Securities") (any or a combination of debt of the Debtors and/or "Instruments") during the term of this engagement.

Notwithstanding the foregoing, it is understood and agreed that Jefferies reserves the right not to participate in any proposed Financing, and the foregoing is not an agreement by Jefferies to underwrite, place or purchase any Instruments. In connection with any Financing in which Jefferies elects to participate, the Debtors shall enter into an underwriting agreement, placement agency agreement, credit agreement or purchase agreement, as applicable, with Jefferies, which agreement shall be based on Jefferies' customary form for the applicable Financing (a "Definitive Agreement"). Jefferies shall have no obligation hereunder to act as underwriter, placement agent, arranger or initial purchaser with respect to any Instruments unless and until Jefferies has executed a Definitive Agreement. For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each shall be deemed to be a Financing for the purposes of this Agreement.

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2. Cooperation.

(a) The Debtors will furnish to Jefferies all materials and information regarding the business and financial condition of the Debtors which the Debtors believe are relevant to any Transaction or other transaction contemplated herein or which Jefferies requests (all such information gathered or furnished being the "Information"). The Debtors shall advise Jefferies promptly of the occurrence of any event or any other change in fact or circumstance prior to the closing of any Transaction or other transaction contemplated herein upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b) The Debtors acknowledge that Jefferies (i) will be relying on information and data provided by the Debtors and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data and (iii) has not made, and will not make, any physical inspection or appraisal of the properties or assets of the Debtors and with respect to any financial forecasts that may be furnished to or discussed with Jefferies by the Debtors, Jefferies will assume that such forecasts have been reasonably prepared and reflect the best then currently available

estimates and judgments of the Debtors' management as to the expected future financial performance of the Debtors.

(c) In connection with the Financing, the Debtors shall prepare with Jefferies' assistance, a registration statement or confidential offering or placement memorandum to use in connection with the Financing (the "Offering Document") and such other documents as are necessary for the Financing, in such form as Jefferies and the Debtors determine is appropriate to market the Instruments. The Debtors agree that the Offering Document shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading. The Debtors further agree that it will (i) provide Jefferies as soon as practicable but in any event no later than is reasonable and customary for the applicable Financing, with a complete initial draft of the Offering Document, which contains all financial statements and other data to be included therein (including all audited financial statements, all unaudited financial statements (which shall have been reviewed by the independent accountants for the Debtors as provided in Statement on Auditing Standards No. 100) and all appropriate pro forma financial statements prepared in accordance with, or reconciled to, generally accepted accounting principles and practices in the United States and prepared in accordance with Regulation S-X under the Securities Act of 1933, as amended, and all other information and data (including selected financial data) that the Securities and Exchange Commission would require in a registered offering of any securities in the Financing or that would be necessary for Jefferies to receive customary "comfort" (including "negative assurance" comfort) from independent accountants in connection with the Financing) (collectively, the "Required Financial Information"), and (ii) provide Jefferies, if applicable, as soon as practicable but in any event no later than is reasonable and customary for financings of this type, with a complete printed preliminary Offering Document suitable for use in a customary "road show" relating to the Financing (including the Required Financial Information). The Debtors also agree that, if applicable, it will promptly commence the preparation of materials for a presentation to Standard & Poor's Rating Group and Moody's Investors Service, Inc. for a rating on any applicable Instruments.

3. Use of Advice, Name, etc.

(a) Jefferies' advice is solely for the use and information of the Debtors, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person, including, but not limited to, any official committee appointed in these Cases or any member of any such committee, or any security holder, employee or creditor of the Debtors, and may not be used or relied upon for any other purpose.

(b) The Debtors agree that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and which approval, if given, will expire immediately upon the termination of Jefferies' services hereunder. No statements made

or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Debtors without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure). For the avoidance of doubt, the Debtors may reference Jefferies' advice as reasonably necessary in connection with negotiating and implementing a potential Transaction.

(c) The Debtors acknowledge that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Debtors is solely contractual in nature and that Jefferies does not owe the Debtors, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Jefferies and the Indemnified Persons (as defined in Schedule A hereto) shall not be deemed agents or fiduciaries of the Debtors, any official committee appointed in the Cases, any member of any such committee, or any other security holder, employee or creditor of the Debtors, and will not have the authority to legally bind any of the foregoing.

4. Compensation. In payment for services rendered and to be rendered hereunder by Jefferies, the Debtors agree to pay or cause to be paid to Jefferies in cash the following:

(a) A monthly fee (the "Monthly Fee") equal to $175,000 per month until the expiration or termination of this Agreement. The first Monthly Fee will begin accruing upon the execution of this Agreement but won't be payable until approved by the bankruptcy court. Each subsequent Monthly Fee shall be payable on each monthly anniversary thereafter. Fifty-percent of the Monthly Fees actually paid to Jefferies in excess of $1,000,000 will be credited against the Transaction Fee.

(b) Promptly upon the consummation of a Restructuring including, without limitation, the consummation of any sale conducted pursuant to section 363 of the Bankruptcy Code or otherwise (including any Credit Bid) and/or confirmation of a Plan, a transaction fee paid at closing (the "Transaction Fee") in an amount as follows:

If the Transaction Value (as defined below) implies a price per gallon[1] (the "Implied Price Per Gallon") equal to $0.55 per gallon or less, a fee of $1,000,000. If the Transaction Value is greater than $0.55 per gallon the Transaction Fee will be computed as follows: (i) from $0.55 to $0.65 per gallon the fee will increase ratably between $1,000,000 to $2,500,000, plus (ii) 2.5% of any incremental increase in the Implied Price Per Gallon above $0.65 per gallon.

"Transaction Value" shall mean the greater of (A) the valuation of the Debtors as implied or set forth in a Plan and (B) aggregate amount of cash and the fair market value

---

[1] Amounts included within the fee schedule are based upon total capacity of 260 million gallons.

(determined as set forth below) of any securities or other property paid or payable directly or indirectly by or to the Debtors or any of its securityholders or creditors in connection with a Restructuring including, without limitation, (i) any dividends paid or any stock redemptions outside of the normal course of business made in connection with the Restructuring, (ii) all indebtedness for borrowed money and other liabilities and preferred stock directly or indirectly assumed, refinanced, retired or extinguished in connection with the Restructuring (and all payments made and expenses incurred in connection therewith, including, without limitation, prepayment premiums and defeasance costs), (iii) all amounts paid or other value ascribed in the Restructuring (including the form of "rollover" options or warrants) in respect of issued warrants, options or other convertible securities in connection with the Restructuring, the value of which shall be based on the difference between the acquisition price and exercise or conversion price of such securities, (iv) the full amount of any consideration placed in escrow or otherwise held back to support the Debtors' (or their stockholders') indemnification or similar obligation under the definitive documents with respect to the Restructuring, (v) the present value (as agreed to in good faith by the parties) of any contingent consideration to be paid in the future, and (vi) the value of any retained interest in the Debtors, based on the per-share value paid in the Restructuring if less than 100% of the equity of the Debtors is transferred in the.

For purposes of computing the Transaction Fee, non-cash consideration shall be valued in accordance with the definitive agreement for the Restructuring, or if such valuation is not set forth in such definitive agreement, shall be valued as follows: (i) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date which is two business days prior to the date of announcement of the Restructuring and (ii) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Debtors and Jefferies.

    (c)    Upon the consummation of a Financing, a fee (the "Financing Fee") in an amount equal to: (i) 6.0% of the aggregate gross proceeds from the purchase or placement of any Equity Securities; plus (ii) 1.5% of the aggregate principal amount of (or, as applicable, maximum amount available under) any debt raised with a first lien on the Debtors' assets; plus (iii) 2.5% of the aggregate principal amount of (or, as applicable, maximum amount available under) any debt raised with a second lien on the Debtors' assets; plus (iv) 3.5% of the aggregate principal amount of (or, as applicable, maximum amount available under) any other debt raised, including, but not limited to, high-yield notes, mezzanine notes or term loans. The fee for any Financing with the current equity holders or their affiliates, set forth on Schedule B hereto, will be done at two thirds of the fees outlined above with respect to such persons.

    (d)    In the event that a Transaction is both a Financing and a Restructuring, Jefferies shall be entitled to the greater of the fee set forth in subsection 4(b) or 4(c) hereof (but not both fees), and in no event will such fees be in excess of $4,000,0000.

(e)   The Debtors shall use their best efforts to provide for the payment in full, in cash, of any fees and expenses described in this Section 4 in any plan of reorganization submitted to the Bankruptcy Court (as defined below) for confirmation.

The Debtors acknowledge that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Debtors further acknowledge that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Debtors in connection with any Transaction and that the value to the Debtors of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder, including the Monthly Fee, Transaction Fee, and/or any other compensation due hereunder, is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.   Expenses. In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction or other transaction contemplated herein occurs, the Debtors shall reimburse Jefferies for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.   Termination. Jefferies' engagement hereunder will run from the effective date of this Agreement as approved by a final order of the Bankruptcy Court (as defined below) that is acceptable to Jefferies in its sole and absolute discretion (the "Effective Date") to the earlier of the date on which (A) each of these Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by either Jefferies or the Debtors on thirty days' written notice to the other. Upon termination of this Agreement, the Debtors shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 2-8 and 10-17 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and representatives of the Debtors, any official committee appointed in the Cases, Jefferies, the Indemnified Persons, and any chapter 7 trustee appointed in the Cases. Following any termination of this Agreement, Jefferies shall remain entitled to all applicable fees described in Section 5 of this Agreement if an agreement for a

Transaction is entered into prior to that date which is twelve months from of the date of any such termination of this Agreement and such agreement results in a Transaction. Any such fee shall be payable upon the closing of any such Transaction

7.  Indemnification, etc. As further consideration under this Agreement, the Debtors and their estates shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8.  Bankruptcy Court Approval. The Debtors shall use their best efforts to obtain prompt approval of this Agreement, pursuant to sections 327, 328 and 1103 of the Bankruptcy Code, from the bankruptcy court presiding over the Cases (the "Bankruptcy Court"). Such approval shall provide for the retention of Jefferies *nunc pro tunc* to the commencement date of the Cases, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the Debtors' acknowledgements and obligations set forth in Schedule A), shall bind the Debtors to such terms and conditions, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Debtors agree that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agree that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

9.  Exclusivity.

    (a)  The Debtors agree that they will not engage any other person to perform any financial or similar consulting services with respect to any potential Transaction or other transaction contemplated herein. If the Debtors are contacted by any person concerning a potential Transaction or other transaction contemplated herein, the Debtors will promptly inform Jefferies of such inquiry and all relevant details thereof.

    (b)  Notwithstanding the provisions of subsection (a) above, the Debtors may appoint a joint-lead manager, joint-lead bookrunner, joint-lead managing placement agent, joint-lead managing arranger or joint-lead managing initial purchaser, and such other co-managers, co-placement agent or initial purchaser in its reasonable discretion; provided that Jefferies shall be allocated no less 50.0% of the total fees and economics in the Financing. Jefferies will appear on the upper left of the cover page of any Offering Document or other offering materials related to any Financing and will hold the leading role and responsibilities conventionally understood to be associated with such name placement.

Notwithstanding the Debtors' and their estates' obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Debtors' and their estates', and Jefferies will under no circumstances be deemed to be an advisor to or have any obligation to any other party.

10.  <u>No Assurances; Other Transactions; Disclaimer.</u>

(a) This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Transaction or any other transaction contemplated herein. By signing this Agreement, the Debtors expressly acknowledge that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Transaction or any other transaction contemplated herein, or achieve any other result.

(b) Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "<u>Jefferies Group</u>") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise. Information that is held elsewhere within Jefferies or within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Debtors under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Debtors or any other party, or utilize for the Committee's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors, parties in interest in the Cases, and potential participants in any Transaction or other transactions contemplated herein, for its own account and for the accounts of its customers, and may at any time hold a long or short position in such securities. The Debtors acknowledge that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Debtors' interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

11.  <u>Construction and Governing Law</u>. This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

12. <u>Arbitration</u>. The parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, including, but not limited to: (a) the termination or validity of this Agreement, (b) any alleged breach of this Agreement or (c) the engagement contemplated by this Agreement (any of the foregoing, a "<u>Claim</u>") shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, the parties agree that any Claim shall be submitted to JAMS, or its successor, in New York, New York, for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the Debtors choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration, including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

13. <u>Payments</u>. All payments to be made to Jefferies hereunder shall be made in cash by wire transfer of immediately available U.S. funds, without deduction for any tax, subject to any necessary Bankruptcy Court approval. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. Subject to Bankruptcy Court approval, the Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14. <u>Announcements</u>. The Debtors agree that Jefferies may, following the announcement of a Transaction (including the announcement or other public disclosure that Jefferies has been retained by the Debtors), describe the Transaction in any form of media or in Jefferies' marketing materials with the Debtors' written permission for the first such use (not to be unreasonably withheld), stating Jefferies' role and other material terms of the Transaction and using the Debtors' name and logo in connection therewith.. The Debtors agree that any press release it may issue announcing any Transaction or other transaction contemplated herein will, at Jefferies' request, contain a reference to Jefferies' role in such transaction.

15. <u>Notices</u>. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Debtors, at the address set forth above, Attention: David M. Diwik and (b) if to Jefferies, at 520 Madison Avenue New York, New York 10022, Attention: General Counsel.

16. <u>Miscellaneous</u>. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by

either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is solely for the benefit of the Debtors and Jefferies and no other person shall acquire or have any rights under or by virtue of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. The Debtors and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

17. <u>Patriot Act</u>. Jefferies hereby notifies the Debtors that pursuant to the requirements of the USA PATRIOT Act (the "<u>Patriot Act</u>"), Jefferies may be required to obtain, verify and record information that identifies the Debtors in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of, and agreement to, the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement by and between the Debtors and Jefferies as of the date first above written.

Sincerely,

JEFFERIES & COMPANY, INC.

By _____
Name: Thomas C. Carlson
Title: Managing Director


Accepted and Agreed:

**WHITE ENERGY, INC., ON BEHALF OF ITSELF AND ITS AFFILIATES**

By _____
Name: David M. Diwik
Title: Chief Executive Officer

**White Energy, Inc.**
June 15, 2009
Page 11

# SCHEDULE A

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and White Energy Company, Inc. and its affiliates (collectively, the "Debtors"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors; bankruptcy estates and any trustee appointed in the Debtors' Cases.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by Jefferies and to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

The Debtors agree that no Indemnified Person shall have any liability to the Debtors or their owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

The Debtors agree that it will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agree to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors on the one hand and by Jefferies on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors on the one hand and Jefferies on the other, but also the relative fault of the Debtors and Jefferies, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel), including all costs and expenses (including expenses of counsel) incurred by an Indemnified Person to enforce the terms of this Schedule A, as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that if any such reimbursement is determined by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtors their officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in

# SCHEDULE A (cont'd)

the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such Action.