# EXHIBIT D

**SUBORDINATION AND INTERCREDITOR AGREEMENT**

Dated as of [        ], 2010

by and among

WHITE ENERGY HOLDING COMPANY, LLC,
as Borrower

SUBSIDIARIES OF THE BORROWER
PARTY TO THIS AGREEMENT
FROM TIME TO TIME,

WESTLB AG, NEW YORK BRANCH
as the Senior Exit Facility Agent

WESTLB AG, NEW YORK BRANCH
as the Subordinated Term Loan Agent

THE BANK OF NEW YORK [-MELLON],
as Collateral Agent

# TABLE OF CONTENTS

1. Definitions..................................................................................................................... 3

2. Subordination. ............................................................................................................ 7

    2.1    Agreement to Subordinate; Restrictions on Payment ........................................... 7

    2.2    Subordination of Liens and Security Interests; Agreement Not to Contest;.......... 7

    2.3    Liquidation; Dissolution; Bankruptcy.................................................................... 9

    2.4    Turnover Provisions............................................................................................. 12

    2.5    Relative Rights.................................................................................................... 13

    2.6    No Waiver of Subordination Provisions ............................................................. 13

    2.7    Sale, Transfer, etc. .............................................................................................. 13

    2.8    Legends ................................................................................................................ 14

    2.9    Restriction on Action by Subordinated Term Loan Agent .................................. 15

    2.10   Release of Liens .................................................................................................. 17

3. Modifications. ........................................................................................................... 18

    3.1    Modifications to Senior Secured Obligations ..................................................... 18

    3.2    Modifications to Subordinated Term Financing Documents............................... 18

4. Waivers by Subordinated Term Loan Creditors; Subrogation ......................... 18

5. Continued Effectiveness of this Agreement ......................................................... 19

6. Representations and Warranties; Covenants...................................................... 20

7. New Liens; Similar Liens; Representative for Perfection ................................. 20

8. Subordinated Term Loan Default Notice............................................................ 21

9. Modification of This Agreement .......................................................................... 21

10. Notices .................................................................................................................... 22

11. Cumulative Rights, No Waiver............................................................................ 23

12. Further Assurances............................................................................................... 23

13. Severability ............................................................................................................ 23

14. Counterparts.......................................................................................................... 24

15. Defines Rights of Creditors ................................................................................... 24

16. Successors and Assigns.......................................................................................... 24

17. Conflict ................................................................................................................... 24

18. Statement of Indebtedness to Subordinated Term Loan Agent ......................................... 24

19. Headings ................................................................................................................. 24

20. Termination............................................................................................................. 25

21. APPLICABLE LAW ............................................................................................... 25

22. CONSENT TO JURISDICTION AND SERVICE OF PROCESS ................................. 25

23. WAIVER OF JURY TRIAL.................................................................................... 25

## SUBORDINATION AND INTERCREDITOR AGREEMENT

**SUBORDINATION AND INTERCREDITOR AGREEMENT** (as amended, restated, supplemented or otherwise modified in accordance with the terms hereof, this "**Agreement**"), dated as of [_____], by and among WHITE ENERGY HOLDING COMPANY, LLC, a Delaware limited liability company, a Delaware limited liability company, (the "**Borrower**"), each Borrower Subsidiary (as defined in the Senior Exit Facility Agreement referred to below in its capacity as a "Borrower Subsidiary" under the Senior Exit Facility Agreement and as a "**Borrower Subsidiary**" under the Senior Term Loan Agreement) (together with the Borrower, each individually, an **"Obligor"** and collectively, the **"Obligors"**), WESTLB AG, NEW YORK BRANCH, as administrative agent for the Senior Exit Facility Agreement (as hereinafter defined) (in such capacity, and together with any successor administrative agent appointed in accordance with the applicable terms of the Senior Exit Facility Agreement, the "**Senior Exit Facility Agent**"), WESTLB AG, NEW YORK BRANCH, as administrative agent for the Subordinated Term Loan Lenders (as hereinafter defined) (in such capacity, and together with any successor administrative agent appointed in accordance with the applicable terms of the Subordinated Term Loan Agreement referred to below, the "**Subordinated Term Loan Agent**") and THE BANK OF NEW YORK [-MELLON], as depositary and collateral agent for the Senior Exit Facility Lenders and Subordinated Term Loan Lenders (in such capacities, and together with any successor depositary and collateral agent appointed in accordance with the applicable terms of the Collateral Agency Agreement, the "**Collateral Agent**").

## R E C I T A L S

A.        The Borrowers are party to that certain Senior Secured Exit Financing Facility Agreement, dated as of even date herewith (as amended, restated, supplemented or otherwise modified in accordance with its terms, the "**Senior Exit Facility Agreement**"), among the Borrowers, the other Borrower Subsidiaries from time to time party thereto, the lenders from time to time party thereto (the "**Senior Exit Facility Lenders**"), and the Senior Exit Facility Agent, pursuant to which, among other things, the Senior Exit Facility Lenders have agreed, subject to the terms and conditions set forth in the Senior Exit Facility Agreement, to make certain financial accommodations to the Borrower.

B.        The Obligors (other than the Borrower) have agreed to guaranty the Senior Secured Obligations (as hereinafter defined) pursuant to, and subject to the limitations described in the provisions of Article XI of the Senior Exit Facility Agreement (the "**Senior Unconditional Guaranty**").

C.        To secure the Senior Secured Obligations, including all obligations under such Senior Unconditional Guaranty, the Obligors have entered into, and may hereafter enter into, Security Documents (as defined in the Senior Exit Facility Agreement) (the "**Senior Security Documents**") providing for the grant of Liens in the Collateral (as hereinafter defined) in favor of the Collateral Agent, for the benefit of the Senior Exit Facility Creditors.

**D.**     Borrowers are also party to that certain Senior Subordinated Term Facility Agreement, dated as of even date herewith (as amended, restated, supplemented or otherwise modified in accordance with its terms and the terms hereof, the "**Subordinated Term Loan Agreement**"), among the Borrowers, the Borrower Subsidiaries from time to time party thereto, the lenders from time to time party thereto (the "**Subordinated Term Loan Lenders**"), and the Subordinated Term Loan Agent, pursuant to which, among other things, the Subordinated Term Loan Lenders have agreed, subject to the terms and conditions set forth in the Subordinated Term Loan Agreement, to make certain financial accommodations to Borrowers.

**E.**     The Obligors (other than the Borrower) are also party to the Subordinated Term Loan Agreement and have agreed to guaranty the Subordinated Secured Obligations (as hereinafter defined) pursuant to, and subject to the limitations described in the provision of Article XI of the Subordinated Term Loan Agreement (the "**Subordinated Unconditional Guaranty**").

**F.**     To secure the Subordinated Secured Obligations, including all obligations under such Subordinated Unconditional Guaranty, the Obligors have entered into, and may hereafter enter into, Security Documents (as defined in the Subordinated Term Loan Agreement) ("**Subordinated Security Documents**") providing for the grant of Liens in the Collateral in favor of the Collateral Agent, for the benefit of the Subordinated Term Loan Creditors.

**G.**     The Borrower, Borrower Subsidiaries, Senior Exit Facility Agent, the Subordinated Term Loan Agent and the Collateral Agent are also party to that certain Collateral Agency and Security Deposit Agreement, dated as of even date herewith (as amended, restated, supplemented or otherwise modified in accordance with its terms, the "**Collateral Agency Agreement**") pursuant to which, among other things, the Senior Exit Facility Agent and the Subordinated Term Loan Agent appointed the Depositary and the Collateral Agent to act as depositary and collateral agent for the benefit of the Senior Exit Facility Creditors and Subordinated Term Loan Creditors, respectively, and which sets forth the various rights and duties of the Collateral Agent in connection therewith.

**H.**     As an inducement to and as one of the conditions precedent to the agreement of the Senior Exit Facility Agent and the Senior Exit Facility Lenders to consummate the transactions contemplated by the Senior Exit Facility Agreement and to consent to the Obligors entering into the Subordinated Term Financing Documents (as hereinafter defined), the Senior Exit Facility Agent and the Senior Exit Facility Lenders have required the execution and delivery of this Agreement by the Subordinated Term Loan Agent, on behalf of the Subordinated Term Loan Creditors, and the Obligors, in order to set forth the relative rights and priorities of the Senior Exit Facility Creditors and the Subordinated Term Loan Creditors and the Senior Exit Financing Documents (as hereinafter defined) and the Subordinated Term Financing Documents.

**NOW**, **THEREFORE**, in consideration of the foregoing, in order to induce the Senior Exit Facility Agent and the Senior Exit Facility Lenders to consummate the transactions contemplated by the

Senior Exit Facility Agreement and to consent to Obligors entering into the Subordinated Term Financing Documents, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. **Definitions**.  All capitalized terms used but not elsewhere defined in this Agreement shall have the respective meanings ascribed to such terms in the Senior Exit Facility Agreement.  In addition, the following terms shall have the following meanings in this Agreement:

"**Adequate Protection Lien**" has the meaning set forth in <u>Section 2.3(e)</u>.

"**Agreement**" has the meaning assigned to such term in the Preamble.

"**Bankruptcy Proceeding**" means a proceeding under any Debtor Relief Law.

"**Borrower**" has the meaning assigned to such term in the Preamble.

"**Collateral**" means the "**Collateral**" under and as defined in the Senior Exit Facility Agreement and the Subordinated Term Loan Agreement.

"**Collateral Agency Agreement**" has the meaning assigned to such term in Recital G.

"**Collateral Agent**" has the meaning set forth in the Preamble.

"**Discharge of Senior Secured Obligations**" means the occurrence of the Termination Date under the Senior Exit Facility Agreement (other than contingent indemnification obligations to the extent no claim giving rise thereto has been asserted).

"**Enforcement Action**" means:

(a) with respect to the Subordinated Secured Obligations, (i) to take from or for the account of any Obligor (other than Permitted Subordinated Indebtedness Payments otherwise permitted to be made hereunder) or any other Person (other than in connection with the sale, assignment, disposal or transfer of all or any portion of the Subordinated Secured Obligations to a Person (other than an Obligor or its Affiliates (other than the Subordinated Term Loan Lenders)) to the extent permitted under <u>Section 2.7(a)</u>), by set-off or in any other manner, the whole or any part of any moneys which may now or hereafter be owing by any Obligor with respect to the Subordinated Secured Obligations, (ii) to sue for payment of, or to initiate or participate with others in any suit, action or proceeding against any Obligor or any other Person to (x) enforce payment of or performance of or to collect the whole or any part of the Subordinated Secured Obligations or (y) commence judicial enforcement of any of the rights and remedies under the Subordinated Term Financing Documents or applicable law with respect to the Subordinated Secured Obligations, including, without limitation, the commencement of a Bankruptcy Proceeding, (iii) to accelerate the Subordinated Secured Obligations or any portion thereof, or (iv) to cause any Obligor to make any redemption or prepayment under any Subordinated Term Financing Document;

(b) with respect to the Collateral, (i) to foreclose on, directly collect on, take possession of or control of (other than the taking by any Person of "possession" or "control" (as such terms are defined in the UCC) for purposes of perfecting such Person's Liens on any of the Collateral, subject to the terms of this Agreement), or sell or otherwise realize upon (judicially or non-judicially) any Collateral or otherwise enforce rights with respect to Collateral under any applicable agreement, document or instrument pertaining thereto (including, without limitation, by way of set-off, notification of account debtors, notification of depositary banks under deposit account control agreements or exercise of rights under landlord consents, bailee agreements or similar third-party documents relating to the Collateral), (ii) to receive a transfer of Collateral in satisfaction of any indebtedness secured thereby, (iii) to otherwise enforce any security interest or other right or remedy pertaining to the Collateral at law, in equity or pursuant to a Subordinated Term Financing Document (including exercising voting rights in respect of any Collateral comprising equity interests), or (iv) to take any action to retain, or to cause or direct any of the Obligors (I) to retain, a broker, investment banker or any other Person to sell all or any portion of such Obligor's business or operations and/or all or any portion of the Collateral or (II) to retain, or cause or direct such Person to retain, an appraiser in respect of such business, operations and/or Collateral in anticipation of any such sale;

(c) to take any action with respect to the commencement of any legal proceedings or actions against or with respect to any Obligor or any of such Obligor's property or assets or any Collateral or otherwise to facilitate any of the foregoing actions, whether under the provisions of any state or federal law or under any contract or agreement; or

(d) to exercise in any other manner any remedies with respect to the Subordinated Secured Obligations set forth in any Subordinated Term Financing Document or that otherwise might be available to any Subordinated Term Loan Creditor at law, in equity, pursuant to judicial proceeding or otherwise.

"**Net Cash Proceeds**" means, with respect to any disposition by the Senior Exit Facility Creditors, the excess, if any, of:

(a) the sum of cash and cash equivalents received (but only as and when received) in connection with such transaction or event (including any cash or cash equivalents received by way of deferred payment pursuant to, or by monetization of, a note receivable or otherwise) and including any insurance proceeds with respect to any casualty and condemnation proceeds from any condemnation; over

(b) the sum of (A) the principal amount of any Indebtedness, if any, that is secured by the applicable asset and that is required to be repaid in connection with such transaction, (B) reasonable and customary closing costs incurred in connection with such disposition, and (C) taxes or other payments to Governmental Authorities that shall be paid or reasonably estimated to be actually payable within two years of the date of, and specifically required as a result of, the relevant transaction or event (and approved by the Majority Lenders, such approval not to be unreasonably withheld); *provided* that, if the amount of

any estimated taxes pursuant to subclause (C) exceeds the amount of taxes actually required to be paid in cash in respect of such disposition, then the aggregate amount of such excess shall constitute Net Cash Proceeds.

"**Obligor**" and "**Obligors**" have the meaning set forth in the Preamble.

"**Permitted Subordinated Indebtedness Payments**" means:

(a)  regularly scheduled payments of interest on the Subordinated Secured Obligations which is payable in kind (including by capitalizing such interest as principal) at the non-default rate of interest, as the same may be increased to the extent permitted pursuant to the terms hereof;

(b)  reimbursement of reasonable out-of-pocket costs and expenses (including reasonable legal fees) incurred by or on behalf of the Subordinated Term Loan Agent and Collateral Agent, acting for the benefit of the Subordinated Term Loan Creditors;

(c)  accrual (and not payment in cash) of default interest; [and]

(d)  [Reorganization Subordinated Securities;]

in each instance, due and payable in accordance with the terms of the Subordinated Term Financing Documents as in effect on the date hereof or as modified in accordance with the terms of this Agreement.

"**Permitted Replacement Liens**" has the meaning assigned to such term in Section 2.3(e).

["**Reorganization Subordinated Securities**" shall mean any debt or equity securities of any Borrower or any other Person that are issued in substitution of all or any portion of the Subordinated Secured Obligations that:

(e)  are subordinated in right of payment to the Senior Secured Obligations (or any debt or equity securities issued in substitution of all or any portion of the Senior Secured Obligations) to at least the same extent and in the same manner as the Subordinated Secured Obligations are subordinated to the Senior Secured Obligations pursuant to this Agreement,

(f)  do not have the benefit of any obligation of any Person (whether as issuer, guarantor or otherwise) unless the Senior Secured Obligations have at least the same benefit of the obligation of such Person and the obligations of such Person to the Subordinated Term Loan Creditors are subordinated to the same extent and in the same manner as the obligations of Borrowers and the other Obligors hereunder;

(g)  only provide for the payment of interest which is payable in kind and

(h)  have maturities or any terms, and are subject to or entitled to the benefit of any agreement or instrument that has terms, no less advantageous to Obligors and Senior Exit Facility

Creditors than the terms contained in the Subordinated Term Financing Documents and which could be included in the Subordinated Term Financing Documents by an amendment or other modification permitted by the terms of this Agreement.]

"**Senior Exit Facility Agent**" has the meaning set forth in the Preamble.

"**Senior Exit Facility Agreement**" has the meaning set forth in the Preamble.

"**Senior Exit Facility Creditor**" shall mean the Senior Exit Facility Agent, each Senior Exit Facility Lender and the Collateral Agent, acting for the benefit of the Senior Exit Facility Creditors.

"**Senior Exit Facility Lender**" has the meaning set forth in the Preamble and shall also include any other holders of the Senior Secured Obligations.

"**Senior Exit Financing Documents**" shall mean those documents which are defined as "Financing Documents" in the Senior Exit Facility Agreement, in each case as amended, modified, supplemented, restated, refinanced or renewed from time to time as permitted thereunder and in effect.

"**Senior Secured Obligations**" shall mean the "Secured Obligations" under and as defined in the Senior Exit Facility Agreement, together with any amendments, restatements, modifications, renewals or extensions of any thereof.

"**Senior Interest Rate Protection Agreement**" has the meaning set forth in the Collateral Agency Agreement.

"**Subordinated Secured Obligations**" shall mean the "Secured Obligations" under and as defined in the Subordinated Term Loan Agreement.

"**Subordinated Term Financing Documents**" shall mean those documents which are defined as "Financing Documents" in the Subordinated Term Loan Agreement.

"**Subordinated Term Loan Agent**" is defined in the Preamble.

"**Subordinated Term Loan Agreement**" has the meaning set forth in the Preamble.

"**Subordinated Term Loan Creditor**" shall mean the Subordinated Term Loan Agent, each Subordinated Term Loan Lender and Collateral Agent, for the benefit of the Subordinated Term Loan Creditors.

"**Subordinated Term Loan Lender**" is defined in the Preamble and shall also include any other holders of the Subordinated Secured Obligations.

## 2.    Subordination.

### 2.1    Agreement to Subordinate; Restrictions on Payment

(a)    The payment of any and all of the Subordinated Secured Obligations is hereby expressly junior and subordinated in full, to the extent and in the manner set forth herein, to the payment of all Senior Secured Obligations, until the Discharge of Senior Secured Obligations.  Each holder of Senior Secured Obligations, whether now outstanding or hereafter arising,  has and shall be deemed to have acquired Senior Secured Obligations in reliance upon the provisions contained herein.  The parties hereto intend that this Agreement be enforceable in any Bankruptcy Proceeding.

(b)    Notwithstanding any provision of the Subordinated Term Financing Documents to the contrary and in addition to any other limitations set forth herein or therein, each Borrower and each of the other Obligors hereby agrees that it may not make (or cause to be made), and each Subordinated Term Loan Creditor hereby agrees that it will not accept, directly or indirectly, any payment (whether made in cash, securities or other property or by set-off) of principal, interest or any other amount due with respect to the Subordinated Secured Obligations, and no Subordinated Term Loan Creditor shall exercise any right of set-off or recoupment with respect to any Subordinated Secured Obligations, until the Discharge of Senior Secured Obligations[; provided, however, Obligors may make and Subordinated Term Loan Creditors may accept Permitted Subordinated Indebtedness Payments].

### 2.2    Subordination of Liens and Security Interests; Agreement Not to Contest;

(a)    The Senior Exit Facility Agent, on behalf of each Senior Exit Facility Creditor, and the Subordinated Term Loan Agent, on behalf of each Subordinated Term Loan Creditor, hereby (i) acknowledge that the other Person has been granted Liens upon the Collateral to secure the Senior Secured Obligations and the Subordinated Secured Obligations, as the case may be, and (ii) acknowledge and agree that, notwithstanding the time, date, manner or order of grant, attachment or perfection of the Liens on all or any part of the Collateral granted to the Collateral Agent, for the benefit of the Senior Exit Facility Creditors or the Subordinated Term Loan Creditors as the case may be, and notwithstanding any conflicting terms or conditions which may be contained in any of the Senior Exit Financing Documents or Subordinated Term Financing Documents, (x) all Liens granted on all or any part of the Collateral pursuant to the Senior Exit Financing Documents shall be continuing Liens on all such Collateral to secure the prompt and complete payment, performance and observance of all Senior Secured Obligations, prior and senior in all respects and for all purposes to all Liens on all or any part of the Collateral securing the Subordinated Secured Obligations, and (y) all Liens granted on all or any part of the Collateral pursuant to the Subordinated Term Financing Documents, regardless of when or how acquired, shall be in all respects and for all purposes be subject to, junior to, and subordinate to all Liens on all or any part of the Collateral securing the Senior Secured Obligations.

(b) This Agreement shall constitute a subordination agreement within the meaning of Section 510(a) of the Bankruptcy Code and this Agreement constitutes an authenticated notification of a claim by each Senior Exit Facility Creditor and Subordinated Term Loan Creditor to the other secured creditor of an interest in the Collateral in accordance with the provisions of Sections 9-611 and 9-621 of the UCC.  The Collateral Agent, the Subordinated Term Loan Agent, for itself and on behalf of the Subordinated Term Loan Creditors, and the Senior Exit Facility Agent, for itself and on behalf of the Senior Exit Facility Creditors, acknowledge and agree that (i) the grants of Liens pursuant to the Senior Exit Financing Documents and the Subordinated Term Financing Documents constitute two separate and distinct grants of Liens and (ii) because of, among other things, their differing rights in the Collateral, the Subordinated Secured Obligations are fundamentally different from the Senior Secured Obligations and must be separately classified in any Bankruptcy Proceeding.

(c) Each of the Senior Exit Facility Creditors and each of the Subordinated Term Loan Creditors hereby agree not to, directly or indirectly, whether in connection with a Bankruptcy Proceeding or otherwise, take any action or vote in any way that would be in violation of, or inconsistent with, or result in a breach of, this Agreement or challenge or contest (i) the validity, perfection, priority or enforceability of any Senior Secured Obligations or Subordinated Secured Obligations or the Lien held by the Collateral Agent, for the benefit of the Senior Exit Facility Creditors and the Subordinated Term Loan Creditors, as applicable, to secure the payment, performance or observance of all or any part of the Senior Secured Obligations or the Subordinated Secured Obligations, respectively (ii) the rights of the Senior Exit Facility Creditors or the Subordinated Term Loan Creditors set forth in any of the Senior Exit Financing Documents or Subordinated Term Financing Documents, respectively, with respect to any such Lien, or (iii) the validity or enforceability of any of the Senior Exit Financing Documents or any of the Subordinated Term Financing Documents; provided, that nothing in this Section is intended or shall be deemed or construed to limit in any way the ability of the Senior Exit Facility Agent to enforce all of its rights and provisions of this Agreement.

(d) The proceeds of Collateral received by the Collateral Agent and distributable in accordance with the terms of the Collateral Agency Agreement (after the payment of all due and unpaid obligations owing to the Collateral Agent (as defined in, and in accordance with the terms of, the Collateral Agency Agreement) shall be distributed:

First, to the Senior Exit Facility Agent for the payment of all amounts (including fees) due to it in its capacity as such (and not on behalf of the Senior Exit Facility Lenders) which are unpaid on such distribution date;

Second, to the Subordinated Term Loan Agent for the payment of all amounts (including fees) due to it in its capacity as such (and not on behalf of the Subordinated Term Loan Lenders) which are unpaid on such distribution date;

*Third*, to the Senior Exit Facility Agent, for the account of the Senior Exit Facility Lenders, in an amount equal to all Senior Secured Obligations due and payable to the Senior Exit Facility Lenders, the Issuing Bank and the Interest Rate Protection Providers under the Senior Exit Facility Agreement on such distribution date with respect to the Senior Secured Obligations, to be applied in accordance with the terms of clauses *second* through *third* of Section 3.04(c) of the Collateral Agency Agreement;

*Fourth*, after the Discharge of Senior Secured Obligations, to the Subordinated Term Loan Agent, for the account of the Subordinated Term Loan Lenders, in an amount equal to all Subordinated Secured Obligations due and payable to the Subordinated Term Loan Lenders on such distribution date with respect to the Subordinated Secured Obligations, to be applied in accordance with the terms of clauses *fourth* through *fifth* and clause *eighth* of Section 3.04(c) of the Collateral Agency Agreement; and

*Finally*, if a Terminate Date under the Senior Exit Facility Agreement and the Subordinated Term Loan Agreement shall have occurred and all Senior Secured Obligations and Subordinated Secured Obligations shall have been indefeasibly paid in full in cash (other than contingent indemnification obligations to the extent no claim giving rise thereto has been asserted), any surplus then remaining shall be paid to whomsoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

**2.3** **Liquidation; Dissolution; Bankruptcy.** In the event of any Bankruptcy Proceeding:

(a) the Discharge of Senior Secured Obligations shall occur before any payment (whether made in cash, securities or other property) of or with respect to the Subordinated Secured Obligations shall be made [(other than Permitted Subordinated Indebtedness Payments)];

(b) (1) any payment which, but for the terms hereof, otherwise would be payable or deliverable in respect of the Subordinated Secured Obligations [(other than a distribution of Reorganization Subordinated Securities)], or (2) any proceeds of Collateral received by any Subordinated Term Loan Creditor, shall, in each case, be paid or delivered directly to the Senior Exit Facility Agent or Collateral Agent, as applicable, for the benefit of the Senior Exit Facility Creditors (to be held and/or applied to the repayment of any and all then outstanding Senior Secured Obligations in accordance with the terms hereof and the Senior Exit Facility Agreement until the Discharge of Senior Secured Obligations, and each Subordinated Term Loan Creditor irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, custodians, conservators and others having authority in the premises to effect all such payments and deliveries, and each Subordinated Term Loan Creditor also irrevocably authorizes, empowers and directs Collateral Agent, or Senior Exit Facility Agent, as applicable, on behalf of the Senior Exit Facility Creditors, to demand, sue for, collect and receive every such payment, distribution or proceeds; each Subordinated Term Loan Creditor agrees to execute and deliver to Senior Exit Facility Agent or its representative all such further instruments confirming the foregoing authorization;

(c)    each Subordinated Term Loan Creditor agrees to execute, verify, deliver and file any proofs of claim in respect of the Subordinated Secured Obligations requested by Senior Exit Facility Agent in connection with any such Bankruptcy Proceeding and hereby irrevocably authorizes, empowers and appoints the Senior Exit Facility Agent its agent and attorney-in-fact to (i) execute, verify, deliver and file such proofs of claim upon the failure of such Subordinated Term Loan Creditor promptly to do so (and in any event prior to thirty (30) days before the expiration of the time to file any such proof) and (ii) vote such claim in any such Bankruptcy Proceeding upon the failure of such Subordinated Term Loan Creditor to do so prior to fifteen (15) days before the expiration of time to vote any such claim; provided, that the Senior Exit Facility Agent shall have no obligation to execute, verify, deliver, and/or file any such proof of claim and/or vote any such claim.   In the event that Senior Exit Facility Agent votes any claim in accordance with the authority granted hereby, no Subordinated Term Loan Creditor shall be entitled to change or withdraw such vote;

(d)    The Senior Secured Obligations shall continue to be treated as Senior Secured Obligations and the provisions of this Agreement shall continue to govern the relative rights and priorities of Senior Exit Facility Creditors and Subordinated Term Loan Creditors even if all or part of the Senior Secured Obligations or the Liens securing the Senior Secured Obligations are subordinated, set aside, avoided or disallowed in connection with any such Bankruptcy Proceeding;

(e)    Except as otherwise specifically permitted in this Agreement, until the Discharge of Senior Secured Obligations, no Subordinated Term Loan Creditor shall assert, without the prior written consent of the Senior Exit Facility Agent, any claim, motion, objection or argument that could otherwise be asserted or raised in connection with such Bankruptcy Proceeding by any Subordinated Term Loan Creditor as a secured creditor of any Obligor (whether in respect of all or any part of the Collateral or otherwise).   Without limiting the generality of the foregoing, until the Discharge of Senior Secured Obligations (and other than on the basis of an objection permitted to be made by an unsecured creditor) each Subordinated Term Loan Creditor agrees that it will not:

(i)    object to or oppose a sale or other disposition of any Collateral free and clear of security interests, liens or other claims of such Subordinated Term Loan Creditor under Section 363 of the Bankruptcy Code (or any foreign equivalent) or any other provision of the Bankruptcy Code (or any foreign equivalent) if the Senior Exit Facility Creditors (as applicable) have consented to such sale or disposition;

(ii)    challenge or assert any objection (or support any other Person's objection) to any request by the Senior Exit Facility Creditors (as applicable) for "adequate protection" or post-petition interest or assert (or support any other Person in asserting) any right it may have to "adequate protection" of its interest in any Collateral in any Bankruptcy Proceeding (including adequate protection payments in the form of cash payments or otherwise); provided that the Subordinated Term Loan Creditors shall be permitted to seek and obtain, in connection with any cash collateral (or usage thereof) or debtor-in-possession financing described in clause

<u>(g)</u> below, (1) a Lien on the Collateral (including the proceeds thereof arising after the commencement of such Bankruptcy Proceeding) with the same priority vis-à-vis the Liens securing the Senior Secured Obligations as existed prior to the commencement of such Bankruptcy Proceeding (an "**Adequate Protection Lien**") and (2) a replacement Lien (a "**Permitted Replacement Lien**") on post-petition assets to the same extent granted to the Senior Exit Facility Creditors with the same priority vis-à-vis the Lien securing the Senior Secured Obligations as existed prior to the commencement of such Bankruptcy Proceeding (each of which the Collateral Agent and Senior Exit Facility Agent will not object to or oppose, provided that the failure to obtain any such Adequate Protection Liens or Permitted Replacement Liens by the Subordinated Term Loan Creditors shall not be used as the basis to challenge any cash collateral (or usage thereof) or debtor-in-possession financing);

      (iii)    seek to have the automatic stay lifted with respect to any Collateral without the prior written consent of the Senior Exit Facility Agent or object to or oppose (or support any other Person in objecting to or opposing) any motion or application seeking such aforementioned relief unless requested by the Senior Exit Facility Agent; or

      (iv)    vote in a manner or take any other action which may impair or adversely affect any Senior Exit Facility Creditor's interests, rights and remedies under the Senior Exit Facility Agreement or this Agreement;

      (f) Each Subordinated Term Loan Creditor waives any claim it may now or hereafter have arising out of the Senior Exit Facility Agent's election, in any Bankruptcy Proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, and/or any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code by any Obligor, as debtor in possession.

      (g) Each Subordinated Term Loan Creditor agrees that prior to the Discharge of Senior Secured Obligations, the Senior Exit Facility Creditors (as applicable) may consent to the use of cash collateral or provide financing to the Obligors on such terms and conditions and in such amounts as the Senior Exit Facility Creditors (as applicable) in their sole discretion, may decide and, in connection therewith, the Obligors may grant to the Senior Exit Facility Creditors Liens and security interests upon all of the property of the Obligors, which liens and security interests shall secure payment of all Senior Secured Obligations (whether such Senior Secured Obligations arose prior to the commencement of any Bankruptcy Proceeding or at any time thereafter) and all other financing provided by the Senior Exit Facility Creditors (as applicable) during the Bankruptcy Proceeding. Each Subordinated Term Loan Creditor agrees that it shall not challenge or otherwise object to (or support any other Person in challenging or otherwise objecting to) any of the foregoing and to any "carve out" authorized by any court in connection therewith;

(h) The Subordinated Term Loan Creditors shall have the right to (i) file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any Person objecting to or otherwise seeking the disallowance of the claims of the Subordinated Term Loan Creditors, including without limitation any claims secured by the Collateral, if any, (ii) exercise any rights and remedies of unsecured creditors against any Obligor (to the extent such rights and remedies could be asserted by any creditor of an Obligor whose claims were not secured by any Lien on the Collateral), including, without limitation, the filing of any pleadings, objections, motions or agreements that assert rights or interests available to unsecured creditors of the Obligors arising under either the Bankruptcy Code or in an Bankruptcy Proceeding, (iii) vote on any plan of reorganization to the extent such vote is conducted in a manner consistent with the provisions of this Agreement and (iv) file any proof of claim and other filings and make any arguments and motions that are, in each case, not prohibited by the terms of this Agreement and necessary to preserve their rights, in accordance with the terms of this Agreement, with respect to the Subordinated Secured Obligations and the Collateral; provided that notice of intent to take any such action (other than with respect to the filings of proofs of claim) shall be given by the Subordinated Term Loan Agent to the Senior Exit Facility Agent not less than three (3) Business Days prior to the taking of such action.

2.4    **Turnover Provisions.**   In the event that, prior to the Discharge of Senior Secured Obligations, any Subordinated Term Loan Creditor receives any:

(a)  Collateral or proceeds thereof; or

(b)  any prepayment (whether in cash, securities or other property) of all or any portion of the Subordinated Secured Obligations (excluding any payments with respect to the Subordinated Secured Obligations permitted hereunder);

then any such Collateral, proceeds, payment or prepayment shall not be commingled with any of the assets of any Subordinated Term Loan Creditor, shall be received and held in trust for the benefit of the Senior Exit Facility Creditors and shall be promptly paid over to the Collateral Agent or Senior Exit Facility Agent, as applicable, for the benefit of the Senior Exit Facility Creditors, or delivered in the same form as received, with any necessary endorsements, until Discharge of Senior Secured Obligations in accordance with its terms.  In the event that any Subordinated Term Loan Creditor fails to provide any endorsement, as contemplated by the immediately preceding sentence, the Senior Exit Facility Agent or Collateral Agent, as applicable, or any of their officers or employees, is hereby irrevocably authorized to make the same (which authorization, being coupled with an interest, is irrevocable).  After the Discharge of Senior Secured Obligations, any remaining proceeds of Collateral or cash, property or other assets received by any Senior Exit Facility Creditor in respect of the Senior Secured Obligations (other than cash collateral held by Collateral Agent, for the benefit of any Senior Exit Facility Creditor to effectuate the Discharge of Senior Secured Obligations), whether from the Obligors, the Subordinated Term Loan Creditors or otherwise, shall be delivered to the Collateral Agent or the Subordinated Term Loan Agent, as applicable, for application to the Subordinated Secured Obligations in accordance with the terms

hereof and the Subordinated Term Financing Documents, except as otherwise required pursuant to applicable law.

2.5     **Relative Rights**.  This Agreement defines the relative rights of the Obligors, the Subordinated Term Loan Creditors and the Senior Exit Facility Creditors.  Nothing herein shall:

(a)  impair, as between the Borrower and the Subordinated Term Loan Agent, the obligation of the Borrower, which is absolute and unconditional, to pay any amounts owing in respect of the Subordinated Secured Obligations in accordance with their terms;

(b)  affect the relative rights of any Subordinated Term Loan Creditor and creditors of any Borrower other than their rights in relation to the holders of Senior Secured Obligations; or

(c)  prevent the Subordinated Term Loan Agent from exercising all available remedies upon a Subordinated Term Loan Default, subject to the limitations provided elsewhere in this Agreement.

The failure of the Borrower to make any payment to the Subordinated Term Loan Agent due to the operation of this Agreement shall not be construed as prohibiting the occurrence of a Subordinated Term Loan Default.

2.6     **No Waiver of Subordination Provisions**.  No right of any present or future Senior Exit Facility Lender to enforce subordination as herein provided shall at any time, in any way, be prejudiced or impaired by any act or failure to act on the part of any Obligor or by any act or failure to act, in good faith, by any such Senior Exit Facility Lender, or by any noncompliance by any Obligor with terms, provisions and covenants of this Agreement, regardless of any knowledge thereof any such Senior Exit Facility Lender may have or be otherwise charged with.  The priorities of the Liens securing the Senior Secured Obligations and the Subordinated Secured Obligations set forth in this Agreement shall not be altered or otherwise affected by any amendment, modification, supplement, extension, renewal, restatement, replacement or refinancing of any of the Senior Secured Obligations or Subordinated Secured Obligations, nor by any action or inaction which any of the Senior Exit Facility Creditors or Subordinated Term Loan Creditors may take or fail to take in respect of the Collateral (including the failure to perfect a Lien in any Collateral).  The priority given to the Liens securing the Senior Secured Obligations pursuant to the terms of this Agreement shall continue to govern the relative rights and priorities of the Senior Exit Facility Creditors, on the one hand, and the Subordinated Term Loan Creditors, on the other hand, even if all or any part of the Liens in favor of the Senior Exit Facility Creditors are subordinated, avoided, disallowed, unperfected, set aside or otherwise invalidated, whether pursuant to a Bankruptcy Proceeding, any other judicial proceeding or otherwise.

2.7     **Sale, Transfer, etc.**

(a)  Any Subordinated Term Loan Lender may sell, assign, dispose of or otherwise transfer all or any of the Subordinated Secured Obligations to another Person in accordance with the terms

of the Subordinated Term Loan Agreement; provided, that any holder of Subordinated Secured Obligations agrees that, by its acceptance thereof and as more particularly set forth in the Subordinated Term Loan Agreement, it shall be bound by the terms, provisions and conditions of this Agreement, in its capacity as a Subordinated Term Loan Lender, whether or not such holder has executed a counterpart of this Agreement.

(b) Notwithstanding the failure of any transferee of Subordinated Secured Obligations to execute or deliver a joinder or an agreement substantially identical to this Agreement, the subordination of Liens effected hereby shall survive any sale, assignment, pledge, disposition or other transfer of all or any portion of the Subordinated Secured Obligations, and the terms of this Agreement shall be binding upon the successors and assigns of any Subordinated Term Loan Creditor, as provided in Section 16 hereof.

(c) The Subordinated Term Loan Agent shall not assign, transfer or resign its status as Subordinated Term Loan Agent hereunder (including, without limitation, its ability to bind Subordinated Term Loan Lenders to the terms and provisions hereof based on its execution of this Agreement): (i) without giving prior written notice of such action to the Senior Exit Facility Agent and (ii) unless, prior to the consummation of any such action, the assignee thereof or any subsequent Subordinated Term Loan Agent appointed by the Subordinated Term Loan Lenders shall execute and deliver to the Senior Exit Facility Agent a joinder or an agreement substantially identical to this Agreement, in either case in form and substance reasonably satisfactory to the Senior Exit Facility Agent, providing for the continued subordination of the Liens securing the Subordinated Secured Obligations to the Liens securing the Senior Secured Obligations as provided herein and for the continued effectiveness of all of the agreements arising under this Agreement.

2.8 **Legends**. Until the termination of this Agreement, the Subordinated Term Loan Creditors will cause to be clearly, conspicuously and prominently inserted in the Subordinated Term Loan Agreement and any other Subordinated Term Financing Document, as well as any renewals or replacements thereof, the following legend:

"NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY AND WHETHER OR NOT OTHERWISE EXPRESSLY SET FORTH HEREIN, THE RIGHTS AND REMEDIES OF THE SUBORDINATED TERM LOAN CREDITORS SET FORTH HEREIN AND THE LIENS AND SECURITY INTERESTS CREATED HEREBY ARE SUBORDINATE IN THE MANNER AND TO THE EXTENT SET FORTH IN THE SUBORDINATION AGREEMENT (AS DEFINED IN THE SUBORDINATED TERM LOAN AGREEMENT (AS DEFINED BELOW)) TO THE RIGHTS AND REMEDIES AND LIENS AND SECURITY INTERESTS IN FAVOR OF THE SENIOR EXIT FACILITY CREDITORS UNDER AND PURSUANT TO THE SENIOR EXIT FINANCING DOCUMENTS (EACH AS DEFINED IN THE SUBORDINATION AGREEMENT). IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS OF THE SUBORDINATION AGREEMENT AND THIS AGREEMENT, THE TERMS OF THE SUBORDINATION AGREEMENT SHALL GOVERN AND CONTROL."

**2.9**     **Restriction on Action by Subordinated Term Loan Agent**

(a) The Collateral Agent, for the benefit of the Senior Exit Facility Creditors, shall have the exclusive right, prior to the Discharge of Senior Secured Obligations, to manage, perform and enforce the terms of the Senior Exit Financing Documents with respect to the Collateral, and, in accordance with applicable laws and the terms and provisions of the Senior Exit Financing Documents, to direct the enforcement of all rights and remedies with respect to all or any part of the Collateral, (i) by judicial proceedings for the enforcement of the Liens, (ii) by the sale of the Collateral or any part thereof, (iii) otherwise by the exercise of the power of entry or sale conferred by the Senior Exit Financing Documents, or (iv) by taking any other Enforcement Action against, or exercising any other rights or remedies with respect to, all or any part of the Collateral.

(b) Unless and until the Discharge of Senior Secured Obligations has occurred, the Collateral Agent, for the benefit of the Senior Exit Facility Creditors, shall have the sole and exclusive right, subject to the rights of the Obligors under the Senior Exit Financing Documents, to reasonably adjust settlement for any insurance policy covering the Collateral in the event of any loss of or damage to Collateral and to reasonably approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) affecting the Collateral.  Unless and until the Discharge of Senior Secured Obligations has occurred, and subject to the rights of the Obligors under the Senior Exit Financing Documents and Subordinated Term Financing Documents, as applicable, all proceeds of any such policy and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect of Collateral shall be applied to the Senior Secured Obligations in accordance with the terms hereof and the Senior Exit Financing Documents.

(c) Without limiting the generality of the foregoing, until the Discharge of Senior Secured Obligations and notwithstanding any rights or remedies available under the Subordinated Term Financing Documents, applicable law or otherwise, no Subordinated Term Loan Creditor shall, without the prior written consent of the Senior Exit Facility Agent, take any Enforcement Action; provided, that (i) upon the acceleration of all Senior Secured Obligations, the Subordinated Term Loan Agent may accelerate the Subordinated Secured Obligations (provided, however, that if, following any such acceleration of the Senior Secured Obligations, such acceleration in respect of the Senior Secured Obligations is rescinded, then all actions taken by Subordinated Term Loan Agent to accelerate the Subordinated Secured Obligations shall likewise be rescinded and no Subordinated Term Loan Creditor shall have any right under any other clause of this subsection to accelerate the Subordinated Secured Obligations) and (ii) the Subordinated Term Loan Creditors may take any action expressly permitted hereunder.

(d) In furtherance and not in limitation of the other terms and provisions of this Agreement, until Discharge of Senior Secured Obligations, and notwithstanding any contrary provisions contained in any of the Subordinated Term Financing Documents, each of the Subordinated Term Loan Creditors hereby agrees that it shall not at any time or for any reason whatsoever, take any action (or

support any other Person in taking any action) of any kind to enjoin, hinder, delay, limit or otherwise prevent the completion of any exercise of rights and remedies by any of the Senior Exit Facility Creditors under or pursuant to the Senior Exit Financing Documents, including, without limitation, any collection, sale, lease, exchange, transfer or other disposition of the Collateral, whether by foreclosure or otherwise (including, without limitation, any such disposition by means of a merger or consolidation of the Borrower or any of the Borrower Subsidiaries with or into another Person) if the following conditions have been met: (i) such disposition is made by any of the Obligors upon the written request, or with the prior written consent or approval of, the Senior Exit Facility Agent during the continuation of Default or Event of Default under the Senior Exit Facility Agreement; (ii) the Senior Exit Facility Agent shall have given the Subordinated Term Loan Creditors not less than ten (10) Business Days' prior written notice of the intention of the Senior Exit Facility Agent to request or to grant its consent or approval for any such sale, transfer or other disposition not otherwise permitted by the Subordinated Term Financing Documents; and (iii) substantially all Net Cash Proceeds from any such disposition are paid or remitted to the Senior Exit Facility Agent for immediate application towards payment of the Senior Secured Obligations. For the avoidance of doubt, notwithstanding any contrary provisions in any of the Subordinated Term Financing Documents, no Borrower nor any of the other Obligors shall be obligated or otherwise required to obtain any consent or approval of any of the Subordinated Term Loan Creditors for any such disposition, and the completion of any such disposition shall not contravene, or be deemed to conflict with, any of the provisions of any of the Subordinated Term Financing Documents; provided that nothing in this Agreement shall be construed to limit or impair in any way the right of: (i) the Subordinated Term Loan Creditors to join (but not control) any foreclosure, sale or other judicial lien enforcement proceeding with respect to the Collateral initiated by the Senior Exit Facility Creditors for the sole purpose of protecting such Subordinated Term Loan Creditors' Lien on the Collateral, so long as it does not hinder, delay or interfere in any manner with the exercise by the Senior Exit Facility Creditors of their rights under this Agreement, the Senior Exit Financing Documents and applicable law, (ii) the Subordinated Term Loan Creditors to bid for or purchase Collateral at any public, private or judicial foreclosure upon such Collateral initiated by the Collateral Agent, for the benefit of the Senior Exit Facility Creditors, or at any sale of Collateral during an Bankruptcy Proceeding (provided that no such bid may include a "credit bid" in respect of the Subordinated Secured Obligations unless the proceeds of such bid are otherwise sufficient to enable the Discharge of Senior Secured Obligations to occur) and (iii) the Collateral Agent, for the benefit of the Subordinated Term Loan Creditors, to receive any remaining proceeds of Collateral after the Discharge of Senior Secured Obligations.

(e) In addition, subject to the terms and conditions set forth in this Agreement, and to the extent the same does not violate and is not inconsistent with this Agreement, the Collateral Agent, for the benefit of the Subordinated Term Loan Creditors may take any action (not adverse to the priority status of the Liens on the Collateral securing the Senior Secured Obligations, or the rights of any Senior Exit Facility Creditor to exercise remedies in respect thereof, and in all events subject to the terms of this Agreement) in order to create, perfect, protect or preserve its Lien on the Collateral (except that it is agreed to and understood that prior to the Discharge of Senior Secured Obligations only the Collateral Agent, for

the benefit of the Senior Exit Facility Creditors, shall be permitted to maintain possession of the Collateral and with respect to all Collateral which may be perfected by "control" (as control is contemplated in the UCC), the Collateral Agent in such capacity shall either have sole control of such Collateral or the sole ability to exercise such control).

**2.10    Release of Liens**.  In the event that all or any part of the Collateral is sold, transferred or otherwise disposed of by any Obligor (or by any of the Senior Exit Facility Creditors in connection with an exercise of remedies):

(a) in connection with the taking of an Enforcement Action by the Senior Exit Facility Creditors; or

(b) as permitted under the terms of the Senior Exit Financing Documents and, after the Discharge of Senior Secured Obligations, the Subordinated Term Financing Documents; or

(c)  after the entry of an order by a bankruptcy court or other court or authorized person in any other Bankruptcy Proceeding authorizing the sale, transfer or other disposition of all or any portion of the Collateral of any Obligor;

then, in any such case, concurrently upon the release of any Liens of the Senior Exit Facility Creditors with respect to such Collateral, the Liens of the Subordinated Term Loan Creditors on such Collateral shall be automatically released and terminated and the Collateral Agent shall be authorized by each of the Subordinated Term Loan Creditors (and is hereby authorized and directed by each of the Subordinated Term Loan Creditors) to file UCC termination statements to evidence such automatic release and termination (and each Subordinated Term Loan Creditor shall be deemed to have consented under the Subordinated Term Financing Documents to such sale, transfer or other disposition free and clear of all Liens and to have waived the provisions of the Subordinated Term Financing Documents to the extent necessary to permit such transaction); provided, that the foregoing release by the Subordinated Term Loan Creditors shall not extend to or otherwise affect any of the rights of the Subordinated Term Loan Creditors to the proceeds from any sale, transfer or other disposition of Collateral after the Discharge of the Senior Secured Obligations.  Each of the Subordinated Term Loan Creditors agrees that no further act or documentation shall be necessary to evidence the release and termination by such Subordinated Term Loan Creditor of such Lien; provided, that each Subordinated Term Loan Creditor shall promptly (and, in any event, within five (5) Business Days after written request therefor) execute and deliver to the Collateral Agent such releases and terminations as the Collateral Agent shall reasonably request to evidence such automatic release and termination of the Liens of Subordinated Term Loan Creditors on such Collateral.

3. **Modifications.**

**3.1 Modifications to Senior Secured Obligations**.  The Senior Exit Facility Creditors may at any time and from time to time without the consent of or notice to any Subordinated Term Loan Creditor, without incurring liability to any Subordinated Term Loan Creditor and without impairing or releasing the obligations of any Subordinated Term Loan Creditor under this Agreement, change the manner or place of payment or extend the time of payment of or renew or alter any Senior Secured Obligations, or amend, supplement, restate or otherwise modify in any manner any Senior Exit Financing Document.

**3.2 Modifications to Subordinated Term Financing Documents**.  Until the Discharge of Senior Secured Obligations, and notwithstanding anything to the contrary contained in the Subordinated Term Financing Documents, no Subordinated Term Loan Creditor shall, without the prior written consent of Agent, agree to any amendment, modification or supplement to the Subordinated Term Financing Documents the effect of which is to (a) provide for the payment of interest in any manner other than as payable in kind, (b) shorten the dates upon which payments of principal or interest on, or other amounts in respect of, the Subordinated Secured Obligations, are due, (c) add any event of default, or add or make more restrictive any covenant or make any other change (in a manner adverse to the Borrower or any other Obligor) with respect to the Subordinated Secured Obligations, unless a corresponding amendment or modification is consented to by Senior Exit Facility Creditors (as applicable) and is concurrently made to the applicable Senior Exit Facility Document, (d) change the prepayment provisions of the Subordinated Secured Obligations or any other change that would require a prepayment or repayment of any Subordinated Term Loan Obligation prior to the Discharge of Senior Secured Obligations, (e) increase the obligations of any Obligor or confer any additional, material rights on any Subordinated Term Loan Creditor that would be adverse to the Obligors or the Senior Exit Facility Creditors, including, without limitations, any restrictions on the right to dispose of Collateral, (f) alter the subordination provisions with respect to the Subordinated Secured Obligations, including, without limitation, subordinating the Subordinated Secured Obligations to any other debt, or (g) otherwise contravene the terms of this Agreement.

4. **Waivers by Subordinated Term Loan Creditors; Subrogation**

(a)  Each Subordinated Term Loan Creditor hereby waives all notice of the acceptance by Senior Exit Facility Creditors of the subordination of Liens and the Subordinated Secured Obligations  and other provisions of this Agreement and all the notices not specifically required pursuant to the terms of this Agreement or under the UCC or other applicable law in connection with foreclosure on or sale of all or any portion of the Collateral, and each Subordinated Term Loan Creditor expressly consents to the reliance by the Senior Exit Facility Creditors upon the subordination of Liens and the Subordinated Secured Obligations and other agreements as herein provided.

(b) Each Subordinated Term Loan Creditor hereby waives any rights it may have under applicable law to assert the doctrine of marshaling or to otherwise require the Collateral Agent, or any other Senior Exit Facility Creditor to marshal any property of any Obligor for the benefit of Subordinated Exit Facility Creditors. Each Subordinated Term Loan Creditor further waives any right to demand, request, plead or otherwise assert or otherwise claim the benefit of any appraisal, valuation or other similar right that may otherwise be available under applicable law with respect to the Collateral or any other similar rights it may have under applicable law.

(c) Each Subordinated Term Loan Creditor agrees that no Senior Exit Facility Creditor shall have any liability to such Subordinated Term Loan Creditor, and each such Subordinated Term Loan Creditor hereby waives any claims against any Senior Exit Facility Creditor, arising out of any and all actions that any Senior Exit Facility Creditor may take or permit or omit to take with respect to (i) the Senior Exit Financing Documents, (ii) the collection of the Senior Secured Obligations or (iii) the foreclosure upon, or sale, liquidation or other disposition or realization of, any Collateral. Each Subordinated Term Loan Creditor agrees that no Senior Exit Facility Creditor shall have any duty, express or implied, fiduciary or otherwise, to it in respect of the maintenance or preservation of any Collateral, any Subordinated Secured Obligations or otherwise. No Senior Exit Facility Creditor nor any of its respective directors, officers, employees or agents will be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so, or will be under any obligation to sell or otherwise dispose of any Collateral upon the request of an Obligor, any Subordinated Term Loan Creditor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(d) Subject to the Discharge of Senior Secured Obligations, the Subordinated Term Loan Creditors shall be subrogated to the extent of any payments or distributions made by the Subordinated Term Loan Creditors to the Collateral Agent or the Senior Exit Facility Agent on behalf of the Senior Exit Facility Creditors, or otherwise applied to payment of such Senior Secured Obligations, in each instance, solely by reason of the provisions of this Agreement, to any rights of the Senior Exit Facility Creditors to receive payments and distributions of proceeds of Collateral applicable to the Senior Secured Obligations, if any. For purposes of such subrogation, no payments or distributions to the Senior Exit Facility Creditors of any cash, securities or other property to which the Subordinated Term Loan Creditors would have been entitled, except for the provisions of this Agreement, and no payments pursuant to the provisions of this Agreement to the Collateral Agent or Senior Exit Facility Agent on behalf of the Senior Exit Facility Creditors by any Subordinated Term Loan Creditor, shall be deemed to be a payment or distribution by any Obligor to or on account of the Senior Secured Obligations, it being understood and agreed that the provisions of this Agreement are solely for the purpose of defining the relative rights of the Senior Exit Facility Creditors on the one hand, and the Subordinated Term Loan Creditors on the other hand.

**5.** **Continued Effectiveness of this Agreement**. The terms of this Agreement, the subordination effected hereby, and the rights, prohibitions and obligations arising hereunder, shall remain in full force and effect until the Discharge of Senior Secured Obligations The Subordinated Term Loan

Agent and each holder of Subordinated Secured Obligations hereby acknowledge that the provisions of this Agreement are intended to be enforceable at all times, whether before the commencement of, after the commencement of, in connection with or premised on the occurrence of a Bankruptcy Proceeding. The Subordinated Term Loan Agent hereby waives any right it may have under applicable law or otherwise to revoke this Agreement or any of the provisions hereof.

6.     **Representations and Warranties; Covenants**. To induce the other party to execute and deliver this Agreement, the Senior Exit Facility Agent and Subordinated Term Loan Agent hereby represents and warrants to the other that, as of the date hereof: (a) it is an entity duly formed and validly existing under the laws of the state of its organization or formation; (b) it has the power and authority to enter into, execute, deliver and carry out the terms of this Agreement, all of which have been duly authorized by all proper and necessary action; (c) its execution of this Agreement will not violate or conflict with its organizational documents, any material agreement binding upon it or any law, regulation or order or require any consent or approval that has not been obtained; (d) this Agreement is the legal, valid and binding obligation, enforceable against it in accordance with its terms, except as such enforceability may be limited by Debtor Relief Laws and by equitable principles; and (e) it has full power and authority to bind each Senior Exit Facility Creditor and Subordinated Term Loan Creditor, as applicable, to the terms hereof and, as a result of its execution and delivery of this Agreement, each current and future Senior Exit Facility Lender and Subordinated Term Loan Lender, respectively, shall be bound by the terms of this Agreement.

7.     **New Liens; Similar Liens; Representative for Perfection**

(a)     Subject to <u>clause (c)</u> below, each of the Senior Exit Facility Creditors and each of the Subordinated Term Loan Creditors hereby agrees that all property of the Obligors (subject to exceptions set forth in the applicable collateral documents) is intended to secure all of the Senior Secured Obligations and Subordinated Secured Obligations; provided, that nothing in this <u>Section 7</u> shall limit the rights of (i) the Collateral Agent, for the benefit of any Senior Exit Facility Creditor from holding cash collateral pursuant to the terms of the Senior Exit Financing Documents and exercising rights and remedies against such cash collateral, or (ii) the Senior Exit Facility Creditors from exercising customary rights of setoff against accounts maintained with such Person, in each case pursuant to the terms and provisions of the Senior Exit Financing Documents. In furtherance of the foregoing, (i) no Subordinated Term Loan Creditor shall be permitted to restrict, in any manner, an Obligor from granting a Lien on any property for the benefit of the Senior Exit Facility Creditors so long as such Obligor grants a Lien on such property for the Subordinated Term Loan Agent for the benefit of the Subordinated Term Loan Creditors, (ii) until the Discharge of Senior Secured Obligations, no additional Liens shall be granted or permitted on any property of an Obligor to secure any Subordinated Secured Obligations unless immediately after giving effect to such grant or concurrently therewith, a senior and prior Lien shall be granted on such property to secure the Senior Secured Obligations, and (iii) no Subordinated Term Loan Creditor shall take any action to

perfect a Lien on any Collateral unless Senior Exit Facility Agent has theretofore perfected a Lien on such Collateral.

(b)  Each of the Senior Exit Facility Agent, on behalf of itself and the other Senior Exit Facility Creditors, Subordinated Term Loan Agent, on behalf of itself and the other Subordinated Term Loan Creditors and the Collateral Agent, agrees (i) to cooperate in good faith in order to determine, at any time, the specific property included in the Collateral securing the Senior Secured Obligations and Subordinated Secured Obligations, the steps taken to perfect Liens thereon and the identity of any Obligors, (ii) that the documents, agreements and instruments creating or evidencing the Liens of such parties in the Collateral, as of the date hereof, are in all material respects substantively similar, other than with respect to the relative priority of the Liens created or evidenced thereunder and (iii) any Lien obtained by Collateral Agent, either for the benefit of the Senior Exit Facility Creditors or Subordinated Term Loan Creditors in respect of any judgment obtained in respect of any Senior Exit Facility Obligation or Subordinated Term Loan Obligation shall be subject in all respects to the terms of this Agreement.

(c)  To the extent permitted by applicable law, each Subordinated Term Loan Creditor hereby appoints the Collateral Agent as such Person's contractual representative solely for purposes of perfecting such Person's Liens on any of the Collateral in the possession or under the "control" (as such term is defined in the UCC) of the Collateral Agent, for the benefit of the Senior Exit Facility Creditors to the extent such Liens may only be perfected by possession or control.  The Collateral Agent hereby acknowledges that it holds possession of or otherwise controls any such Collateral as the contractual representative of the Subordinated Term Loan Creditors for such purposes; provided, that the Collateral Agent shall not have any duty or liability to protect or preserve any rights in connection therewith. Promptly upon the Discharge of Senior Secured Obligations, the Collateral Agent shall be deemed to be holding the remainder of the Collateral, if any, in its possession for the benefit of the Subordinated Term Loan Creditors only, in each case, except as may otherwise be required by applicable law or court order.

8.      **Subordinated Term Loan Default Notice**.  The Subordinated Term Loan Agent and the Borrower shall provide the Senior Exit Facility Agent with notice upon the occurrence of any Default or Event of Default, under the Subordinated Term Loan Agreement and the Subordinated Term Loan Agent and the Borrower shall notify the Senior Exit Facility Agent in the event such Default or Event of Default is cured or waived.

9.      **Modification of This Agreement**.  Any modification or waiver of any provision of this Agreement, or any consent to any departure by any party from the terms hereof, shall not be effective in any event unless the same is in writing and signed by the Senior Exit Facility Agent and the Subordinated Term Loan Agent, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given.  Any notice to or demand on any party hereto in any event not specifically required hereunder shall not entitle the party receiving such notice or demand to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.  Notwithstanding the foregoing, no modification of or amendment to this Agreement that

creates any additional obligation on Obligors that is not contained in this Agreement, the Senior Exit Financing Documents or the Subordinated Term Financing Documents or that otherwise impacts any rights or obligations of the Obligors under the Agreement, the Senior Exit Financing Documents or the Subordinated Term Financing Documents shall be effective unless consented to by Obligors in writing.

**10.** **Notices**.  All notices, requests and other communications provided for in this Agreement (including any modifications of, or waivers or consents under, this Agreement) shall be given or made in writing (including by facsimile) delivered to the intended recipient at the address for notices specified below, or as to any party, at such other address as shall be designated by such party in a notice to each other party.  Except as otherwise provided in this Agreement, all such communications shall be deemed to have been duly given when delivered in person or by courier service and signed for against receipt thereof, upon receipt of facsimile or three Business Days after depositing it in the United States mail with postage prepaid and properly addressed; *provided*, that no notice to the Senior Exit Facility Agent or Subordinated Term Loan Agent shall be effective until received by such Agent.

Notices shall be addressed as follows:

(a)  (i)    If to the Subordinated Term Loan Agent or Senior Exit Facility Agent:

West LB AG, New York Branch
1211 Avenue of the Americas
New York, NY 10036
Attention:  [                    ]
Fax/Telecopy No.:  [                ]

With a copy to:

(i)  WestLB AG, Houston Representative Office
5555 San Felipe, 20th Floor
Houston, TX 77056
Attention:  Robert Vincent

(ii)  Kaye Scholer LLP
425 Park Avenue
New York, NY  10022
Attention: Madeleine Tan, Esq.
Fax/Telecopy No. (212) 836-6335

(b)  If the Collateral Agent:

The Bank of New York Mellon, Corporation Trust Services
[                    ]

[                    ]
                          Attention:  [                    ]
                          Fax/Telecopy No.:  [                    ]

          (c)  If to Borrowers:  at such address or facsimile number specified in the Senior Exit Facility Agreement and Subordinated Term Loan Agreement

or in any case, to such other address as the party addressed shall have previously designated by written notice to the serving party, given in accordance with this <u>Section 10</u>.  Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received; notices sent by telecopier shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next business day for the recipient).

          To the extent that this Agreement permits or requires any notice to be given by a Person to itself, acting in a different capacity (such as notices by the Senior Exit Facility Agent to the Collateral Agent, or vice versa, when the same Person is acting in both such capacities), such Person need not give actual notice to itself, but may deem such notice to have been given.

          **11.**     **<u>Cumulative Rights, No Waiver</u>**.  Each and every right, remedy and power granted to Senior Exit Facility Creditors hereunder shall be cumulative and in addition to any other right, remedy or power specifically granted herein, in the Senior Exit Facility Agreement, the other Senior Exit Financing Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise, and may be exercised from time to time, concurrently or independently and as often and in such order as Senior Exit Facility Agent or Collateral Agent may deem expedient.  Any failure or delay in exercising any such right, remedy or power, or abandonment or discontinuance of steps to enforce the same, shall not operate as a waiver thereof or affect any right thereafter to exercise the same, and any single or partial exercise of any such right, remedy or power shall not preclude any other or further exercise thereof or the exercise of any other right, remedy or power, and no such failure, delay, abandonment or single or partial exercise of such rights hereunder shall be deemed to establish a custom or course of dealing or performance among the parties hereto.

          **12.**     **<u>Further Assurances</u>**.  Each party to this Agreement promptly will execute and deliver such further instruments and agreements and do such further acts and things as may be reasonably requested by any other party hereto that may be necessary or desirable in order to effect fully the purposes of this Agreement, and any and all costs and expenses related thereto shall be paid by the Borrowers in accordance with the terms of the Senior Exit Financing Documents or Subordinated Term Financing Documents as applicable.

          **13.**     **<u>Severability</u>**.  In the event that any provision of this Agreement is deemed to be invalid, illegal or unenforceable by reason of the operation of any law or by reason of the interpretation placed

thereon by any court or governmental authority, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby, and the affected provision shall be modified to the minimum extent permitted by law so as most fully to achieve the intention of this Agreement.

14.     **Counterparts**.  This Agreement may be executed in any number of counterparts and by the different parties hereto or thereto on separate counterparts each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument.  Delivery of an executed counterpart of this Agreement by facsimile transmission or by electronic mail in portable document format (.pdf) shall be as effective as delivery of a manually executed counterpart hereof.

15.     **Defines Rights of Creditors**.  The provisions of this Agreement are solely for the purpose of defining the relative rights of Subordinated Term Loan Creditors and Senior Exit Facility Creditors and shall not be deemed to create any rights or priorities in favor of any other Person, including, without limitation, any Obligor.  Nothing in this Agreement shall (a) impair, as among the Obligors and the Senior Exit Facility Creditors on the one hand, and as between the Obligors and the Subordinated Term Loan Creditors, on the other hand, the obligations of the Obligors with respect to the payment of the Senior Secured Obligations and the Subordinated Secured Obligations, as the case may be, in accordance with their respective terms or (b) affect the relative rights of the Senior Exit Facility Creditors or the Subordinated Term Loan Creditors with respect to any other creditors of the Obligors.  The Senior Exit Facility Agent agrees on behalf of itself and the Senior Exit Facility Creditors not to contractually subordinate its Lien in any Collateral to the Lien of any other creditor of Obligors (other than any Permitted Lien) without the prior written consent of the Subordinated Term Loan Agent.

16.     **Successors and Assigns**.  This Agreement shall inure to the benefit of the successors and assigns of each Senior Exit Facility Creditor and each Subordinated Term Loan Creditor and shall be binding upon the successors and assigns of any Borrower and any other Obligor.

17.     **Conflict**.  In the event of any conflict between any term, covenant or condition of this Agreement and any term, covenant or condition of any of the Subordinated Term Financing Documents, the provisions of this Agreement shall control and govern.

18.     **Statement of Indebtedness to Subordinated Term Loan Agent**.     Borrower Representative will furnish to Senior Exit Facility Agent promptly upon Senior Exit Facility Agent's request a statement of the indebtedness owing from Borrowers to the Subordinated Term Loan Lenders, and will give Senior Exit Facility Agent access to the books and records of Borrowers in accordance with the Senior Exit Financing Documents so that Agent can make a full examination of the status of such indebtedness.

19.     **Headings**.  The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.

**20.** **Termination**. This Agreement shall terminate upon the Discharge of Senior Secured Obligations; provided, however, this Agreement shall be reinstated if at any time any payment of any of the Senior Secured Obligations is rescinded or must otherwise be returned by any Senior Exit Facility Lender or any representative thereof and the Senior Secured Obligations, or portion thereof, intended to have been satisfied shall be deemed to be reinstated and outstanding as if such payment had not occurred.

**21.** **APPLICABLE LAW.** THIS AGREEMENT SHALL, IN ACCORDANCE WITH SECTION 5-1401 OF THE GENERAL OBLIGATION LAW OF THE STATE OF NEW YORK, BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY CONFLICTS OF LAWS PRINCIPLES THEREOF THAT WOULD CALL FOR THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION.

**22.** **CONSENT TO JURISDICTION AND SERVICE OF PROCESS.** EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE NONEXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK BOROUGH OF MANHATTAN OR OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF SUCH STATE AND ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT THAT ANY SENIOR EXIT FACILTY CREDITOR OR SUBORDINATED TERM LOAN CREDITOR MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AGAINST ANY OBLIGOR OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION. EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES HEREOF. NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW.

**23.** **WAIVER OF JURY TRIAL.** EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR

THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto, by their officers thereunto duly authorized, have executed and delivered this Agreement as of the date first above written.

<u>SENIOR EXIT FACILITY AGENT</u>:

**WESTLB AG, NEW YORK BRANCH**

By:_____
    Name:
    Title:

<u>SUBORDINATED TERM LOAN AGENT</u>:

**WESTLB AG, NEW YORK BRANCH**

By:_____
    Name:
    Title:

<u>COLLATERAL  AGENT</u>:

**THE BANK OF NEW YORK MELLON**

By:_____
    Name:
    Title:

BORROWER SUBSIDIARIES AND OBLIGORS:

**WHITE ENERGY HOLDING COMPANY, LLC**

By: _____
    Name:
    Title:

**[WHITE ENERGY, INC.]**

By: _____
    Name:  Jonathan M. Pertchik
    Title:

**WE HEREFORD, LLC**

By: _____
    Name:
    Title:

**PLAINVIEW BIOENERGY, LLC**

By: _____
    Name:
    Title:

**WHITE ENERGY TECHNOLOGIES, INC.**

By: _____
    Name:

Title:

Intercreditor and Subordination

**U.S. ENERGY PARTNERS, LLC**


By: _____
    Name:
    Title: