# EXHIBIT E

# STOCK OPTION AGREEMENT

THIS AGREEMENT is made this \_\_\_\_ day of _____, 2010 (the "**Grant Date**") between White Energy, Inc., a Delaware corporation (the **"Company"**), and _____ (the "**Optionee**").

WHEREAS, the Company desires to grant to the Optionee an option to purchase shares of common stock, par value $.01 (the "**Shares"**) under the Company's Long-Term Incentive Plan (the "**Plan**"); and

WHEREAS, the Company and the Optionee understand and agree that any terms used herein have the same meanings as in the Plan (the Optionee being referred to in the Plan as a "Participant").

NOW, THEREFORE, in consideration of the following mutual covenants and for other good and valuable consideration, the parties agree as follows:

1. **GRANT OF OPTION**

   The Company grants to the Optionee the right and option to purchase all or any part of an aggregate of _____ Shares (the **"Option"**) on the terms and conditions and subject to all the limitations set forth herein and in the Plan, which is incorporated herein by reference. The Optionee acknowledges receipt of a copy of the Plan and acknowledges that the definitive records pertaining to the grant of this Option, and exercises of rights hereunder, shall be retained by the Company. The Option granted herein is intended to be a Nonstatutory Option as defined in the Plan.

2. **PURCHASE PRICE**

   The purchase price of the Shares subject to the Option shall be $\_\_ per Share, the Fair Market Value of the Shares as of the Grant Date. The foregoing notwithstanding, the Optionee acknowledges that the Company cannot and has not guaranteed that the Internal Revenue Service ("**IRS**") will agree that the per Share purchase price of the Option equals or exceeds the fair market value of a Share on the Grant Date in a later determination. The Optionee agrees that if the IRS determines that the Option was granted with a per Share exercise price that was less than the fair market value of a Share on the Grant Date, the Optionee shall be solely responsible for any costs or tax liabilities related to such a determination.

3. **EXERCISE OF OPTION**

   Subject to the Plan and this Agreement, the Option shall be exercisable as follows:

EXERCISE PERIOD

| Number of Shares | Commencement Date | Expiration Date |
|---|---|---|
| _____ | 1st Anniversary of Grant Date | 10 Years from Grant Date |
| _____ | 2nd Anniversary of Grant Date | 10 Years from Grant Date |
| _____ | 3rd Anniversary of Grant Date | 10 Years from Grant Date |
| _____ | 4th Anniversary of Grant Date | 10 Years from Grant Date |

Notwithstanding the foregoing, if there is a Change in Control and the Optionee has been employed by the Company at all times from the Grant Date through the date of the Change in Control, one hundred percent (100%) of the Shares which are otherwise unvested Shares shall become vested Shares immediately prior to, but subject to, the Change in Control. For purposes of this Agreement, a "**Change in Control**" shall be deemed to occur on the earliest of (a) the purchase or other acquisition of outstanding shares of the Company's capital stock by any entity, person or group of beneficial ownership, as that term is defined in Rule 13d-3 under the Exchange Act (other than the Company or one of its subsidiaries or employee benefit plans), in one or more transactions, such that the holder, as a result of such acquisition, now owns more than 50% of the outstanding capital stock of the Company entitled to vote for the election of directors ("**Voting Stock**"); (b) the completion by any entity, person, or group (other than the Company or one of its subsidiaries or employee benefit plans) of a tender offer or an exchange offer for more than 50% of the outstanding Voting Stock of the Company; and (c) the effective time of (1) a merger or consolidation of the Company with one or more corporations as a result of which the holders of the outstanding Voting Stock of the Company immediately prior to such merger or consolidation hold less than 50% of the Voting Stock of the surviving or resulting corporation immediately after such merger or consolidation, or (2) a transfer of all or substantially all of the property or assets of the Company other than to an entity of which the Company owns at least 80% of the Voting Stock, or (3) the approval by the stockholders of the Company of a liquidation or dissolution of the Company.

4. **ISSUANCE OF STOCK**

The Option may be exercised in whole or in part (to the extent that it is exercisable in accordance with its terms) by giving written notice (or any other approved form of notice) to the Company. Such written notice shall be signed by the person exercising the Option, shall state the number of Shares with respect to which the Option is being exercised, shall contain the warranty, if any, required under the Plan and shall specify a date (other than a Saturday, Sunday or legal holiday) not less than five (5) nor more than ten (10) days after the date of such written notice, as the date on which the Shares will be purchased, at the principal office of the Company during ordinary business hours, or at such other hour and place agreed upon by the Company and the person or persons exercising the Option, and shall otherwise comply with the terms and conditions of this Agreement and the Plan. On the date specified in such written notice (which date may be extended by the Company if any law or regulation requires the Company to take any action with respect to the Option Shares prior to the issuance thereof), the Company shall

accept payment for the Option Shares and shall deliver to the Optionee as soon as practicable thereafter an appropriate certificate or certificates for the Shares as to which the Option was exercised.

The Option price of any Shares shall be payable at the time of exercise as determined by the Company in its sole discretion either:

(a)    in cash, by certified check or bank check, or by wire transfer;

(b)    in whole shares of the Company's common stock, provided, however, that (i) if such shares were acquired pursuant to an incentive stock option plan (as defined in Code Section 422) of the Company or Affiliate, then the applicable holding period requirements of said Section 422 have been met with respect to such shares, (ii) if the Optionee is subject to the reporting requirements of Section 16 of the Exchange Act, and if such shares were granted pursuant to an option, then such option must have been granted at least six (6) months prior to the exercise of the Option hereunder, and (iii) the transfer of such shares as payment hereunder does not result in any adverse accounting consequences to the Company;

(c)    through the delivery of cash or the extension of credit by a broker-dealer to whom the Optionee has submitted notice of exercise or otherwise indicated an intent to exercise an Option (a so-called "cashless" exercise); or

(d)    in any combination of (a), (b) or (c) above.

The Fair Market Value of the stock to be applied toward the purchase price shall be determined as of the date of exercise of the Option. Any certificate for shares of outstanding stock of the Company used to pay the purchase price shall be accompanied by a stock power duly endorsed in blank by the registered holder of the certificate, with signature guaranteed in the event the certificate shall also be accompanied by instructions from the Optionee to the Company's transfer agent with respect to disposition of the balance of the shares covered thereby.

The Company shall pay all original issue taxes with respect to the issuance of Shares pursuant hereto and all other fees and expenses necessarily incurred by the Company in connection therewith. The holder of this Option shall have the rights of a stockholder only with respect to those Shares covered by the Option which have been registered in the holder's name in the share register of the Company upon the due exercise of the Option.

5.    **REPURCHASE RIGHT**

(a)    <u>Restrictions on Transferability</u>. The Optionee may not sell or otherwise transfer the Shares purchased pursuant to the exercise of all or part of this Option, except as otherwise set forth in this Paragraph 5. Notwithstanding the foregoing, the restrictions on transferability will not apply with respect to (i) transfers of Shares pursuant to applicable laws of descent and distribution or (ii) transfers of Shares among the Optionee's Family Group; provided that in each case such restrictions on

3

29083159

transferability will continue to be applicable to the Shares irrespective of such transfer. Any restrictions on the transfer of Shares set forth in this Paragraph 5 will terminate on the earlier of a Qualified Public Offering (as hereinafter defined) or, if mandated under Paragraph 5(e), and only to the extent so mandated, a Change in Control. For purposes of this Agreement, "**Family Group**" means the Optionee's spouse and descendants (whether natural or adopted), any trust solely for the benefit of the Optionee and/or the Optionee's spouse and/or descendants and any individual retirement account maintained by the Optionee.

(b) <u>Termination of Services</u>. Beginning on the date nine (9) months following the date the Optionee's position with the Company terminates (or, if earlier, six (6) months following the date the Optionee last exercised an Option hereunder, if the Optionee is no longer permitted to exercise any Option, but in no event prior to the date the Optionee's position with the Company terminates), the Company or its assignee(s) shall have the right to purchase the Optionee's Shares at the price as determined in Paragraph 5(c), below, and on the other terms set forth herein.

(c) <u>Offer Price</u>. The Shares shall be purchased at a price equal to their "Stipulated Value." For purposes of this Paragraph 5, the "**Stipulated Value**" of the Shares shall be equal to the Fair Market Value of the Shares. The Stipulated Value of the Shares as so determined shall be final, binding and conclusive on all parties. Notwithstanding the above, if the Optionee's position with the Company was terminated for cause (as such term is defined in the Plan), the purchase price of the Shares in that event shall be equal to the purchase price set forth in Paragraph 2 or, if less, the Stipulated Value as determined in accordance with this Paragraph 5(c).

(d) <u>Right of Repurchase</u>. The Company or its assignee(s) shall have three hundred sixty-five (365) days from the termination of the Optionee's services to exercise the right to purchase or otherwise acquire all or any of the Shares. In the event of a repurchase under Paragraph 5(b), the Company or its assignee(s) shall exercise its right to purchase or otherwise acquire the Shares by giving written notice thereof to the Optionee (or the Optionee's legal representative in the event of his or her death) between the ninth month following the termination of the Optionee's services (or, if earlier, the sixth (6th) month following the date the Optionee last exercised an Option hereunder, if the Optionee is no longer permitted to exercise any Option, but in no event prior to the date the Optionee's position with the Company terminates) and three hundred sixty-five (365) days following such termination. If the Company or its assignee(s) provides notice of its decision to so exercise, the purchase and sale of such Shares shall be consummated as soon as practicable at the principal office of the Company at the time and date specified in such notice to the Optionee. The purchase price may, at the Company's or its assignee(s)' discretion, be payable through the issuance of a note, payable in up to three substantially equal installments beginning on the first anniversary of the closing of such purchase and bearing interest (payable quarterly) at a rate per annum equal to the prime rate as published in The Wall Street Journal from time to time. The Company will be entitled to receive customary representations and warranties from the Optionee (including

representations and warranties regarding good title to the Shares, the absence of any liens on such title or other encumbrances with respect to the transfer of the Shares and the ability of the Optionee or his or her Family Group to consummate the sale).

(e) <u>Sale Upon Change in Ownership of the Company</u>. Notwithstanding anything in this Paragraph 5 to the contrary, in the context of a pending Change in Control, (i) the Optionee shall vote his or her Shares in favor of such Change in Control, shall tender his or her Shares if and as required under the applicable purchase or merger agreement (and/or be required to exercise any portion of the Option which is vested or becomes vested upon such Change in Control, which Option, if not then exercised, will expire immediately after the Change in Control) and shall execute the purchase or merger agreement and other related instruments negotiated by the Company and approved by the Board of Directors of the Company and (ii) the Optionee expressly covenants and agrees to waive any dissenters' rights under applicable law. The purchase and sale of such Shares shall be consummated at the same time, on the same basis, and pursuant to the same conditions upon which payments are made to all other stockholders of the Company under the terms of the applicable Change in Control. The remaining Shares subject to the Option, if any, shall continue to become exercisable in accordance with the vesting schedule set forth in Paragraph 3.

If the Company or the holders of the Company's securities enter into any negotiation or transaction for which Rule 506 (or any similar rule then in effect) promulgated by the Securities and Exchange Commission under the Securities Act of 1933 may be available with respect to such negotiation or transaction (including a merger, consolidation or other reorganization), the Optionee shall, at the request of the Company, appoint a purchaser representative (as such term is defined in Rule 501 (or any similar rule then in effect) promulgated by the Securities and Exchange Commission under the Securities Act of 1933) reasonably acceptable to the Company. If the Optionee appoints the purchaser representative designated by the Company, the Company will pay the fees for such purchaser representative, but if the Optionee declines to appoint the purchaser representative designated by the Company, the Optionee will appoint another purchaser representative (reasonably acceptable to the Company), and the Optionee will be responsible for the fees of the purchaser representative so appointed.

(f) <u>Disability or Death of the Optionee</u>. Upon the termination of the Optionee's services as the result of his or her Disability or death (or upon the Disability or death of the Optionee within the three (3) month period following the termination of his or her services (other than upon a termination for cause, as defined in the Plan)), the date nine (9) months following such death or, in the case of Disability, nine (9) months following the termination of the Optionee's services as a result of such Disability (or, in either case, if earlier, the expiration of the originally prescribed term of the Option) shall be treated as the date the Optionee's services with the Company terminates for purposes of Paragraphs 5(b) and 5(d).

(g) <u>Removal of Repurchase Provision</u>. The right of repurchase of the Company or its assignee(s) shall, and the limitations on transferability, become null and void upon a "**Qualified Public Offering**", which shall be defined as the first sale of common stock by the Company to underwriters for the account of the Company pursuant to a registration statement under the Securities Act of 1933, as amended, filed with and declared effective by the Securities and Exchange Commission, with minimum net proceeds of Fifty Million Dollars ($50,000,000).

(h) <u>Extension of Repurchase Right</u>. Notwithstanding anything to the contrary contained herein, all repurchases of Shares by the Company shall be subject to applicable restrictions contained in the Delaware General Corporation Law and in the Company's and its subsidiaries' and parent's debt and equity financing agreements. If any such restrictions prohibit the repurchase of the Shares hereunder to which the Company otherwise is entitled, the Company shall make such repurchases as soon as it is permitted and able to do so under such restrictions and based upon such procedures as the Company may then establish.

6. **FORFEITURE**

If the Optionee breaches the terms of that certain Protective Agreement as executed by and between the Optionee and the Company (the "**Protective Agreement**"), any exercise, payment or delivery made pursuant to this Agreement during the two (2) year period prior to the breach of the Protective Agreement shall be rescinded. The Company shall notify the Optionee in writing of any such rescission within one (1) year of the date it acquires actual knowledge of such breach. Within ten (10) days after receiving such a notice from the Company, the Optionee shall pay to the Company the amount of any gain realized or payment received as a result of the exercise, payment or delivery pursuant to the Option. Such payment shall be made either in cash or by returning to the Company the number of Shares that the Optionee received in connection with the rescinded exercise, payment or delivery.

7. **NON-ASSIGNABILITY**

This Option shall not be transferable by the Optionee and shall be exercisable only by the Optionee, except as the Plan or this Agreement may otherwise provide.

8. **NOTICES**

Any notices required or permitted by the terms of this Agreement or the Plan shall be given by registered or certified mail, return receipt requested, addressed as follows:

    To the Company:    White Energy, Inc.
                                  5005 LBJ Freeway, Suite 1400
                                  Dallas, TX 75244
                                  Attention: President

To the Optionee: _____
_____
_____

or to such other address or addresses of which notice in the same manner has previously been given. Any such notice shall be deemed to have been given when mailed in accordance with the foregoing provisions.

9. **GOVERNING LAW**

    This Agreement shall be construed and enforced in accordance with the laws of the State of Delaware.

10. **BINDING EFFECT**

    This Agreement shall (subject to the provisions of Paragraph 7 hereof) be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

    **IN WITNESS WHEREOF**, the Company and the Optionee have caused this Agreement to be executed on their behalf, by their duly authorized representatives, all on the day and year first above written.

WHITE ENERGY, INC.                                      OPTIONEE:


By: _____                             _____
Its: _____

29083159