# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WHITE ENERGY, INC., *et al.*,[1] | Case No. 09-11601 (CSS) |
| Debtors. | Jointly Administered |

## THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR WHITE ENERGY, INC. AND ITS AFFILIATED DEBTORS FILED BY THE DEBTORS AND WESTLB AG, NEW YORK BRANCH, AS ADMINISTRATIVE AGENT

Dated:   July 15, 2010
         Wilmington, Delaware

DUANE MORRIS LLP
Michael R. Lastowski (DE 3892)
Richard W. Riley (DE 4052)
Christopher M. Winter (DE 4163)
1100 North Market Street, Suite 1200
Wilmington, Delaware  19801
Telephone:     (302) 657-4900
Facsimile:     (302) 657-4901
E-mail: mlastowski@duanemorris.com
rwriley@duanemorris.com
cmwinter@duanemorris.com

and

ICE MILLER LLP
Henry A. Efroymson, Esq.
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
Tel:     (317) 236-2100
Fax:     (317) 236-2219

Counsel to the Debtors and Debtors in Possession

KAYE SCHOLER LLP
Madlyn Gleich Primoff
425 Park Avenue
New York, NY 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-6525
E-mail:  mprimoff@kayescholer.com

and

PEPPER HAMILTON
David B. Stratton (DE No. 960)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19899-1709
Tel:  (302) 777-6500
Fax:  (302) 421-8390

Counsel to WestLB AG, New York Branch, as Administrative Agent

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: White Energy, Inc. (1083); White Energy Holding Company, LLC (3034); US Energy Partners, L.L.C. (1177); WE Hereford, LLC (9408); and Plainview BioEnergy, LLC (5553).  The corporate headquarters for each of the Debtors is 5005 LBJ Freeway, Suite 1400, Dallas, TX  75244.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION .................................................................. 1
  1.1    Definitions .................................................................................................................. 1
  1.2    Interpretation; Application of Definitions; Rules of Construction ....................... 14
  1.3    Exhibits, Schedules, Appendices and Plan Documents ....................................... 14

ARTICLE II. PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS
  AND PRIORITY TAX CLAIMS UNDER THE PLAN .................................................. 15
  2.1    Introduction ............................................................................................................ 15
  2.2    Administrative Claims and Priority Tax Claims................................................... 15
  2.3    Time for Filing of Administrative Claims ............................................................ 15
  2.4    Allowance of Administrative Claims/Fee Claims ................................................ 16
  2.5    Treatment of Allowed Administrative Claims...................................................... 16
  2.6    Treatment of Priority Tax Claims ......................................................................... 17

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ....................... 17
  3.1    Classification of Claims and Equity Interests ...................................................... 17

ARTICLE IV. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
  INTERESTS UNDER THE PLAN ................................................................................. 18
  4.1    Satisfaction of Claims and Equity Interests ......................................................... 18
  4.2    Class 1 – Priority Claims ...................................................................................... 18
  4.3    Class 2 – Secured Lender Claims ......................................................................... 19
  4.4    Class 3 – Other Secured Claims............................................................................ 20
  4.5    Class 4 – Secured Tax Claims. ............................................................................. 21
  4.6    Class 5 – General Unsecured Claims.................................................................... 21
  4.7    Class 6 – Subsidiary Equity Interests................................................................... 22
  4.8    Class 7 – Preferred White Energy Equity Interests. ............................................ 22
  4.9    Class 8 – Common White Energy Equity Interests. ............................................. 22
  4.10   Limitation on Recovery for Claims Against More Than One Debtor ................. 22

ARTICLE V. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
  REJECTION BY ONE OR MORE CLASSES OF CLAIMS ........................................ 23
  5.1    Classes Entitled to Vote ........................................................................................ 23
  5.2    Class Acceptance Requirement.............................................................................. 23
  5.3    Cramdown .............................................................................................................. 23

ARTICLE VI. MEANS FOR IMPLEMENTATION OF THE PLAN........................................ 23
  6.1    Substantive Consolidation of Debtors for Plan Purposes Only ............................ 23
  6.2    Operations Between the Confirmation Date and the Effective Date .................... 24
  6.3    Transactions on the Effective Date ....................................................................... 24
  6.4    Corporate Action: Certificates of Incorporation, By-laws, Formation
         Documents and Limited Liability Company Agreements ..................................... 25

| 6.5 | Effectuating Documents; Further Transactions | 26 |
|---|---|---|
| 6.6 | Execution of Documents and Certain Other Actions on or Prior to the Effective Date | 26 |
| 6.7 | Continued Corporate Existence of the Debtors | 26 |
| 6.8 | Revesting of Assets | 27 |
| 6.9 | Management | 27 |
| 6.10 | Initial Boards of Directors, Managers and Members | 27 |
| 6.11 | Officers / Employees | 27 |
| 6.12 | Management Incentive Plan | 28 |
| 6.13 | Causes of Action/Reservation of Rights | 28 |
| 6.14 | Releases and Injunction Related to Releases | 29 |
| 6.15 | Appointment of the Disbursing Agent | 30 |
| 6.16 | Sources of Cash for Plan Distributions | 31 |
| 6.17 | Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent | 31 |
| 6.18 | Certificates. | 31 |

ARTICLE VII. DISTRIBUTION PROVISIONS ........................................................................ 31
| 7.1 | Distribution Record Date | 31 |
| 7.2 | Plan Distributions | 32 |
| 7.3 | Timing of Plan Distributions | 32 |
| 7.4 | Address for Delivery of Plan Distributions/Unclaimed Distributions | 32 |
| 7.5 | De Minimis Distributions | 33 |
| 7.6 | Time Bar to Cash Payments | 33 |
| 7.7 | Manner of Payment under the Plan | 33 |
| 7.8 | Expenses Incurred On or After the Effective Date and Claims of the Disbursing Agent | 33 |
| 7.9 | Fractional Plan Distributions | 34 |
| 7.10 | Setoffs | 34 |
| 7.11 | Compliance with Tax Requirements | 34 |
| 7.12 | Hart-Scott-Rodino Compliance | 34 |

ARTICLE VIII. PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS ........................................................................ 35
| 8.1 | Prosecution of Contested Claims | 35 |
| 8.2 | Claims Objection Deadline | 35 |
| 8.3 | Claims Settlement | 35 |
| 8.4 | No Plan Distributions Pending Allowance | 35 |
| 8.5 | Distributions After Allowance | 35 |
| 8.6 | Contested Claims Reserve | 36 |
| 8.7 | No Recourse Against the Debtors or Reorganized Debtors | 36 |

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE ........................................................................ 36
| 9.1 | Conditions Precedent to Confirmation | 36 |
| 9.2 | Conditions Precedent to the Occurrence of the Effective Date | 37 |

9.3     Waiver of Conditions ................................................................................ 38
9.4     Effect of Non-Occurrence of the Effective Date ................................... 38

ARTICLE X. THE DISBURSING AGENT ....................................................... 39
10.1    Rights and Powers of Disbursing Agent .............................................. 39
10.2    Exculpation of the Disbursing Agent .................................................... 39

ARTICLE XI. TREATMENT OF EXECUTORY CONTRACTS ........................... 40
11.1    Assumption and Rejection of Executory Contracts ............................. 40
11.2    Cure ....................................................................................................... 41
11.3    Claims Arising from Rejected Contracts .............................................. 42
11.4    Survival of Indemnification Obligations .............................................. 42

ARTICLE XII. RETENTION OF JURISDICTION ................................................ 42

ARTICLE XIII. MISCELLANEOUS PROVISIONS ............................................. 44
13.1    Term of Injunctions or Stays ................................................................ 44
13.2    Payment of Statutory Fees ................................................................... 44
13.3    Claims and Equity Interests Satisfied .................................................. 44
13.4    Exculpation ........................................................................................... 45
13.5    Discharge of Liabilities ......................................................................... 45
13.6    Discharge of Debtors ............................................................................ 45
13.7    Injunction Against Interference With Plan ........................................... 46
13.8    Notices .................................................................................................. 46
13.9    Headings ............................................................................................... 47
13.10   Governing Law ...................................................................................... 47
13.11   Expedited Determination ...................................................................... 47
13.12   Exemption from Transfer Taxes ........................................................... 48
13.13   Notice of Entry of Confirmation Order and Relevant Dates ............... 48
13.14   Interest .................................................................................................. 48
13.15   Modification of the Plan and Amendments .......................................... 48
13.16   Revocation, Withdrawal or Non-Consummation of Plan .................... 49
13.17   Rates ..................................................................................................... 49
13.18   Injunctions ............................................................................................ 49
13.19   Binding Effect ....................................................................................... 50
13.20   Severability of Plan Provisions ............................................................ 50
13.21   No Admissions ...................................................................................... 50
13.22   Dissolution of the Committee ............................................................... 51
13.23   Time ...................................................................................................... 51
13.24   Successors and Assigns ........................................................................ 51
13.25   Conflict between Plan, Disclosure Statement and Plan Documents .... 51
13.26   Substantial Consummation. .................................................................. 51

White Energy, Inc., White Energy Holding Company, LLC, U.S. Energy Partners, LLC, WE Hereford, LLC and Plainview BioEnergy, LLC and WestLB AG, New York Branch, as administrative agent for the Secured Lenders under the Credit Agreement hereby collectively and jointly propose the following joint chapter 11 plan of reorganization:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**1.1**   <u>**Definitions.**</u>

The following terms used herein shall have the respective meanings defined below.

1.1.1   "**Administrative Claim**" means a Claim incurred by a Debtor (or its Estate) on or after the Petition Date and before the Effective Date, except as permitted by section 503(b)(9) of the Bankruptcy Code, for a cost or expense of administration in the Chapter 11 Cases that is entitled to priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (x) Fee Claims and (y) any fees or charges assessed against the Debtors' Estates under section 1930 of chapter 123 of title 28 of the United States Code.

1.1.2   "**Affiliate**" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

1.1.3   "**After Consultation with the Debtors**" means that the Prepetition Agent will confer with the Debtors' management; provided, however, that if at any time on or before the Effective Date, the Debtors shall determine not to be a Plan proponent, then the Prepetition Agent shall have no obligation to consult with the Debtors.

1.1.4   "**Allowed**," when used with respect to any Claim, <u>except</u> for a Claim that is an Administrative Claim, means such Claim to the extent it is Allowed pursuant to the Plan or Final Order of the Bankruptcy Court and is not (i) a Disallowed Claim or (ii) not in whole or in part a Contested Claim or a Disallowed Claim; with respect to any Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Article II of this Plan.

1.1.5   "**Amended White Energy By-Laws**" means the Amended and Restated By-Laws of Reorganized White Energy, Inc. (and, to the extent the Prepetition Agent and Requisite Secured Lenders determine necessary, amendments to the LLC agreements of the Reorganized Subsidiaries) to be in effect on the Effective Date, substantially in the form set forth in the Plan Supplement and in all events acceptable to the Requisite Secured Lenders.

1.1.6   "**Amended White Energy Certificate of Incorporation**" means the Amended and Restated Certificate of Incorporation of Reorganized White Energy, Inc. to be effective on the Effective Date, substantially in the form set forth in the Plan Supplement and in all events acceptable to the Requisite Secured Lenders.

1.1.7 "**Assets**" means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

1.1.8 "**Assumed Executory Contract**" means an Executory Contract entered into prior to the Petition Date, as contemplated by section 365 of the Bankruptcy Code, assumed pursuant to section 365(a) or section 1123(b)(2) of the Bankruptcy Code in accordance with Article XI of this Plan.

1.1.9 "**Avoidance Actions**" means all Causes of Action that arise under Chapter 5 of the Bankruptcy Code, including Causes of Action under section 502(d), 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code.

1.1.10 "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time, and applicable to the Chapter 11 Cases.

1.1.11 "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

1.1.12 "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.1.13 "**Bar Date**" means September 14, 2009, which is the date established by the Bar Date Order as the general bar date and the bar date for Section 503(b)(9) Claims in these Chapter 11 Cases, and such other deadlines for filing proofs of claim that are set forth in the Bar Date Order.

1.1.14 "**Bar Date Order**" means the order of the Bankruptcy Court entered on July 20, 2009, establishing the Bar Date.

1.1.15 "**Business Day**" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.16 "**Cash**" means legal tender of the United States of America.

1.1.17 "**Causes of Action**" means all claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections to claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, executions, judgments or demands whatsoever, whether known or unknown, choate or inchoate, existing or hereafter arising, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, in law, equity or otherwise.

1.1.18    "**Chapter 11 Cases**" means the cases commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors and jointly administered as In re White Energy, Inc., Chapter 11 Case No. 09-11601 (CSS).

1.1.19    "**Claim**" means (a) any right to payment, whether or not such right is known or unknown, asserted, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, asserted, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.1.20    "**Claims Agent**" means the entity designated in the Confirmation Order to process proofs of claim.

1.1.21    "**Claims Objection Deadline**" means the deadline for filing objections to Claims as set forth in section 8.2 of the Plan.

1.1.22    "**Class**" means a category of holders of Claims or Equity Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

1.1.23    "**Class 2 Distribution Pool**" means the New Term Loans and the Class 2 New Common Stock.

1.1.24    "**Class 2 New Common Stock**" means 9,400 shares of New Common Stock, representing 94% of the total number of shares of New Common Stock issuable under the Plan after giving effect to the issuance of all shares of New Common Stock reserved (at the Effective Date) for issuance pursuant to the Management Incentive Plan and the Fagen Equity Distribution.

1.1.25    "**Collateral**" means any Asset of the Estate of any Debtor that is subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, and which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.26    "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

1.1.27    "**Common White Energy Equity Interests**" means any share of common stock evidencing an ownership interest in White Energy, Inc. whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such common stock.

1.1.28    "**Compensation Committee**" means the compensation committee of the board of directors of Reorganized White Energy, Inc.

1.1.29    "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

1.1.30     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court, pursuant to section 1128 of the Bankruptcy Code, as it may be continued from time to time, to consider confirmation of the Plan.

1.1.31     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan, pursuant to section 1129 of the Bankruptcy Code, which Confirmation Order shall be acceptable to the Prepetition Agent (After Consultation with the Debtors) and the Requisite Secured Lenders, each in the exercise of their sole and absolute discretion.

1.1.32     "**Contested**" when used with respect to a Claim, means such Claim (i) if it is listed in the Schedules as disputed, unliquidated, and/or contingent and as to which a Proof of Claim has not been filed with the Bankruptcy Court; (ii) if it is listed in the Schedules, but not as disputed, unliquidated, or contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, and (A) the Proof of Claim amount exceeds the amount indicated in the Schedules, and/or (B) the Proof of Claim asserts priority greater than the priority set forth in the Schedules; (iii) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) to the extent such Claim is a Claim arising under a rejected Executory Contract, proof of which Claim is to be filed with the Bankruptcy Court before the deadline for filing such Claim; provided, however, that in the case of Claims falling under (ii), (iii) or (iv) above, an objection must have been filed on or before the Claims Objection Deadline; provided further, however, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim.

1.1.33     "**Contested Claims Reserve**" means a reserve of Cash established in accordance with section 8.6 of the Plan.

1.1.34     "**Credit Agreement**" means that certain Amended and Restated Credit Agreement, dated as of July 31, 2006, by and among White Energy Holding Company, LLC, as Borrower (as defined in the Credit Agreement), the Borrower Subsidiaries (as defined in the Credit Agreement), each of the lenders party thereto, the Prepetition Agent and any of their respective successors or assigns, and any and all of the documents, notes, instruments and other agreements, including each of the Financing Documents (as defined in the Credit Agreement), the Ancillary Documents (as defined in the Credit Agreement), the Letters of Credit (as defined in the Credit Agreement), and the Swap Agreements, executed, delivered or filed pursuant to or in connection with the Amended and Restated Credit Agreement, as such Amended and Restated Credit Agreement, documents, notes and other agreements and instruments (including the Financing Documents, the Ancillary Documents, the Letters of Credit and the Swap Agreements) may have been amended, supplemented, modified or allonged.

1.1.35     "**Cure Payments**" means payment on an Allowed Claim arising in connection with a Debtor's obligation under section 365(b)(1)(A) or (B) of the Bankruptcy Code relating to an Assumed Executory Contract.

1.1.36     "**Debtors**" means White Energy, Inc., White Energy Holding Company, LLC, WE Hereford, LLC, U.S. Energy Partners, LLC, and Plainview BioEnergy, LLC.

1.1.37 "**Disallowed**" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

1.1.38 "**Disbursing Agent**" means Reorganized White Energy, Inc. in (a) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing any other act or task that is or may be delegated to the Disbursing Agent under the Plan.

1.1.39 "**Disclosure Statement**" means the Disclosure Statement filed with respect to the Plan, as it may be amended or modified from time to time, including all exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.1.40 "**Distribution Date**" means (a) with respect to a Claim (other than a General Unsecured Claim) (i) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim, or (ii) a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, if not Allowed on the Effective Date; and (b) with respect to an Allowed General Unsecured Claim, the Initial Distribution Date, the dates of any Interim Distributions, and the Final Distribution Date.

1.1.41 "**Distribution Record Date**" means the record date for purposes of making Plan Distributions under the Plan on account of Allowed Claims, which Distribution Record Date shall be the Confirmation Date or such other date as may be designated in the Confirmation Order.

1.1.42 "**Effective Date**" means the first Business Day on which all of the conditions to the occurrence of the Effective Date, as specified in section 9.2 of the Plan, have been satisfied or waived in accordance with the provisions of section 9.3 of the Plan.

1.1.43 "**Equity Interest**" means any ownership interest in any of the Debtors, including any share of common stock, share of preferred stock, Common White Energy Equity Interest, Preferred White Energy Equity Interest, membership interest or other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such common stock, preferred stock, Common White Energy Equity Interest, Preferred White Energy Equity Interest, membership interest or other ownership interest.

1.1.44 "**Estate**" means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.1.45 "**Executory Contract**" means any unexpired executory contract or unexpired lease entered into prior to the Petition Date, as contemplated by section 365 of the Bankruptcy Code, in effect on the Confirmation Date, between any of the Debtors and any other Person or Persons and which has neither been assumed or rejected prior to the Confirmation Date pursuant to section 365(a) of the Bankruptcy Code.

1.1.46 "**Exit Credit Facility**" means the senior secured working capital facility agreement, to be entered into by Reorganized White Energy, Inc., Reorganized WE Holding Company, LLC and the other Reorganized Debtors, the Exit Facility Agent and the Exit

Facility Lenders in connection with the consummation of the Plan and effective on the Effective Date, in the amount of at least $15 million and on terms and conditions acceptable to the Prepetition Agent (After Consultation with the Debtors) and the Requisite Secured Lenders, the Exit Facility Agent and the Exit Facility Lenders and all agreements, documents and instruments to be created, executed or issued pursuant to or in connection therewith.

        1.1.47      "**Exit Facility Agent**" means WestLB as agent under the Exit Credit Facility and its successors and assigns.

        1.1.48      "**Exit Facility Lenders**" means the lenders that are party to the Exit Credit Facility and their respective successors and assigns.

        1.1.49      "**Exit Financing Documents**" means the Exit Credit Facility together with all documents, notes, instruments and other agreements executed, delivered or filed pursuant to or in connection therewith, as the same shall be amended, supplemented, modified or allonged at any time and from time to time. The Exit Financing Documents shall be Plan Documents.

        1.1.50      "**Fagen**" means Fagen, Inc. and any affiliated entity.

        1.1.51      "**Fagen Cash Distribution**" means the Plan Distribution to the holder of the Fagen Claims in Cash in the aggregate amount of $3,000,000.

        1.1.52      "**Fagen Claims**" means any Claim of any kind or nature of Fagen against any of the Debtors, including the Claims against Debtors WE Hereford, LLC and Plainview BioEnergy, LLC, Claim Nos. 172 and 171, respectively, and any Claim with respect to any Executory Contract to which Fagen is a party with any Debtor.

        1.1.53      "**Fagen Distribution**" means the Fagen Cash Distribution, the Fagen Note and the Fagen Equity Distribution.

        1.1.54      "**Fagen Equity Distribution**" means the Plan Distribution to the holder of the Fagen Claims of 100 shares of the total number of shares of New Common Stock (representing 1% on a fully diluted basis of the total number of shares of New Common Stock issuable under the Plan), after giving effect to the issuance of all shares of New Common Stock reserved (at the Effective Date) for issuance pursuant to the Management Incentive Plan.

        1.1.55      "**Fagen Executory Contracts**" means any unexpired executory contract or unexpired lease entered into prior to the Petition Date, as contemplated by section 365 of the Bankruptcy Code, in effect on the Confirmation Date, between any of the Debtors and Fagen any and all of which are expressly assumed on substantially the terms of the Fagen Settlement described herein.

        1.1.56      "**Fagen Litigation**" means any and all Claims or Causes of Action of the Debtors or their Estates against Fagen, including those Causes of Action that have been asserted against Fagen by the Debtors and by the Prepetition Agent pursuant to the complaints filed against Fagen in the Bankruptcy Court in case numbers 09-53283 and 09-53284, as may be

amended or supplemented from time to time, and the stipulations of intervention approved by the Bankruptcy Court on January 15, 2010.

1.1.57 "**Fagen Note**" means a promissory note to be issued by Reorganized WE Holding Company, LLC, in the principal amount equal to $10,000,000, to be distributed to the holder of the Fagen Claims on substantially the terms set forth herein.

1.1.58 "**Fee Claim**" means a claim of a Professional Person for the allowance or compensation and reimbursement of expenses pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

1.1.59 "**Final Cash Collateral Order**" means the Amended Final Order (a) Authorizing Debtors to Use Cash Collateral and (b) Granting Adequate Protection to the Debtors' Prepetition Secured Parties, entered by the Bankruptcy Court in the Chapter 11 Cases on July 20, 2009.

1.1.60 "**Final Distribution**" means the Pro Rata share of the Contested Claims Reserve allocable to each holder of an Allowed General Unsecured Claim on the Final Distribution Date.

1.1.61 "**Final Distribution Date**" means with respect to an Allowed General Unsecured Claim the fifteenth day after the date that all General Unsecured Claims that are Contested Claims have been resolved by Final Order.

1.1.62 "**Final Fee Application**" means the final application for allowance and payment of a Fee Claim (including Claims for "substantial contribution" pursuant to section 503(b) of the Bankruptcy Code).

1.1.63 "**Final Order**" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in the Chapter 11 Cases or the dockets of such other court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, motion for new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for new trial, reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rules 3008 or 9024 may be filed with respect to such order.

1.1.64 "**Fractional Distribution**" means a Plan Distribution of a fractional share or a fraction of a dollar.

1.1.65    "**General Unsecured Claim**" means any Claim against any of the Debtors, including a Secured Lender Deficiency Claim, that is not an Administrative Claim, a Fagen Claim, a Priority Tax Claim, a Priority Claim, a Secured Lender Claim, an Other Secured Claim, a Secured Tax Claim or an Intercompany Claim.

1.1.66    "**General Unsecured Claim Distribution Amount**" means an amount of Cash to be funded out of the Debtors' Cash on hand in a total aggregate amount equal to $350,000.

1.1.67    "**Governmental Unit**" shall have the meaning ascribed thereto in section 101(27) of the Bankruptcy Code.

1.1.68    "**Initial Distribution**" means with respect to an Allowed General Unsecured Claim, the Pro Rata share of the General Unsecured Claim Distribution Amount allocable to such Allowed General Unsecured Claim on the Initial Distribution Date.

1.1.69    "**Initial Distribution Date**" means the one hundred and eighty first (181) day after the Effective Date or such other date as the Disbursing Agent may determine, whichever is sooner.

1.1.70    "**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.71    "**Intercompany Claim**" means any Claim held by a Debtor against any other Debtor or an Affiliate.

1.1.72    "**Interim Distribution**" means a Plan Distribution to the holders of Allowed General Unsecured Claims after the Initial Distribution and before the Final Distribution (if any).

1.1.73    "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.1.74    "**IRS**" means the United States Internal Revenue Service.

1.1.75    "**Letters of Credit**" means the Letters of Credit issued under the Credit Agreement.

1.1.76    "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.77    "**Management Incentive Plan**" means the management incentive plan to be implemented by Reorganized White Energy, Inc. for certain officers and employees of the Reorganized Debtors, substantially in the form set forth in the Plan Supplement and acceptable to the Prepetition Agent and the Requisite Secured Lenders in the sole and absolute discretion of each of them; pursuant to such plan, at the Effective Date, Reorganized White Energy, Inc. will

reserve for issuance 500 shares of New Common Stock (representing 5% on a fully diluted basis of the total number of shares of New Common Stock issuable under the Plan and reserved for issuance pursuant to the Management Incentive Plan).

1.1.78    "**New Common Stock**" means the common stock, par value of $.01 per share, of Reorganized White Energy, Inc., authorized under the Amended White Energy Certificate of Incorporation.

1.1.79    "**New Financing Documents**" means, collectively, the New Term Loan Documents and the Exit Financing Documents.

1.1.80    "**New LLC**" means White Energy Holdco, LLC, to be formed prior to the Effective Date for the purpose of holding the Class 2 New Common Stock.

1.1.81    "**New LLC Agreement**" means that New LLC Agreement, to be entered into by and among the Secured Lenders on or before the occurrence of the Effective Date, with respect to the New LLC.

1.1.82    "**New Term Loan Documents**" means the New Term Loan Facility, together with all documents, notes, instruments and other agreements executed, delivered or filed pursuant to or in connection therewith, as the same shall be amended, supplemented, modified or alonged at any time and from time to time.  The New Term Loan Documents shall be Plan Documents.

1.1.83    "**New Term Loans**" means the secured loans to be issued by Reorganized WE Holding Company, LLC and the other Reorganized Debtors, pursuant to the New Term Loan Facility and the other New Term Loan Documents, in the principal amount of $150 million.

1.1.84    "**New Term Loan Facility**" means the senior secured term facility agreement, to be entered into by Reorganized WE Holding Company, LLC and the other Reorganized Debtors and the New Term Loan Facility Agent and the New Term Loan Facility Lenders in connection with the consummation of the Plan as effective on the Effective Date, in the amount of $150 million, on terms and conditions acceptable to the Prepetition Agent (After Consultation with the Debtors), the Requisite Secured Lenders and the New Term Loan Facility Agent, as set forth in the New Term Loan Documents.  The New Term Loan Facility shall be a Plan Document.

1.1.85    "**New Term Loan Facility Agent**" means WestLB as agent under the New Term Loan Facility and its successors and assigns.

1.1.86    "**New Term Loan Facility Lenders**" means the lenders that are parties to the New Term Loan Facility and their successors and assigns.

1.1.87    "**New Term Loan Notes**" means the promissory notes evidencing the New Terms Loans to be issued to the holders of Allowed Secured Lender Claims in an aggregate principal amount equal to $150 million.

1.1.88 "**Notice of Confirmation**" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests.

1.1.89 "**Original Debt**" means the indebtedness outstanding under the Original Debt Documents on the Effective Date.

1.1.90 "**Original Debt Documents**" means the Credit Agreement together with all documents, notes, instruments, and any other agreements executed or entered into in connection therewith, all as amended, modified, supplemented or allonged from time to time.

1.1.91 "**Other Secured Claims**" means a Secured Claim other than a Secured Lender Claim and a Secured Tax Claim.

1.1.92 "**Person**" means an individual, corporation, partnership, limited liability company, business trust, limited liability partnership, joint stock company, joint venture, trust, estate, unincorporated association, unincorporated organization, or any other entity, or any government, governmental agency, or any subdivision, department or instrumentality thereof.

1.1.93 "**Petition Date**" means May 7, 2009.

1.1.94 "**Plan**" means this chapter 11 plan, as amended, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.1.95 "**Plan Distribution**" means the payment or distribution under the Plan of Cash, Assets, New Common Stock, New Term Loans, the Fagen Note or other instruments evidencing an obligation under the Plan to any holder of an Allowed Claim, as applicable.

1.1.96 "**Plan Documents**" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in section 1.3 of the Plan.

1.1.97 "**Plan Objection Deadline**" means February 25, 2010, which was the date set forth in the order of the Bankruptcy Court by which a creditor or interest holder or other party in interest must file an objection to confirmation of the Plan or otherwise be barred from filing such an objection.

1.1.98 "**Plan Supplement**" means the separate appendix to the Plan, which is incorporated herein by reference, which was filed with the Bankruptcy Court no later than five (5) Business Days prior to the Plan Objection Deadline, and any amendments thereto.

1.1.99 "**Preferred White Energy Equity Interests**" means any share of Series A-1 Preferred Stock, Series A-2 Preferred Stock, or Series B Preferred Stock evidencing an ownership interest in White Energy, Inc. whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such preferred stock.

1.1.100    "**Prepetition Agent**" means WestLB, as administrative agent for the Secured Lenders under the Credit Agreement.

1.1.101    "**Priority Claim**" means any Claim, to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.1.102    "**Priority Tax Claim**" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code and that is not a Secured Tax Claim.

1.1.103    "**Proof of Claim**" means the Proof of Claim that must be filed by a holder of a Claim by the Bar Date.

1.1.104    "**Pro Rata**" means the proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Claims in such class, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Disbursing Agent, or (b) as determined or estimated by the Bankruptcy Court.

1.1.105    "**Professional Person**" means a Person retained or to be compensated for services rendered or costs incurred by either the Debtors or the Committee on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in these Chapter 11 Cases.

1.1.106    "**Related Persons**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, employees, representatives, advisors (whether engaged prior to or subsequent to the Petition Date), attorneys (whether engaged prior to or subsequent to the Petition Date), agents and professionals (whether engaged prior to or subsequent to the Petition Date), acting in such capacity, and any Person claiming by or through any of them; provided, however that Related Persons shall not include any Person who was an officer or director of any Debtor before but not following the Petition Date.

1.1.107    "**Released Actions**" means all Claims, cross-claims, counterclaims, third-party claims, obligations, suits, judgments, damages, debts, rights, Causes of Action and liabilities, and all Equity Interests and rights of an equity security holder, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other circumstance that occurred, arose, took place, existed or exists on or prior to the Effective Date in connection with or related to the Debtors and their respective Estates, or their business operations (including the organization or capitalization of the Debtors or extensions of credit and other financial services and accommodations made or not made to the Debtors), the Reorganized  Debtors and their respective Estates (including (x) Avoidance Actions (except for section 549 Avoidance Actions) and (y) any and all alter ego or derivative claims accruing to the Debtors and their Estates), the Chapter 11 Cases or the Plan.

1.1.108 "**Released Parties**" means (a) the Committee, acting in such capacity, (b) the Prepetition Agent, the Exit Facility Agent, the Secured Lenders and the Exit Facility Lenders, (c) each other holder of an Equity Interest in any Debtor at or prior to the Petition Date, (d) the Debtors and the Reorganized Debtors, and their respective Estates as of the Petition Date and thereafter, (e) the officers and directors of the Debtors and the Reorganized Debtors as of the Petition Date, acting solely in such capacity, and (f) the Related Persons of each of the Persons referred to in clauses (a) through (e).

1.1.109 "**Reorganized Debtors**" means Reorganized White Energy, Inc. and the Reorganized Subsidiaries from and after the Effective Date.

1.1.110 "**Reorganized Plainview BioEnergy, LLC**" means Plainview BioEnergy, LLC from and after the Effective Date.

1.1.111 "**Reorganized Subsidiaries**" means White Energy Holding Company, LLC, U.S. Energy Partners, LLC, WE Hereford, LLC, and Plainview BioEnergy, LLC from and after the Effective Date.

1.1.112 "**Reorganized WE Holding Company, LLC**" means White Energy Holding Company, LLC from and after the Effective Date.

1.1.113 "**Reorganized WE Hereford, LLC**" means WE Hereford, LLC from and after the Effective Date.

1.1.114 "**Reorganized U.S. Energy Partners, LLC**" means U.S. Energy Partners, LLC from and after the Effective Date.

1.1.115 "**Reorganized White Energy, Inc.**" means White Energy, Inc. from and after the Effective Date.

1.1.116 "**Requisite Secured Lenders**" means the Secured Lenders comprising more than one half of the number of all Secured Lenders that vote to accept or reject the Plan and holding at least two-thirds of the aggregate amount of Allowed Secured Lender Claims that vote to accept or reject the Plan.

1.1.117 "**Schedules**" means the schedules of assets and liabilities, the list of holders of Equity Interests and the statements of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

1.1.118 "**Schedule of Assumed Executory Contracts**" means the schedule of assumed Executory Contracts included in the Plan Supplement, which is hereby deemed modified to include the Fagen Executory Contracts.

1.1.119    "**Section 503(b)(9) Claims**" means any Claim, to the extent Allowed, against any of the Debtors that is entitled to administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code.

1.1.120    "**Secured Claim**" means any Claim secured by a Lien on Collateral, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.1.121    "**Secured Lender Claim**" means any Claim of a Secured Lender against any of the Debtors arising under, in connection with or related to the Credit Agreement, including any Claim with respect to any and all guarantees, pledges, notes and other agreements and documents executed and/or delivered by any Debtor pursuant to, in connection with or related to the Credit Agreement, including any Claim under the Financing Documents (as defined in the Credit Agreement), the Letters of Credit and the Swap Agreements.

1.1.122    "**Secured Lender Deficiency Claim**" means the difference between the Allowed amount of the Secured Lender Claim as Allowed pursuant to section 4.3.1 of the Plan and the value of the Collateral; for purposes of the Plan, the Secured Lender Deficiency Claim shall be approximately $50 million.

1.1.123    "**Secured Lenders**" means, collectively, the lenders and other institutions that are parties to the Credit Agreement and their respective successors and assigns.

1.1.124    "**Secured Tax Claim**" means any Claim by any Governmental Unit that pursuant to applicable law is secured by a Lien on Collateral that is senior in priority to the Liens of the Secured Lenders under the Credit Agreement on such Collateral.

1.1.125    "**Stockholders' Agreement**" means the stockholders' agreement to be entered into by New LLC, Fagen and the Persons to receive the New Common Stock pursuant to the Plan on or after the Effective Date.

1.1.126    "**Subsidiaries**" means White Energy Holding Company, LLC, U.S. Energy Partners, LLC, WE Hereford, LLC, and Plainview BioEnergy, LLC.

1.1.127    "**Subsidiary Equity Interest**" means the equity interests in each Subsidiary.

1.1.128    "**Swap Agreements**" means that certain ISDA Master Agreement, dated as of March 30, 2007 (together with the Schedule and Confirmation related thereto) between White Energy Holding Company, LLC and WestLB, and that certain ISDA Master Agreement dated April 23, 2007 (together with the Schedule and Confirmation related thereto) between White Energy Holding Company, LLC and Rabobank International Utrecht Branch.

1.1.129    "**U.S. Trustee**" means the Office of the United States Trustee for Region 3.

1.1.130    "**WestLB**" means WestLB AG, New York Branch.

**1.2**    **Interpretation; Application of Definitions; Rules of Construction**.

Whenever from the context it appears appropriate, each term stated in either the singular or plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral.  Unless otherwise specified, all article, section, schedule or exhibit references in the Plan are to the respective article in, section in, schedule to, or exhibit to this Plan, as the same may be amended, waived, supplemented or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained herein.  Except as otherwise expressly provided herein, a term used herein that is not defined herein and is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan; provided, however, that "or" is disjunctive.  The words "includes" and "including" are without limitation.

**1.3**    **Exhibits, Schedules, Appendices and Plan Documents**.

All exhibits, schedules and appendices to the Plan as well as the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  All Plan Documents shall be filed with the Clerk of the Bankruptcy Court on or prior to the Confirmation Date.  The Prepetition Agent (After Consultation with the Debtors) and the Requisite Secured Lenders explicitly reserve the right to modify or make additions to or subtractions from this Plan or any exhibit, schedule or appendix to this Plan or any Plan Document until the Confirmation Date and the Prepetition Agent (After Consultation with the Debtors) and the Requisite Secured Lenders explicitly reserve the right to modify any Plan Document or other document referred to herein at any time through and including the Effective Date; provided, however, that the Plan should not be modified following the Confirmation Date except with Committee approval or Court approval.  Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following addresses:

DUANE MORRIS LLP
Stacie Wolfenden
1100 North Market Street, Suite 1200
Wilmington, Delaware  19801
Telephone:      (302) 657-4900
Facsimile:      (302) 657-4901
E-mail:swolfenden@duanemorris.com

**ARTICLE II.**

**PROVISIONS FOR TREATMENT OF**
**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS UNDER THE PLAN**

**2.1** **Introduction.**

The Plan is premised upon the substantive consolidation of the Debtors as set forth in more detail in section 6.1 below, for the purposes of voting, determining which Claims and Equity Interests will be entitled to vote to accept or reject the Plan, determining and calculating quarterly fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, confirmation of the Plan and the resultant discharge of and cancellation of Claims and Equity Interests and distribution of Assets, interests and other property under the terms herein. Substantive consolidation under the Plan will not result in the merger of, or the transfer or commingling of, any Assets of any of the Debtors, and all Assets will continue to be owned by their respective Debtors. Based on the substantive consolidation of the Debtors under this Plan, Intercompany Claims shall not be classified and no Plan Distribution shall be made in respect of Intercompany Claims.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in another Class or Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Class(es). A Claim is also placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**2.2** **Administrative Claims and Priority Tax Claims.**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not designated as Classes of Claims for purposes of this Plan.

**2.3** **Time for Filing of Administrative Claims.**

All requests for payment of Administrative Claims (other than (i) Administrative Claims incurred by a Debtor in the ordinary course of business after the Petition Date, (ii) Administrative Claims that have been Allowed by order of the Bankruptcy Court on or before the Effective Date, (iii) Section 503(b)(9) Claims and other Administrative Claims for which a Proof of Claim was filed on or before the Bar Date, and (iv) fees or charges assessed against the Debtors under section 1930 of title 28 of the United States Code) must be filed with the Bankruptcy Court and served on the Debtors, the Committee, the Prepetition Agent and the U.S. Trustee not later than (x) thirty (30) days after service of the Notice of Confirmation, in the case of requests for payment of Administrative Claims other than Fee Claims and (y) forty-five (45) days after the Effective Date, in the case of Final Fee Applications seeking payment of Fee Claims; provided, however, that (A) any Section 503(b)(9) Claim or other Administrative Claim that was required pursuant to the terms of the Bar Date Order to be filed on or before the Bar Date and was not filed on or before the Bar Date is barred based on the Bar Date Order and shall remain forever barred and discharged; and (B) any Administrative Claim or Fee Claim that is not

filed on or before the deadline set forth in this section 2.3 shall result in the Administrative Claim or Fee Claim being forever barred and discharged. Any request for payment of an Administrative Claim must include at a minimum the name of the Debtor(s) which are alleged to be liable for the Administrative Claim, the name of the holder of the alleged Administrative Claim, the amount of the alleged Administrative Claim, and the basis of the alleged Administrative Claim, and must be mailed by the applicable deadline set forth in this section 2.3:

> (i) If by First Class U.S. mail, to:

>> The Garden City Group, Inc.
>> Attn: White Energy, Inc.
>> P.O. Box 9379
>> Dublin, Ohio 43017-4279

> (ii) If by messenger or overnight courier, to:

>> The Garden City Group, Inc.
>> Attn: White Energy, Inc.
>> 5151 Blazer Parkway, Suite A
>> Dublin, Ohio 43017

The Claims Agent will not accept any request for payment of an Administrative Claim sent by facsimile or email.

**2.4**     **Allowance of Administrative Claims/Fee Claims.**

Unless the Debtors or the Prepetition Agent object, in whole or in part, to a timely filed request for payment of an Administrative Claim within sixty (60) days after the Effective Date, such request for payment of an Administrative Claim shall be deemed Allowed in the amount requested. If the Debtors or the Prepetition Agent object to a request for payment of an Administrative Claim in whole or in part, the requested Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by a Final Order. A Fee Claim in respect of which a Final Fee Application has been properly and timely filed and served shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

**2.5**     **Treatment of Allowed Administrative Claims.**

Except to the extent that a holder of an Allowed Administrative Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction of its Allowed Administrative Claim, a Plan Distribution of Cash in the amount of such holder's Allowed Administrative Claim, without interest, on the Distribution Date or such later date or dates as may be agreed to by the Prepetition Agent (After Consultation with the Debtors) with the consent of the Requisite Secured Lenders, and such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred after the Petition Date in the ordinary course of business by the Debtors may be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of

any agreements governing, instruments evidencing or other documents relating to such transactions.

**2.6     Treatment of Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Prepetition Agent (After Consultation with the Debtors), with the consent of the Requisite Secured Lenders, in full and final satisfaction of such holder's Allowed Priority Tax Claim (a) payments in Cash, in regular installments over a period ending on the fifth (5th) anniversary of the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder and the Prepetition Agent (After Consultation with the Debtors), with the prior consent of the Requisite Secured Lenders; or (c) such other treatment as may be agreed upon in writing by such holder and the Prepetition Agent (After Consultation with the Debtors), with the prior consent of the Requisite Secured Lenders.  The Confirmation Order shall enjoin any holder of an Allowed Priority Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of an Allowed Priority Tax Claim so long as the Debtors are in compliance with this section 2.6.  So long as the holder of an Allowed Priority Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this section 2.6 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.1     Classification of Claims and Equity Interests.**

3.1.1     Class 1 – Priority Claims

Class 1 shall consist of all Priority Claims against the Debtors.  Class 1 is unimpaired.

3.1.2     Class 2 – Secured Lender Claims

Class 2 shall consist of all Secured Lender Claims against the Debtors.  Class 2 is impaired.

3.1.3     Class 3 – Other Secured Claims

Class 3 shall consist of all Other Secured Claims against the Debtors.  Class 3 is impaired.

3.1.4    Class 4 – Secured Tax Claims

Class 4 shall consist of all Secured Tax Claims against the Debtors.  Class 4 is impaired.

3.1.5    Class 5 – General Unsecured Claims

Class 5 shall consist of all General Unsecured Claims against the Debtors.  Class 5 is impaired.

3.1.6    Class 6 – Subsidiary Equity Interests

Class 6 shall consist of all Subsidiary Equity Interests.  Class 6 is unimpaired.

3.1.7    Class 7 – Preferred White Energy Equity Interests

Class 7 shall consist of all Preferred White Energy Equity Interests.  Class 7 is impaired.

3.1.8    Class 8 – Common White Energy Equity Interests.

Class 8 shall consist of all Common White Energy Equity Interests.  Class 8 is impaired.

## ARTICLE IV.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**4.1    Satisfaction of Claims and Equity Interests.**

The treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Article 4 and the other provisions of this Plan shall be in full satisfaction, settlement, release and discharge of each holder's respective Claims or Equity Interests.  Other than in respect of Plan Distributions to be made to the Secured Lenders, to the extent that any Allowed Claim is comprised of indebtedness and accrued but unpaid interest thereon, any property distributed in satisfaction of Allowed Claims shall be allocated first to the principal portion and thereafter to accrued but unpaid interest.

**4.2    Class 1 – Priority Claims.**

Allowed Priority Claims are unimpaired under the Plan.  Except to the extent that a holder of an Allowed Priority Claim agrees to a different treatment of such Allowed Priority Claim, each holder shall receive a Plan Distribution of Cash in an amount equal to such Allowed Priority Claim, without interest, on the Distribution Date or such later date or dates as may be agreed to by the Prepetition Agent (After Consultation with the Debtors) and such holder.

**4.3**     **Class 2 – Secured Lender Claims.**

        4.3.1     *Allowed Secured Lender Claims.*  The Secured Lender Claims are hereby Allowed Secured Lender Claims, not subject to offset, defense, counterclaim, reduction or credit of any kind whatsoever, in an amount equal to the sum of (i) the aggregate principal amount outstanding under the Credit Agreement as of the Petition Date, of $294,680,745, plus (ii) amounts drawn on certain Letters of Credit from the Petition Date through the Effective Date, plus (iii) $7,887,020.49 in Secured Lender Claims in respect of the Swap Agreements, plus (iv) accrued and unpaid interest on the principal amount outstanding under the Credit Agreement, the drawn Letters of Credit, and the Secured Lender Claims in respect of the Swap Agreements through the Confirmation Date, plus (v) accrued and unpaid letter of credit fees, administrative fees, and other fees and expenses (including reasonable fees and out-of-pocket expenses of attorneys and advisors incurred by the Prepetition Agent) incurred under the Credit Agreement through the Confirmation Date, plus (vi) other amounts, including those amounts required to be paid as adequate protection under the Final Cash Collateral Order, through and including the Effective Date.

        4.3.2     *Reimbursement of Fees and Expenses.*  On the Effective Date, the Debtors shall pay to the holders of Allowed Secured Lender Claims a Plan Distribution of Cash, without interest, in an amount equal to all reasonable fees and the reasonable out-of-pocket expenses (including reasonable fees and expenses of attorneys and advisors) incurred by, and administration fees payable to, the Prepetition Agent under the Credit Agreement, in each case to the extent not reimbursed on or prior to the Effective Date, without the necessity of filing a fee application or any other application of any kind or nature with the Bankruptcy Court.

        4.3.3     *Class 2 Distribution Pool.*  On the Effective Date, or as soon thereafter as is practicable, the New Term Loan Facility Agent shall execute on behalf of the holders of Secured Lender Claims and deliver the New Term Loan Facility.

                (i)     *New Term Loans.*  On the Effective Date or as soon thereafter as is practicable, each holder of a Secured Lender Claim shall receive New Term Loans in a principal amount equal to its Pro Rata share of $150 million.  The New Term Loans will be governed by the New Term Loan Facility and will (A) be issued by Reorganized WE Holding Company, LLC and the other Reorganized Debtors in an aggregate principal amount of $150 million, (B) be guaranteed by each of the other Reorganized Debtors, (C) be secured by a Lien on substantially all of the assets of the Reorganized Debtors (on the priority basis set forth in the New Term Loan Facility), (D) have a final maturity date of five (5) years after the Effective Date (but will require scheduled amortization payments and mandatory prepayments from the sale of certain Assets and certain excess cash flows and upon the occurrence of certain specified events and (E) bear interest at fluctuating rates based on three-month LIBOR  (subject to a LIBOR floor of two (2%) percent) plus 4.0%.  Interest on the New Term Loan Facility will be payable monthly in arrears.  This section 4.3 is subject to and qualified in its entirety by reference to the New Term Loan Documents and the other Plan Documents.

                (ii)     *Class 2 New Common Stock.*  On the Effective Date, or as soon thereafter as is practicable, the Class 2 New Common Stock shall be delivered to the New LLC on behalf of the holders of Secured Lender Claims.  Any holder of a Secured Lender

Claim must execute the New LLC Agreement in order to have an interest in the Class 2 New Common Stock and the New LLC. If a holder of a Secured Claim does not execute the New LLC Agreement on or before the 90th day following the Effective Date, then such Secured Lender shall be deemed to have waived its interests in the Class 2 New Common Stock and waived its membership interest in the New LLC.

**4.4**      **Class 3 – Other Secured Claims.**

     4.4.1      *Distribution*. Except for the Fagen Claims as set forth in section 4.4.4. below, each holder of an Allowed Other Secured Claim shall receive, on account of its Allowed Other Secured Claim, at the option of the Prepetition Agent (After Consultation with the Debtors) with the consent of the Requisite Secured Lenders a Plan Distribution (i) equal to the net proceeds of the sale or disposition of the Collateral securing such holder's Allowed Other Secured Claim; (ii) of the Collateral securing such holder's Allowed Other Secured Claim; (iii) twenty (20) payments, each equal to one-twentieth (1/20) of the Allowed Other Secured Claim together with simple interest on the balance thereof calculated at a rate of six percent (6%), payable on the last day of each calendar quarter in arrears; provided, however, that the Reorganized Debtors shall have the right with the consent of the New Term Loan Facility Lenders and the Exit Facility Lenders, to prepay any amounts payable in respect of any Allowed Other Secured Claim in whole or part at any time and from time to time; or (iv) of such other Plan Distribution necessary to satisfy the requirements of the Bankruptcy Code, which Plan Distribution will be made on the Distribution Date.

     4.4.2      *Liens*. Except as set forth in section 4.4.4 below, each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided in the Plan, and upon such full and final payment, such Liens shall be deemed to have been satisfied and shall be null, void and unenforceable for all purposes.

     4.4.3      *Deficiency Claim*. Except as set forth in section 4.4.4. below, any portion of any Other Secured Claim that is not an Allowed Other Secured Claim shall be a General Unsecured Claim to the extent that it is an Allowed General Unsecured Claim.

     4.4.4      *Fagen Settlement*. Pursuant to section 1123 of the Bankruptcy Code all Fagen Claims of any kind or nature as well as the Fagen Litigation are hereby fully settled and resolved as follows:

     (i)      *Fagen Distribution*. Subject to the provisions of section 4.4.4(ii), on the Effective Date, in full and complete satisfaction of any and all Fagen Claims of any kind or nature and the Fagen Litigation, the holder of the Fagen Claims shall receive the Fagen Distribution. The Fagen Note shall be in an amount equal to $10 million, and shall be payable in twenty (20) equal installments of $500,000 each together with simple interest on the balance thereof calculated at a rate of six percent (6%) per annum, payable on the last day of each calendar quarter in arrears; provided, however, that the Reorganized Debtors shall have the right with the prior written consent of the New Term Loan Facility Lenders and the Exit Facility Lenders, to prepay any amounts payable in respect of the Fagen Note in whole or part at any time and from time to time. The Fagen Note shall be secured by a Lien on all improvements and fixtures of Reorganized WE

Hereford, LLC, such Lien to rank junior in priority to the Lien of the Exit Facility Lenders but senior in priority to the Lien of the New Term Loan Facility Lenders. In addition, the Reorganized Debtors shall dismiss the Fagen Litigation on, or as soon as practicable after, the Effective Date.

(ii)　On the Effective Date, all agreements with Fagen shall be assumed (including any Exhibits thereto); provided, however, no Cure Payments to Fagen shall be necessary or required in connection with such assumption; it hereby being understood that such Cure Payments shall be deemed to have been made as part of the settlement in section 4.4.4(i) above. Any and all licenses, work product, intellectual property to be transferred by Fagen pursuant to such agreements upon payment in full under such agreements shall be transferred to the Reorganized Debtors, to the extent not already transferred, on the Effective Date.

(iii)　Prior to the Confirmation Hearing, Fagen shall withdraw its objection to confirmation of the Plan and shall cause ICM, Inc. to withdraw its objection to confirmation of the Plan.

(iv)　For the avoidance of doubt, Fagen shall have no Allowed General Unsecured Claim in these cases.

**4.5**　**Class 4 – Secured Tax Claims**.

Except to the extent that a holder of an Allowed Secured Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, at the option of the Prepetition Agent (After Consultation with the Debtors) with the consent of the Requisite Secured Lenders (a) a Plan Distribution of Cash in an amount equal to such Allowed Secured Tax Claim, without interest, on the Distribution Date, or (b) payments in Cash, in regular installments over a period ending on the fifth (5th) anniversary of the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Allowed Secured Tax Claim. Each holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided in this section 4.5 of the Plan, and upon such full and final payment, such Lien shall be deemed to have satisfied and shall be null and void and unenforceable for all purposes.

**4.6**　**Class 5 – General Unsecured Claims**.

4.6.1　Each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the General Unsecured Claim Distribution Amount except as set forth in section 4.6.4 below regarding the Secured Lender Deficiency Claim.

4.6.2　*Initial Distribution*. Subject to section 4.6.1, each holder of an Allowed General Unsecured Claim shall receive on the Initial Distribution Date an Initial Distribution.

4.6.3　*Final Distribution*. Subject to section 4.6.1, each holder of an Allowed General Unsecured Claim shall receive on the Final Distribution Date a Final Distribution.

4.6.4    The Secured Lender Deficiency Claims of the Secured Lenders are hereby Allowed General Unsecured Claims, not subject to offset, defense, counterclaim, reduction or credit of any kind whatsoever, in the amount of approximately $50 million. A holder of an Allowed Secured Lender Deficiency Claim shall be permitted to vote such Claim along with the other holders of Allowed General Unsecured Claims; provided, however, that no holder of an Allowed Secured Lender Deficiency Claim shall receive any Plan Distribution on account of such holder's Allowed Secured Lender Deficiency Claim.

4.6.5    On the Effective Date, the Reorganized Debtors shall post $350,000 in Cash in a segregated account to support their obligation to pay the General Unsecured Claim Distribution Amount.

**4.7    Class 6 – Subsidiary Equity Interests.**

Each holder of a Subsidiary Equity Interest will retain its Subsidiary Equity Interest and will not receive any Plan Distribution.

**4.8    Class 7 – Preferred White Energy Equity Interests.**

On the Effective Date, all Preferred White Energy Equity Interests shall be deemed cancelled and extinguished and the holders of Preferred White Energy Equity Interests will not receive any Plan Distribution, or be entitled to retain any property or interest in property on account of such Preferred White Energy Equity Interests. Holders of Preferred White Energy Equity Interests shall not be required to surrender their certificates or their instruments evidencing ownership of such Preferred White Energy Equity Interests.

**4.9    Class 8 – Common White Energy Equity Interests.**

On the Effective Date, all Common White Energy Equity Interests shall be deemed cancelled and extinguished and the holders of Common White Energy Equity Interests will not receive any Plan Distribution, or be entitled to retain any property or interest in property on account of such Common White Energy Equity Interests. Holders of Common White Energy Equity Interests shall not be required to surrender their certificates or their instruments evidencing ownership of such Common White Energy Equity Interests.

**4.10    Limitation on Recovery for Claims Against More Than One Debtor.**

A holder of Claims asserted against more than one Debtor but arising under the same facts, shall receive not more than one Plan Distribution hereunder on account of such holder's Allowed Claim and shall be enjoined from seeking any further Plan Distribution.

# ARTICLE V.

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**5.1    Classes Entitled to Vote.**

Holders of Allowed Secured Lender Claims, Allowed Other Secured Claims, Allowed Secured Tax Claims and Allowed General Unsecured Claims (including the Secured Lender Deficiency Claims) are entitled to vote on the Plan.  Class 1 and Class 6 are deemed to have accepted the Plan.  Classes 7 and 8 are deemed to have rejected the Plan.  Classes 2, 3, 4 and 5 are entitled to vote under the Plan.

The Proponents have requested that the Bankruptcy Court adopt a presumption that if no holder of a Claim or Equity Interest in a Class of Claims or Equity Interests eligible to vote in a particular Class timely submits a ballot to accept or reject the Plan, then the applicable Class will be deemed to have accepted the Plan.  Accordingly, if you do not wish such a presumption with respect to any Class for which you hold Claims or Equity Interests to become effective, you should timely submit a ballot accepting or rejecting the Plan for any such Class.

**5.2    Class Acceptance Requirement.**

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

**5.3    Cramdown.**

In the event that any impaired Class of Claims or Equity Interests rejects the Plan or is deemed to have rejected the Plan, the Debtors and the Prepetition Agent hereby seek to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1    Substantive Consolidation of Debtors for Plan Purposes Only**

6.1.1    Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for certain purposes related to the Plan, including for purposes of voting, confirmation, Plan Distributions and determining and calculating post-confirmation quarterly fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930.  On and after the Effective Date:  (i) no Plan Distributions shall be made under the Plan on account of Intercompany Claims; (ii) all guarantees by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any  Debtor and any guarantee thereof executed by any other Debtor and

any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

> 6.1.2      The substantive consolidation referred to in section 6.1.1 shall not (other than for purposes related to funding Plan Distributions and as set forth above in section 6.1.1) affect:  (i) the legal and organizational structure of the Reorganized Debtors; or (ii) pre- and post-Petition Date Liens, guarantees and security interests that are required to be maintained (x) in connection with Executory Contracts that were entered into during the  Chapter 11 Cases or that have been or will be assumed pursuant to section 365 of the Bankruptcy Code, (y) pursuant to the Plan, or (z) in connection with the Exit Credit Facility or the New Term Loan Facility.  As of the Effective Date, each of the Reorganized  Debtors shall be deemed to be properly capitalized, legally separate and distinct entities.

### 6.2      **Operations Between the Confirmation Date and the Effective Date.**

> During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

### 6.3      **Transactions on the Effective Date.**

> 6.3.1      Issuance of New Common Stock and Entry Into New Term Loan Facility and Fagen Note.

> On the Effective Date:

> (i)      Reorganized White Energy, Inc. shall issue to the New LLC the Class 2 New Common Stock representing at the time of issuance 100 percent of the equity interests in the Reorganized White Energy, Inc. (excluding the Fagen Equity Distribution and the New Common Stock to be reserved for issuance pursuant to the Management Incentive Plan).  The issuance of the Class 2 New Common Stock shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code; and

> (ii)      Reorganized WE Holding Company, LLC and the Reorganized Debtors shall enter into the New Term Loan Facility and issue to the holders of Allowed Secured Lender Claims the New Term Loans.  The issuance of the New Term Loans and the delivery of the New Term Loan Notes shall be in accordance with the terms of the New Term Loan Documents.

> (iii)      Reorganized WE Holding Company, LLC shall issue the Fagen Note to the holder of the Fagen Claim.  The issuance and delivery of the Fagen Note shall be in accordance with the terms of such Fagen Note and the other Plan Documents.

6.3.2    The Stockholders' Agreement and the New LLC Agreement.

(i)    On the Effective Date, and as a condition to the occurrence of the Effective Date pursuant to section 9.2 hereof, New LLC and Fagen shall enter into the Stockholders' Agreement.

(ii)    On or before the 90th day following the Effective Date, the Secured Lenders shall execute the New LLC Agreement.  Any Secured Lender that does not execute the New LLC Agreement on or before the 90th day following the Effective Date shall be deemed to have waived its interests in the Class 2 New Common Stock and waived its membership interest in the New LLC.

6.3.3    Continuation of Liens of Secured Lenders.  All security interests, Liens and other encumbrances granted to secure the Original Debt shall survive and shall continue to secure the Reorganized Debtors' obligations under the Exit Credit Facility and the New Term Loan Facility.

**6.4    Corporate Action: Certificates of Incorporation, By-laws, Formation Documents and Limited Liability Company Agreements.**

6.4.1    *Certificate of Incorporation, By-Laws, Formation Documents and Limited Liability Agreements: Amendment*.  On or before the Effective Date, the certificate or articles of incorporation, by-laws, formation documents and limited liability company agreements as applicable to each respective Debtor will be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and will include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. The amended certificates of incorporation, amended by-laws, amended formation documents and amended limited liability company agreements will also include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code provisions (a) creating the New Common Stock, (b) to the extent necessary or appropriate, stating any restrictions on the transfer of the New Common Stock, (c) to the extent necessary or appropriate, effectuating the provisions of the Plan and (d) such other provisions as may be agreed by the Requisite Secured Lenders and the Prepetition Agent, After Consultation with the Debtors.  The Amended White Energy Certificate of Incorporation and the Amended White Energy By-Laws shall be filed with the Bankruptcy Court at least five (5) Business Days prior to the Plan Objection Deadline.

6.4.2    *Certificate of Incorporation, By-Laws, Formation Documents and Limited Liability Agreements: Filing*.  On or before the Effective Date, Reorganized White Energy, Inc. shall file the Amended White Energy Certificate of Incorporation with the Secretary of State of its jurisdiction of organization or formation.  Each of the Subsidiaries that is a limited liability company shall file an amendment to its formation documents with the Secretary of State of its jurisdiction of organization or formation on the Effective Date.  The Amended White Energy By-Laws shall be deemed adopted by the board of directors of the Reorganized White Energy, Inc. as of the Effective Date.

6.4.3    On the Effective Date, the cancellation of all Common White Energy Equity Interests and Preferred White Energy Equity Interests, the authorization and issuance of

the New Common Stock, the New Term Loan Facility, the New Term Loan Notes, and the adoption of the Management Incentive Plan and all other matters provided in the Plan involving the corporate and capital structure of the Debtors or the Reorganized Debtors or corporate action by any of the Debtors or the Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order or rule, including any action by the stockholders or directors of any of the Debtors or any of the Reorganized Debtors pursuant to section 303 of the General Corporation Law of the State of Delaware and other applicable corporation law of jurisdictions in which the Reorganized Debtors are incorporated or existing. Entry of the Confirmation Order will constitute approval of the Plan Documents and all such transactions subject to the occurrence of the Effective Date.

**6.5     Effectuating Documents; Further Transactions.**

The acting chief executive officer, chief restructuring officer, chief financial officer or any other appropriate officer of White Energy, Inc. or any applicable Debtor, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions herein. The secretary or assistant secretary of White Energy, Inc. or any applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the actions specified in the preceding sentence.

**6.6     Execution of Documents and Certain Other Actions on or Prior to the Effective Date.**

6.6.1     On or prior to the Effective Date, the following Persons will take the following actions and will execute the following documents, all of which documents will become effective on the Effective Date, unless otherwise specified:

(i)     the Reorganized Debtors, the Exit Facility Lenders and the Exit Facility Agent will execute the Exit Credit Facility and such other documents as are contemplated by the Exit Credit Facility; and

(ii)     the Reorganized Debtors, the New Term Loan Facility Agent and the New Term Loan Facility Lenders will execute the New Term Loan Documents and such other documents as are contemplated by the New Term Loan Facility.

**6.7     Continued Corporate Existence of the Debtors.**

Following confirmation and consummation of the Plan, the Reorganized Debtors will continue to exist as separate corporate entities or limited liability companies, as applicable to each respective Debtor, in accordance with the laws of their respective states of incorporation or formation and pursuant to their respective certificates, articles of incorporation, by-laws, formation documents and limited liability company agreements in effect prior to the Effective Date, except to the extent such certificates, articles of incorporation, bylaws, formation documents and limited liability company agreements are amended pursuant to the Plan or upon or after the Effective Date.

**6.8     Revesting of Assets.**

Pursuant to section 1141(b) of the Bankruptcy Code, all property of the Estate of each Debtor, together with any property of the Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in such Reorganized Debtor on the Effective Date without the payment or incursion of transfer tax liability pursuant to section 1146(a) of the Bankruptcy Code.  Thereafter, subject to the terms of this Plan (including those of Article IV of this Plan), the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court.  As of the Effective Date, all property of each Reorganized Debtor shall be free and clear of all Liens, Claims and Equity Interests, except as specifically provided in the Plan, the Confirmation Order, the Exit Credit Facility or the New Term Loan Facility.

**6.9     Management.**

Upon the occurrence of the Effective Date, the management, control, and operation of each of the Reorganized Debtors shall be the general responsibility of each such entity's then, as applicable, current board, managing member, manager, member(s) and management as set forth in such Reorganized Debtor's governing documents and according to applicable law.

**6.10     Initial Boards of Directors, Managers and Members.**

6.10.1     The initial Board of Directors of Reorganized White Energy, Inc. shall be comprised of 3 to 5 members, as determined in the sole and absolute discretion of the Requisite Secured Lenders prior to the Confirmation Hearing.  The members of the initial Board of Directors of Reorganized White Energy, Inc. shall be appointed solely by the Requisite Secured Lenders.  The Prepetition Agent or the Debtors, with the prior written consent of the Requisite Secured Lenders, shall file with the Bankruptcy Court the identities of the initial members on or prior to the Confirmation Date.  After the Effective Date, the holders of the New Common Stock will elect members of the Board of Directors of Reorganized White Energy, Inc. in accordance with the Amended White Energy Certificate of Incorporation, Amended White Energy By-laws, the Stockholders' Agreement, if any, and applicable nonbankruptcy law.

6.10.2     The sole member of Reorganized WE Holding Company, LLC shall be Reorganized White Energy, Inc.  The sole member of each of Reorganized U.S. Energy Partners, LLC, Reorganized WE Hereford, LLC, and Reorganized Plainview BioEnergy, LLC, shall be Reorganized WE Holding Company, LLC, in accordance with the provisions of their respective organizational documents and applicable law.

**6.11     Officers / Employees.**

6.11.1     The Prepetition Agent or the Debtors will provide, with the prior written consent of the Requisite Secured Lenders and the Prepetition Agent (which consent may be given or withheld by the Prepetition Agent or the Requisite Secured Lenders in the exercise of the sole and absolute discretion of each of them), After Consultation with the Debtors, the identity of each Person that shall serve as the initial officers of the Reorganized White Energy,

Inc. and the Reorganized Subsidiaries on and after the Effective Date in the Plan Supplement. Such officers shall serve in accordance with the by-laws of Reorganized White Energy, Inc. or the Reorganized Subsidiary, as applicable, any employment agreement with such Reorganized Debtor and applicable nonbankruptcy law. The Prepetition Agent or the Debtors will provide, with the prior written consent of the Requisite Secured Lenders and the Prepetition Agent (which consent may be given or withheld by the Prepetition Agent or the Requisite Secured Lenders in the exercise of the sole and absolute discretion of each of them), After Consultation with the Debtors, the identity of each Insider that will be employed or retained by a Reorganized Debtor and the nature of any compensation for such Insider in the Plan Supplement. On the Effective Date, the officers of the Reorganized Subsidiaries shall be determined by the respective boards of directors, managers or members, as applicable, of the Reorganized Debtors.

6.11.2    Reorganized White Energy, Inc. has entered or will enter into certain employment agreements with certain employees with the prior written consent of the Prepetition Agent. The Reorganized Debtors will distribute to certain other employees bonus payments in the aggregate amount of $51,612, to be payable to certain designated employees in designated amounts on each of the three (3) month anniversary of the Effective Date and the six (6) month anniversary of the Effective Date, in each case with the prior written consent of the New Term Loan Agent.

### 6.12    Management Incentive Plan.

6.12.1    On the Effective Date, Reorganized White Energy, Inc. shall adopt the Management Incentive Plan. The solicitation of votes on the Plan shall be deemed a solicitation of the holders of New Common Stock for approval of the Management Incentive Plan for purposes of sections 162(m) and 422 of the Internal Revenue Code of 1986, as amended. Entry of the Confirmation Order shall constitute such approval, and the Confirmation Order shall so provide. All shares of New Common Stock issued under the Management Incentive Plan (including those issued upon the valid exercise of options issued thereunder) shall be duly authorized, validly issued, fully paid for, non assessable shares of New Common Stock, free of preemptive rights.

6.12.2    On the Effective Date, 500 unissued shares of New Common Stock equal to 5% on a fully diluted basis shall be reserved for issuance to the Reorganized Debtors' management team under the Management Incentive Plan. Awards of shares of New Common Stock or grants of options therefor will be subject to the Reorganized Debtors meeting certain financial performance or other criteria to be established by the board of directors of Reorganized White Energy, Inc. or the Compensation Committee of the board of directors of Reorganized White Energy, Inc. The Compensation Committee of the board of directors of Reorganized White Energy, Inc. will make the individual awards and establish the terms and conditions of each award.

### 6.13    Causes of Action/Reservation of Rights.

6.13.1    *Causes of Action Generally Reserved.* The Reorganized Debtors shall, in accordance with section 1123(b) of the Bankruptcy Code, reserve, retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all rights,

claims, Causes of Action, rights of setoff, suits, proceedings or other legal or equitable defenses accruing to the Debtors or the Estates pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including any Avoidance Actions, except (i) as otherwise provided in the Plan or the Confirmation Order, (ii) with respect to the Released Parties and (iii) preference claims under section 547 of the Bankruptcy Code.

6.13.2    *Causes of Action - no waiver.*  Except as otherwise expressly set forth herein (including in sections 6.13.1 and 6.14.1), nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Debtors or the Disbursing Agent may choose to assert on behalf of the Debtors' respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including (i) any and all Claims against any Person (including against Fagen in connection with the Fagen Litigation except as set forth in section 4.4.4 hereof), to the extent such Person asserts a Claim, cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, the Reorganized Debtors, their officers, directors or representatives and (ii) the turnover of any property of any of the Debtors' or the Reorganized Debtors' Estates.

6.13.3    The Disbursing Agent shall be deemed the appointed representative to the Reorganized Debtors, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, causes of action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successors who hold such rights.

6.13.4    No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Disbursing Agent will not pursue any and all available Causes of Action against them.  The Debtors, the Disbursing Agent and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan.

6.13.5    All Claims and Causes of Action under section 547 of the Bankruptcy Code are hereby waived and released.

**6.14    Releases and Injunction Related to Releases.**

6.14.1    *Releases by Debtors.*  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Reorganized Debtors and their respective Estates and each of their respective Related Persons, and the Committee and their Professional Persons or any other representative of the Estates will be deemed to completely and forever release, waive, void, extinguish and discharge all Released Actions (other than (x) the rights to enforce the Plan and any right or obligation under the Plan, (y) the securities, contracts, instruments, releases, indentures and other agreements or documents delivered hereunder or contemplated hereby, including the Plan Documents, and (z) the Fagen Litigation except as set forth in section 4.4.4 hereof) that may be asserted against the Released Parties or any of their respective Related Persons by or on behalf of the Debtors or Reorganized Debtors or their respective Estates.

6.14.2    *Releases by Holders of Claims and Equity Interests*.  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Committee and each Person voting to accept the Plan, and each of their respective Related Persons will be deemed to completely and forever release, waive, void, extinguish and discharge all Released Actions (other than (x) the rights to enforce the Plan, and any right or obligation under the Plan, the securities, contracts, instruments, releases, indentures and other agreements or documents delivered hereunder or contemplated hereby, including the Plan Documents, and (y) the Fagen Litigation except as set forth in section 4.4.4 hereof) that may be asserted against the Released Parties or any of their Related Persons.

6.14.3    *Injunction Related to Releases*.  Each Person that is a holder of a Claim and/or an Equity Interest that voted to accept the Plan and each of their respective Related Persons is permanently, forever and completely stayed, restrained, prohibited and enjoined from, directly or indirectly, derivatively or otherwise, commencing or continuing any Released Action against any Released Party.  Nothing herein shall prejudice any right, remedy, defense, claim, cross-claim or counterclaim or third-party claim that any Person may have against any Person other than with respect to the Released Actions against the Released Parties.

6.14.4    *No Personal Liability*.  No officer or director of any of the Debtors or the Reorganized Debtors who was an officer or director as of or after the Petition Date shall have any personal liability for any Claims, obligations, suits, judgments, damages, debts, rights, Causes of Action or liabilities, or any Equity Interests or rights of an equity security holder, whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other circumstance that occurred, arose, took place, existed or exists on or prior to the Effective Date in connection with or related to the Debtors or their respective Estates, or their business operations.

6.14.5    *Deemed Consent*.  By voting to accept the Plan, each holder of a Claim will be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the exculpations, releases and injunctions set forth in the Plan.

6.14.6    *No Release of Willful Misconduct or Gross Negligence*.  Nothing in this section 6.14 shall be construed to release any party from willful misconduct or gross negligence as determined by Final Order.

### 6.15    **Appointment of the Disbursing Agent.**

Upon the occurrence of the Effective Date, Reorganized White Energy, Inc. shall be appointed to serve as the Disbursing Agent, and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**6.16    Sources of Cash for Plan Distributions.**

All Cash necessary for the Disbursing Agent to make payments and Plan Distributions shall be obtained from proceeds of the Debtors' existing Cash balances and/or proceeds of the Exit Credit Facility.

**6.17    Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.**

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in accordance with the trust provisions of the Internal Revenue Code (sections 641 et seq.), and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

**6.18    Certificates.**

Certificates evidencing the New Common Stock received by restricted holders or by a holder that the Debtors and the Prepetition Agent determine is an underwriter within the meaning of section 1145 of the Bankruptcy Code will bear a legend substantially in the form below:

**THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION AND MAY NOT BE SOLD, OFFERED FOR SALE OR OTHERWISE TRANSFERRED UNLESS REGISTERED OR QUALIFIED UNDER SAID ACT AND APPLICABLE STATE SECURITIES LAWS OR UNLESS THE COMPANY RECEIVES AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO IT THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED.**

**ARTICLE VII.**

**DISTRIBUTION PROVISIONS**

**7.1    Distribution Record Date.**

7.1.1    As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. The Debtors and the Prepetition Agent shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring on

or after the Distribution Record Date.  The Debtors or Reorganized Debtors, as applicable, and the Prepetition Agent shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

**7.2**     **Plan Distributions.**

7.2.1     Reorganized White Energy, Inc. as Disbursing Agent shall make all Plan Distributions.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

7.2.2     In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.

7.2.3     The Disbursing Agent shall make all Plan Distributions on account of Allowed Secured Lender Claims to the Prepetition Agent, which Plan Distributions the Prepetition Agent shall distribute to the holders of Allowed Secured Lender Claims pursuant to the Plan.

7.2.4     Interim Distributions may be made from time to time at the discretion of the Disbursing Agent.

**7.3**     **Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**7.4**     **Address for Delivery of Plan Distributions/Unclaimed Distributions.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (a) in the Schedules filed with the Bankruptcy Court unless the Debtors have been notified in writing of a change of address, including by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected in such Schedules for such holder, (b) on the Proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address.  If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to Reorganized White Energy, Inc. for distribution.

**7.5**     **De Minimis Distributions.**

        Notwithstanding anything to the contrary in the Plan, any holder of an Allowed Claim that would have received a Plan Distribution of less than twenty-five dollars ($25.00) with respect to such Allowed Claim shall not receive any Plan Distribution. The unpaid Plan Distributions of under $25.00 shall be redistributed to the other holders of Allowed General Unsecured Claims.

**7.6**     **Time Bar to Cash Payments.**

        Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to the Reorganized Debtors.

**7.7**     **Manner of Payment under the Plan.**

        7.7.1     All Plan Distributions of Cash, New Common Stock, the Fagen Note and New Term Loans, as applicable, to the creditors of each of the Debtors under the Plan (or to the New LLC in the case of the Class 2 New Common Stock) shall be made by the Disbursing Agent or its designee on behalf of the applicable Debtor.

        7.7.2     Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**7.8**     **Expenses Incurred On or After the Effective Date and Claims of the Disbursing Agent.**

        Except as otherwise ordered by the Bankruptcy Court or as provided in the Plan, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties or, if the parties are unable to agree, as determined by the Bankruptcy Court.

**7.9	Fractional Plan Distributions.**

7.9.1	*No Fractional Cash Distributions.*  Except as provided in section 7.9.4 herein, no payments of fractions of dollars shall be made under the Plan.  Fractions of dollars shall be rounded to the nearest whole dollar (up and down) with any half dollar rounded down.

7.9.2	*No Fractional New Common Stock Distributions.*  No fractional shares of New Common Stock shall be issued or distributed under the Plan.  If any Plan Distribution would result in the issuance of shares of New Common Stock that is not a whole number, the actual Plan Distribution of shares of New Common Stock shall be rounded to the next higher or lower number, with fractions of one-half or less being rounded down.  The total number of shares of New Common Stock to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided for herein.

7.9.3	*No Consideration.*  No consideration shall be provided in lieu of fractional shares that are rounded down.

7.9.4	*New Term Loan Notes.*  The Fagen Note and New Term Loan Notes shall be issued in dollars and cents.

**7.10	Setoffs.**

Other than with respect to the Secured Lender Claims (as to which any and all rights of setoff or recoupment have been waived), the Debtors or the Reorganized Debtors may, but shall not be required to, apply setoff or recoupment against any Claim (for purposes of determining the Allowed amount of such Claim on which a Plan Distribution shall be made), any claims, rights, or Cause of Action of any nature whatsoever that the Debtors or Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim, right or Cause of Action the Debtors or Reorganized Debtors may have against the holder of such Claim.

**7.11	Compliance with Tax Requirements.**

To the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions shall be subject to such withholding and reporting requirements.

**7.12	Hart-Scott-Rodino Compliance.**

Any shares of New Common Stock to be distributed under the Plan to any Person required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall not be distributed until the notification and waiting periods applicable under such Act to such Person shall have expired or been terminated.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

### 8.1     Prosecution of Contested Claims.

Unless otherwise ordered by the Bankruptcy Court, only the Disbursing Agent shall be entitled to object to, settle, compromise, withdraw or litigate objections to Claims. Any objections to Claims shall be served and filed on or before the Claims Objection Deadline (subject to being extended by the order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing).

### 8.2     Claims Objection Deadline.

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing to all creditors), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. If an objection has not been filed to a Proof of Claim or a Scheduled Claim by the Claims Objection Deadline, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim, if such Claim has not been previously Allowed.

### 8.3     Claims Settlement.

From and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action (except for Claims and Causes of Action asserted by or against Fagen) without further review or approval of the Bankruptcy Court, other than any settlement or compromise of a Claim or Cause of Action that involves an Insider.

### 8.4     No Plan Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, no payments or Plan Distributions shall be made with respect to all or any portion of a Claim that is Contested in whole or in part, unless and until all objections to such Claim have been settled or withdrawn or have been determined by Final Order, and the Claim or some portion thereof, has become an Allowed Claim.

### 8.5     Distributions After Allowance.

Subject to the setoff rights as provided in section 7.10, and subjection to section 8.4, after such time as a Contested Claim becomes, in whole or in part, an Allowed Claim, the Disbursing Agent shall distribute to the holder thereof the Plan Distributions if any to which such holder is entitled under the Plan. No interest shall be paid on any Contested Claim that later becomes an Allowed Claim.

**8.6     Contested Claims Reserve.**

        8.6.1     The Disbursing Agent shall establish appropriate reserves for Contested Claims by withholding the lesser of (a) 100% of the Plan Distribution to which holders of Contested Claims would be entitled under the Plan if such Contested Claims were Allowed Claims, or (b) such other amount as may be approved by the Bankruptcy Court.

        8.6.2     On, or as soon as practicable after the Initial Distribution Date, Reorganized White Energy, Inc. shall transmit to the Disbursing Agent the Cash that would otherwise be distributable to a holder of a General Unsecured Claim if such Claim were not a Contested Claim.

**8.7     No Recourse Against the Debtors or Reorganized Debtors.**

        Any holder of a Contested Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable Plan Distribution solely from the Contested Claim Reserve established on account of such Contested Claim.  In no event shall any holder of a Contested Claim have any recourse with respect to Plan Distributions made, or to be made, under the Plan to holders of such Claims, to any Debtor or Reorganized Debtor or their Related Persons on account of such Contested Claim, regardless of whether such Contested Claim shall ultimately become an Allowed Claim, and regardless of whether sufficient Cash remains available for distribution in the Contested Claim Reserve established on account of such Contested Claim at the time such Claim becomes entitled to receive a Plan Distribution.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE OCCURRENCE OF THE EFFECTIVE DATE**

**9.1     Conditions Precedent to Confirmation.**

        The Plan will not be confirmed and the Confirmation Order will not be entered until and unless each of the following conditions has occurred or been waived in accordance with the terms of the Plan:

        9.1.1     The clerk of the Bankruptcy Court shall have entered an order or orders:

        (i)     approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

        (ii)     determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan;

        (iii)     confirming and giving effect to the terms and provisions of the Plan;

        (iv)     determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan;

(v)     approving the Plan Documents, including the New Financing Documents; and

(vi)    authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents.

9.1.2     Each of the Confirmation Order, the Plan Documents and the Plan shall be in form and substance satisfactory to the Prepetition Agent (After Consultation with the Debtors), the Requisite Secured Lenders, the Exit Facility Lenders and the Exit Facility Agent, each in the exercise of their sole and absolute discretion.

9.1.3     The Schedule of Assumed Executory Contracts shall be acceptable to the Requisite Secured Lenders and the Prepetition Agent (After Consultation with the Debtors), each in the exercise of its sole and absolute discretion.

9.1.4     The Confirmation Order shall be entered no later than July 19, 2010, time being strictly of the essence.

**9.2     <u>Conditions Precedent to the Occurrence of the Effective Date</u>.**

The Effective Date of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived in accordance with the terms of the Plan:

(i)     the Confirmation Order shall have been entered, shall have become a Final Order, and shall be acceptable to the Prepetition Agent (After Consultation with the Debtors), the Requisite Secured Lenders, the Exit Facility Lenders and the Exit Facility Agent, each in the exercise of their sole and absolute discretion;

(ii)    all necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including satisfaction or waiver of all conditions to (i) the obligations of the Debtors under the Plan and the Plan Documents and (ii) the obligations of the holders of Allowed Secured Lenders under the New Financing Documents;

(iii)   the Exit Credit Facility shall have been entered into by all parties thereto and all conditions to the initial draw thereunder shall have been satisfied in accordance with the terms thereof such that the Reorganized Debtors shall have credit available to them to provide financing sufficient to meet their Cash obligations under the Plan and have sufficient borrowing capacity to satisfy their working capital requirements as of the Effective Date;

(iv)    all agreements and other instruments that are exhibits to the Plan or included in the Plan Supplement shall be acceptable to the Requisite Secured Lenders and the Prepetition Agent (After Consultation with the Debtors), each in the exercise of its sole and absolute discretion;

(v)     all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed;

(vi)     the New Term Loan Facility shall have been entered into by all of the parties thereto, and the New Term Loan Notes shall have been issued thereunder;

(vii)    the New Common Stock to be issued under the Plan shall have been duly authorized and, upon issuance, shall be validly issued and outstanding;

(viii)   the New LLC shall have been formed by filing a certificate of formation with the Delaware Secretary of State;

(ix)     the Effective Date shall have occurred no later than August 19, 2010, time being strictly of the essence;

(x)      all fees, reasonable costs and expenses of the Prepetition Agent incurred under the Credit Agreement on or prior to the Effective Date shall have been paid in full;

(xi)     the Stockholders' Agreement shall have been entered into by all the parties thereto;

(xii)    the deposit of Cash required by section 4.6.5 hereof shall have been made; and

(xiii)   the Fagen Cash Distribution shall have been made as required by section 4.4.4 hereof.

**9.3      Waiver of Conditions.**

The Requisite Secured Lenders and the Prepetition Agent, in the exercise of their sole and absolute discretion may waive, in whole or in part, any of the conditions to confirmation of the Plan or the effectiveness of the Plan.  Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

**9.4      Effect of Non-Occurrence of the Effective Date.**

In the event that the conditions specified in section 9.2 of this Plan have not been satisfied or waived in accordance with section 9.3 of this Plan, and upon notification submitted by the Debtors or the Prepetition Agent to the Bankruptcy Court, (a) the Confirmation Order shall be vacated; (b) no Plan Distributions shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims or Causes of Action by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any proceedings further involving the Debtors.

# ARTICLE X.

## THE DISBURSING AGENT

### 10.1    Rights and Powers of Disbursing Agent.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to: (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in Article VIII, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in Article VIII upon notice to the New Term Loan Facility Agent and the New Term Loan Facility Lenders for (i) any General Unsecured Claim asserted in excess of $100,000 and (ii) any Claim other than a General Unsecured Claim; (f) make annual and other periodic reports regarding the status of Plan Distributions to the holders of Allowed Claims that are outstanding at such time; such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.  In no event and under no circumstance shall the Disbursing Agent or any other Person have the right to settle or otherwise dispose of or resolve the Fagen Litigation or any Claims or Causes of Action asserted by Fagen, except as set forth in section 4.4.4 hereof, without the express prior written consent of the New Term Loan Facility Agent, as agent for the New Term Loan Facility Lenders.

### 10.2    Exculpation of the Disbursing Agent.

Except as otherwise provided in this section 10.2, pursuant to section 1125(e) of the Bankruptcy Code, the Disbursing Agent, together with each of its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence.  No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.

# ARTICLE XI.

## TREATMENT OF EXECUTORY CONTRACTS

**11.1** **Assumption and Rejection of Executory Contracts.**

11.1.1 *General*. Any Executory Contract (i) which is not listed on the Schedule of Assumed Executory Contracts that will be included in the Plan Supplement; (ii) which has not expired by its own terms on or prior to the Confirmation Date; (iii) which has not been assumed or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date; and (iv) which is not the subject of a motion to reject pending as of the Confirmation Date, shall be deemed to be rejected by the applicable Reorganized Debtor effective on the Confirmation Date, and the Plan shall constitute a motion to reject such Executory Contract; provided, however, that the Prepetition Agent (After Consultation with the Debtors) with the consent of the Requisite Secured Lenders, reserves the right, on or prior to the Confirmation Date, to amend the Schedule of Assumed Executory Contracts, to delete any Executory Contract therefrom or add any Executory Contract thereto, in which event such Executory Contract(s) shall be deemed to be, respectively, rejected by the Reorganized Debtors or assumed. The Debtors or the Prepetition Agent shall provide notice of any amendments to the Schedule of Assumed Executory Contracts to the parties to the Executory Contracts affected thereby and to the Prepetition Agent on behalf of the Secured Lenders. The listing of a document on the Schedule of Assumed Executory Contracts shall not constitute an admission by the Debtors that such document is an Executory Contract or that the Debtors have any liability thereunder. The Fagen Executory Contracts are hereby assumed without the need for any Cure Payments to be made.

11.1.2 *Real Property Related Contracts, Leases and Interests*. Each Executory Contract that is assumed that relates to the use or occupancy of real property shall include (i) modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract, without regard to whether such agreement, instrument or other document is listed on the Schedule of Assumed Executory Contracts and (ii) all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are Executory Contracts.

11.1.3 This Plan shall constitute a motion to reject all Executory Contracts not set forth on the Schedule of Assumed Executory Contracts and the Debtors shall have no liability thereunder except that any Claim related to a rejected Executory Contract shall be treated as a General Unsecured Claim. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code, and a finding by the Bankruptcy Court that each rejection is in the best interests of the Debtors and their Estates.

11.1.4 The Plan shall constitute a motion to assume all Executory Contracts set forth on the Schedule of Assumed Executory Contracts. Subject to the occurrence of the

Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors and their estates.

          11.1.5    Any non-Debtor counterparty to any Executory Contract designated as being assumed pursuant to section 11.1.4 that disputes the assumption of such Executory Contract must file with the Bankruptcy Court, and serve upon the Debtors, the Committee and the Prepetition Agent, a written objection to assumption, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing.  The failure to timely object shall be deemed a waiver of any and all objections to the assumption of Executory Contracts designated as being assumed in section 11.1.4.

## 11.2   Cure.

          With respect to each Assumed Executory Contract, any monetary amounts required as Cure Payments shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash as soon as practicable after and in no event later than 30 days after the latest of:  (a) the Effective Date; (b) the date following notice to Reorganized White Energy, Inc. of the amount due; or (c) upon such other terms as may be agreed upon by the non-Debtor party to such Assumed Executory Contract and the Prepetition Agent (After Consultation with the Debtors), or in each case, as soon thereafter as is practicable. In the event of a dispute regarding (i) the amount of any Cure Payment, (ii) the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Assumed Executory Contract or (iii) any other matter pertaining to assumption of the Executory Contract, the Cure Payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such dispute.

          Any non-Debtor counterparty to an Executory Contract assumed pursuant to section 11.1 that disputes the scheduled cure obligation must file with the Bankruptcy Court, and serve upon the Debtors, the Committee and the Prepetition Agent, a written objection to the cure obligation, which objection shall set forth the basis for the dispute and the alleged correct cure obligation, no later than ten (10) Business Days prior to the Confirmation Hearing.  The Confirmation Order may contain additional provisions for notice of proposed assumptions and proposed Cure Payment amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Schedule of Assumed Executory Contracts shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement.  If no Cure Payment amount is proposed by the Debtors or the Prepetition Agent, it shall be presumed that the Debtors are asserting that no Cure Payment amount is required to be paid under section 365(b)(1) of the Bankruptcy Code.  In the event of a conflict between the notice and objection procedures set forth in sections 11.1 or 11.2 and the Confirmation Order, the terms of the Confirmation Order shall control notwithstanding anything else in the Plan to the contrary.

### 11.3    Claims Arising from Rejected Contracts.

Claims arising from the rejection of Executory Contracts must be filed with the Bankruptcy Court and served on the Debtors, their counsel and counsel for the Prepetition Agent within thirty (30) days after service of (a) the Notice of Confirmation or (b) other notice that the Executory Contract has been rejected.  Any Claims for which a Proof of Claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors, their respective Estates, Affiliates, Assets, properties or interests in property or against the Reorganized Debtors or their respective Estates, Assets, property or interests in property.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are properly filed and served shall be treated as General Unsecured Claims (Class 5) under the Plan and shall be subject to objection by the Disbursing Agent.

### 11.4    Survival of Indemnification Obligations.

The provisions of the Credit Agreement governing the relationship of the Prepetition Agent and the Secured Lenders, including those provisions relating to the Prepetition Agent's rights of indemnification from the Secured Lenders, shall not be affected by and shall survive the Plan, entry of the Confirmation Order and the occurrence of the Effective Date.

## ARTICLE XII.

## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases, or that relate to any of the following:

(i)    To hear and determine all matters with respect to the assumption or rejection of Executory Contracts, resolution of disputes pertaining to Cure Payment amounts and the allowance of Claims resulting therefrom.

(ii)    To hear and determine any application to determine whether any contract or agreement entered into by the Debtors constituted an unauthorized post-petition contract under section 549 of the Bankruptcy Code.

(iii)    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(iv)    To hear and determine all applications under sections 327, 328, 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred to professionals prior to the Effective Date, provided, however, that from and after the Effective Date, the payment of fees and expenses of the retained professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

(v)     To hear and determine any dispute or reconcile any inconsistency arising in connection with the Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of the Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing; provided, that with respect to disputes or inconsistencies relating to documents evidencing the Exit Credit Facility, the New Term Loan Facility, or any post-Effective Date issue of corporate governance, the Bankruptcy Court shall have jurisdiction but not exclusive jurisdiction.

(vi)     To hear and determine any matter concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

(vii)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(viii)     To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code.

(ix)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

(x)     To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

(xi)     To ensure that all Plan Distributions are accomplished as provided herein.

(xii)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, Administrative Claim or Equity Interest.

(xiii)     To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

(xiv)     To recover all Assets of the Debtors and property of the Debtors' Estates, wherever located.

(xv)     To enter a final decree closing the Chapter 11 Cases.

(xvi)     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates.

(xvii)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan.

(xviii) To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases.

(xix) To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

(xx) To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan or the Disclosure Statement; provided, that with respect to any matter relating to documents evidencing the Exit Credit Facility, the New Term Loan Facility, or any post-Effective Date matter of corporate governance, the Bankruptcy Court shall have jurisdiction but not exclusive jurisdiction.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

### 13.1 Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 13.2 Payment of Statutory Fees.

On the Effective Date, and thereafter as may be required, the Reorganized Debtors shall pay all fees required to be paid pursuant to section 1930 of title 28 of the United States Code and all fees required to be paid to the office of the U.S. Trustee until the Chapter 11 Cases are closed.

### 13.3 Claims and Equity Interests Satisfied.

Except as otherwise provided in the Plan or Confirmation Order, the rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any accrued postpetition interest, that arose at any time before the Effective Date against the Debtors, or any of their Estates, Assets, properties, or interests in property, to the fullest extent permitted by section 1141(d) of the Bankruptcy Code. Except as otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged, released, terminated and extinguished in full. Neither the Debtors nor the Reorganized Debtors shall be responsible for any pre-Effective Date obligations of the Debtors, except those expressly assumed by any such Debtor, as applicable. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtors, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any Claim or Causes of Action arising from or related to any event, occurrence, condition, thing, or

circumstance, or any other Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**13.4    Exculpation**.

Pursuant to section 1125(e) of the Bankruptcy Code, the Released Parties and each of their respective Related Persons shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.  The Confirmation Order shall enjoin all holders of Claims and Equity Interests from asserting or prosecuting any Claim or cause of action against the Debtors, the Committee, any Released Party and each of their respective Related Persons as to which such Person has been exculpated from liability pursuant to the preceding sentence.

**13.5    Discharge of Liabilities.**

All debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan shall be automatically discharged forever.  Except as otherwise provided in the plan, the Reorganized Debtors shall not have, and shall not be construed to have or maintain any liability, Claim, or obligation, that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date of the Plan (including any liability or Claims arising under applicable non-bankruptcy law as a successor to the Debtors) and no such liabilities, claims, or obligations for any acts shall attach to the Reorganized Debtors.

**13.6    Discharge of Debtors.**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action that occurred or came into existence prior to the Effective Date to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against the Debtors and the Reorganized Debtors, the Disbursing Agent, the Estates, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature.

The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto.  As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtors, Reorganized Debtors or property of the Debtors or their Estates to the extent it relates to a discharged Claim.

**13.7**    **Injunction Against Interference With Plan.**

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employers, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.8**    **Notices.**

Any notices, requests, and demands to or upon the Debtors, the Reorganized Debtors, the Requisite Secured Lenders or the Committee, to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed and sent by email to the following:

White Energy, Inc.
Attention:  Chief Executive Officer
5005 LBJ Freeway, Suite 1400
Dallas, Texas  75244
Telecopier: (214) 751 - 2595

with a copy to:

Attorneys for the Debtors
Duane Morris LLP
Michael R. Lastowski
Christopher M. Winter
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 657-4900
Telecopier: (302) 657-5001

mrlastowski@duanemorris.com
cmwinter@duanemorris.com

and

WestLB AG, New York Branch, as Administrative Agent
1121 Avenue of the Americas
New York, New York  10020
Attn: Keith Min

with a copy to:

Attorneys for WestLB AG, New York Branch, as Administrative Agent

> Kaye Scholer LLP
> Madlyn Gleich Primoff, Esq.
> 425 Park Avenue
> New York, New York  10022
> Attn:  Madlyn Gleich Primoff, Esq.
> Telephone:  (212) 836-8000
> Telecopier:  (212) 836-6525
> mprimoff@kayescholer.com

and

Attorneys for the Committee

> Lowenstein Sandler PC
> Bruce Buechler, Esq.
> 65 Livingston Avenue
> Roseland, New Jersey  07068
> Direct Dial:  973-597-2308
> Direct Fax:  973-597-2309
>
> bbuechler@lowenstein.com

### 13.9  Headings.

The headings and other captions used in the Plan are for reference purposes only, and shall not affect the meaning or interpretation of the Plan in any way.

### 13.10  Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a document in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

### 13.11  Expedited Determination.

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**13.12    Exemption from Transfer Taxes.**

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from a Debtor to a Reorganized Debtor or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of the Plan and the Plan Documents) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

**13.13    Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

**13.14    Interest.**

Interest accrued after the Petition Date will accrue only on the Secured Lenders Claims, or as otherwise required by the Plan, the Confirmation Order, the Bankruptcy Court or by applicable law.

**13.15    Modification of the Plan and Amendments.**

The Plan may be amended, modified or supplemented by the Prepetition Agent (After Consultation with the Debtors) with the prior written consent of the Requisite Secured Lenders, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors (with the consent of the Prepetition Agent) or the Prepetition Agent may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  The Prepetition Agent will notify the Committee of any amendment, modification or supplement to the Plan that directly affects the treatment or rights of holders of General Unsecured Claims and Section 503(b)(9) Claims.

**13.16    Revocation, Withdrawal or Non-Consummation of Plan.**

13.16.1    The Prepetition Agent, with the prior written consent of the Requisite Secured Lenders reserves the right to revoke and withdraw the Plan with respect to any one or more of the Debtors prior to the occurrence of the Effective Date and to all subsequent plans of reorganization. If the Prepetition Agent with the prior written consent of the Requisite Secured Lenders revokes or withdraws the Plan with respect to any one or more of the Debtors, or if confirmation or consummation of the Plan does not occur as to any Debtor, then, as to such Debtor, (a) the Plan shall be null and void in all respects and (b) any settlements and compromises embodied in the Plan (including the fixing or limiting to an amount certain any claim or class of claims) assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained in the Plan and no acts taken in preparation for consummation of the Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or any other Person, (ii) prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor or (iii) constitute or be deemed to constitute an admission of any sort by the Debtors or any other Person. None of the filing of the Plan, the taking by the Requisite Secured Lenders, the Prepetition Agent, the Committee or Debtors of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by any Requisite Secured Lender, the Prepetition Agent, the Committee or the Debtors against interest, or be or be deemed to be a waiver of any rights, claims or remedies that the Requisite Secured Lenders, the Prepetition Agent, the Committee or the Debtors may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved. In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan and the Plan Documents, and any statement contained herein or therein, may not be used by any Person, party or entity against any Requisite Secured Lender, the Prepetition Agent, the Committee or the Debtors.

13.16.2    If the Debtors withdraw as a Plan proponent at any time, the Plan shall automatically be deemed modified to provide for the Prepetition Agent to be the sole Plan proponent. The Debtors hereby acknowledge that such modification shall not be a material modification and the Plan confirmation process shall continue to move forward on the same schedule, without interruption or delay, unless the Prepetition Agent shall determine (at any time up to the occurrence of the Effective Date) to revoke or withdraw the Plan.

**13.17    Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

**13.18    Injunctions.**

13.18.1    On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Released Parties, the Estates, the Assets, the Disbursing Agent or any

of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):

> (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

> (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

> (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

> (iv) asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Article XI.

**13.19   Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of all Claims and Equity Interests and their respective successors and assigns, including the Reorganized Debtors.

**13.20   Severability of Plan Provisions.**

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Prepetition Agent, After Consultation with the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.21   No Admissions.**

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY

NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS OR THEIR AFFILIATES, AS DEBTORS AND DEBTORS-IN-POSSESSION IN THESE CHAPTER 11 CASES.

**13.22    Dissolution of the Committee.**

On the Effective Date, the Committee will dissolve and its members will be released and discharged from all duties and obligations arising from or related to the Reorganized Cases.

**13.23    Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as in effect on the Petition Date shall apply.  With regard to all dates and the periods of time set forth or referred to in the Plan, time is of the essence.

**13.24    Successors and Assigns.**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**13.25    Conflict between Plan, Disclosure Statement and Plan Documents.**

13.25.1    Except as provided in section 13.25.2 below, in the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, any Plan Document or any document in the Plan Supplement, the terms and provisions of the Plan shall control and govern.

13.25.2    In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Exit Credit Facility or the New Term Loan Facility, then the terms and provisions of the Exit Credit Facility or the New Term Loan Facility, as applicable, shall control and govern.

**13.26    Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

White Energy, Inc.

By: _____
Calvin Stewart, Chief Financial Officer


Dated:  July 13, 2010

**White Energy Holding Company, LLC**

By: _____

Calvin Stewart, Chief Financial Officer

Dated: July 13, 2010

U.S. Energy Partners, LLC

By: _____

Calvin Stewart, Chief Financial Officer

Dated:  July 13, 2010

**WE Hereford, LLC**

By: _____

**Calvin Stewart, Chief Financial Officer**

**Dated: July 13, 2010**

Plainview BioEnergy, LLC

By: _____

Calvin Stewart, Chief Financial Officer

Dated:  July 13, 2010

**WestLB AG, New York Branch, as Administrative Agent**

By: _____
E. Keith Min
Managing Director

Dated: July 12 , 2010

By: _____
Petra Fisher
Executive Director

Dated: July 12 , 2010