IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WHITE ENERGY, INC., *et al.*,[1] | Case No. 09-11601 (CSS) |
| Debtors. | Jointly Administered |
| | Re: Docket No. 799 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING THE THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR WHITE ENERGY, INC. AND ITS AFFILIATED DEBTORS FILED BY THE DEBTORS AND WESTLB AG, NEW YORK BRANCH, AS ADMINISTRATIVE AGENT

The above-captioned debtors and debtors-in-possession (the "Debtors") filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") on May 7, 2009 (the "Petition Date").

WestLB AG, New York Branch as Administrative Agent (the "Agent") and White Energy Inc. ("White Energy") and the other Debtors filed their *Third Amended Chapter 11 Plan of Reorganization for White Energy, Inc. and its Affiliated Debtors*, dated July 15, 2010 (the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court").[2]

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: White Energy, Inc. (1083); White Energy Holding Company, LLC (3034); US Energy Partners, L.L.C. (1177); WE Hereford, LLC (9408); and Plainview BioEnergy, LLC (5553). The corporate headquarters for each of the Debtors is 5005 LBJ Freeway, Suite 1400, Dallas, TX 75244.

[2]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

On December 15, 2009, the Agent and the Debtors (collectively, the Proponents" and each a "Co-Proponent") filed the *Disclosure Statement Relating to the Chapter 11 Plan of Reorganization for White Energy, Inc. and Its Affiliated Debtors* (as subsequently amended and transmitted to parties in interest, the "Disclosure Statement") with the Court.

On January 15, 2010, a hearing was held on notice to all creditors, stockholders and other parties in interest to the Chapter 11 Cases to consider approval of the Disclosure Statement.

On January 19, 2010, the Court entered an order (the "Solicitation Order"), among other things, (a) approving the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, and (b) establishing certain procedures for soliciting and tabulating votes with respect to the Plan, including approving the form and method of notice of the confirmation hearing (the "Confirmation Hearing Notice").

As evidenced by the Affidavit of Service of Shea D. Welch of The Garden City Group, Inc. sworn to and filed with the Court on January 25, 2010 (the "Solicitation Certificate") (a) the Disclosure Statement, the Plan, the Confirmation Hearing Notice, the letter from the Official Committee of Unsecured Creditors (the "Creditors' Committee") and the form of Ballot and return envelope were transmitted to all known holders of Claims in Classes 2, 3, 4 and 5 in accordance with the Solicitation Order; (b) the Notice of Non-Voting Status with Respect to Impaired Classes Deemed to Reject the Plan was transmitted to all known holders of Equity Interests in Classes 7 and 8 in accordance with the Solicitation Order; and (c) the Notice of Non-Voting Status with Respect to Unimpaired Classes Deemed to Accept the Plan was transmitted to all known holders of Claims and Equity Interests in Classes 1 and 6 in accordance with the Solicitation Order.

On February 18, 2010, the Agent filed the Plan Supplement and the Plan Documents (including the New Term Loan Facility and the Exit Credit Facility (each as defined in the Plan)) with the Court. As set forth in the certificate of service (the "Plan Supplement Affidavit") (Docket ID 584) filed with the Court, the Plan Supplement and the Plan Documents were served upon (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (b) counsel for the Debtors, (c) counsel for Columbus Nova Ethanol Holdings, LLC, (d) counsel for Fagen, Inc. ("Fagen"), (e) counsel for the Creditors' Committee, and (f) all parties having filed a notice of appearance and request for service herein in accordance with Bankruptcy Rule 2002, the Master Service List and certain additional parties. An amendment to the Plan Supplement was filed on July 13, 2010 attaching revised Plan Documents relating to, among other things, the settlement with Fagen, Inc. The Plan Supplement filed on February 18, 2010 and the amended Plan Supplement filed on July 13, 2010 are referred to collectively as the "Plan Supplement."

On March 1, 2010, Kathryn A. Pamenter of The Garden City Group, Inc. filed the Declaration Certifying the Methodology for the Tabulation of Votes On and Results of Voting with respect to the Plan, sworn to on March 1, 2010, attesting and certifying the method and results of the ballot tabulation for the Classes of Claims (Classes 2, 3, 4 and 5) entitled to vote to accept or reject the Plan (as may have been supplemented thereafter, the "Voting Report").

Objections or purported objections to confirmation of the Plan were filed and served by (a) ICM, Inc., (b) Fagen, (c) Plainview Independent School District, and (d) the United States Trustee (collectively, the "Objections").

The Objections have (a) been withdrawn or resolved on the terms and conditions (i) set forth in stipulations approved by the Court, (ii) described on the record of the Confirmation

Hearing, (iii) set forth in this Confirmation Order, and/or (iv) set forth in the Plan (collectively, the "Resolved Objections"), or (b) been overruled by the Court at the Confirmation Hearing.

On July 13, 2010, the Debtors filed the Declaration of Calvin Stewart in Support of Confirmation of the Plan (the "Stewart Declaration").

On July 13, 2010, the Debtors and the Agent filed a memorandum of law in support of confirmation of the Plan (the "Confirmation Memorandum").

The Confirmation Hearing was held on July 15, 2010.

NOW, THEREFORE, based upon the Court's review of the Voting Report, the Stewart Declaration, and the Confirmation Memorandum, and upon (a) all the evidence proffered or adduced at, memoranda and Objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and (b) the entire record of the Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following findings of fact and conclusions of law and hereby orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      Exclusive Jurisdiction; Venue; Core Proceeding 28 U.S.C. §§ 157(b)(2), 1334(a), 1408 and 1409). The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has exclusive jurisdiction to enter a final order determining whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.      Judicial Notice. The Court takes judicial notice of the contents of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, but not limited to, all pleadings, notices and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the hearing to consider the adequacy of the Disclosure Statement and the confirmation of the Plan.

C.      Burden of Proof. The Proponents have satisfied the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

D.      Transmittal and Mailing of Materials; Notice. As evidenced by the Solicitation Certificate (Docket No. 533) filed with the Court, (1) the Notice of Non-Voting Status with Respect to Unimpaired Classes Deemed to Accept the Plan has been given to all known holders

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Civ. P. 52 made applicable in these Chapter 11 Cases by Fed. R. Bankr. P. 7052 and 9014.

of Claims and Equity Interests in Classes 1 and 6, (2) the Disclosure Statement, the Plan, the Ballots, and the Confirmation Hearing Notice have been given to all known holders of Claims in Classes 2, 3, 4 and 5, and (3) the Notice of Non-Voting Status with Respect to Impaired Classes Deemed to Reject the Plan has been given to all known holders of Equity Interests in Classes 7 and 8, in compliance with the notice procedures set forth in the Solicitation Order and the Bankruptcy Rules. All of the foregoing documents were also served on the Office of the United States Trustee, the District Director of the Internal Revenue Service, and all state and local taxing authorities in the states in which the Debtors conduct business. Notice and service of the documents referred to in this paragraph was adequate and sufficient under the circumstances and otherwise in compliance with the Bankruptcy Code and the Bankruptcy Rules. In addition, as evidenced by the Plan Supplement Affidavit filed with the Court, the service of the Plan Supplement was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

E.     Voting. Based on the Voting Report, the votes to accept or reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order and applicable nonbankruptcy law.

F.     Compromises and Settlements under and in connection with the Plan. All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

G.     Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(1) of the Bankruptcy Code. Specifically:

(i)     Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan designates five (5) Classes of Claims and three (3) Classes of Equity Interests. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for classifying separately the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims or Equity Interests. The Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Classes 1 and 6 are unimpaired under the Plan, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iii)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Plan specifies that Classes 2 through 5 and 7 and 8 are impaired under the Plan and Articles III and IV of the Plan specify the treatment of Claims in Classes 2, 3, 4 and 5 and Equity Interests in Classes 7 and 8, thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.

(iv)    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Proponents for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code. Section 4.6.1 of the Plan reflects a settlement of the U.S. Trustee's objection concerning treatment of holders of Allowed Class 5 claims (General Unsecured Claims). Holders of allowed Class 5 claims will receive their *pro rata* share of the General Unsecured Claim Distribution Amount regardless of whether they voted to accept or reject the Plan.

(v)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).     The Plan and the various documents, instruments and agreements set forth in the Plan Supplement and all other Plan Documents provide adequate and proper means for the Plan's implementation, including, but not limited to, (1) the substantive consolidation of the Debtors to the extent set forth in the Plan, (2) the Exit Credit Facility, (3) the New Term Loan Facility, and (4) the New Common Stock, thereby satisfying the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vi)     Prohibition of Issuance of Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).     Section 6.4.1 of the Plan provides that the Amended White Energy Certificate of Incorporation and the Amended White Energy By-laws will include provisions (1) creating the New Common Stock, (2) to the extent necessary or appropriate, effectuating the provisions of the Plan, and (3) such other provisions as may be agreed by the Requisite Secured Lenders and the Prepetition Agent, After Consultation with the Debtors.  The formation documents and limited liability company agreements of each Reorganized Subsidiary will be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and will include, among other things, a provision prohibiting the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

(vii)     Designation of Officers, Directors or Trustees (11 U.S.C. § 1123(a)(7)).  Section 6.10 of the Plan provides that the initial board of three to five directors of Reorganized White Energy, Inc. shall be determined in the sole and absolute discretion of the Requisite Secured Lenders prior to the Confirmation Hearing.  The Required Secured Lenders, with the consent of the Agent, shall have the right to name all five directors but are not obligated to name all five directors.  Section 6.11 of the Plan provides that officers of the Reorganized White Energy, Inc. shall be determined by Debtors or the Agent, with prior written consent of the

Requisite Secured Lenders and the Prepetition Agent (which consent may be given or withheld by the Prepetition Agent or the Requisite Secured Lenders in the exercise of the sole and absolute discretion of each of them), After Consultation with the Debtors. Sections 6.10 and 6.11 are consistent with the interests of creditors, equity security holders, and public policy in accordance with the requirements of section 1123(a)(7) of the Bankruptcy Code. The initial board of directors of Reorganized White Energy, Inc. shall be composed of (i) Ned Kleinschmidt, (ii) Donald E. Gales, (iii) Lawrence D. Thompson, and (iv) E. Keith Min. The fifth seat on the board of directors will be reserved for the chief executive officer, once the chief executive officer has been selected by the Board of Directors of Reorganized White Energy, Inc. Calvin Stewart, the chief financial officer, will be the initial officer of Reorganized White Energy, Inc.

(viii)    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(ix)    Bankruptcy Rule 3016(a). The Plan is dated and identifies the Proponents as proponents of the Plan, thereby satisfying the requirements of Bankruptcy Rule 3016(a).

H.    Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically:

> (i)    The Debtors are proper debtors under section 109 of the Bankruptcy Code and the Proponents of the Plan are proper proponents under section 1121 of the Bankruptcy Code.
>
> (ii)    The Proponents have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.
>
> (iii)    The Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in

transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

I.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).   The Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Proponents' good faith is evident from the facts and records of the Chapter 11 Cases in their totality, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.  The Plan is the result of extensive arm's-length negotiations among the Debtors, the Agent on behalf of the Secured Lenders and the Creditors' Committee.

J.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).   Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, and all payments made or to be made to professionals retained by order of the Court will be, as set forth in section 2.4 of the Plan, subject to review and approval by the Court upon final application under section 330, 331 or 503(b) of the Bankruptcy Code thereby satisfying the requirements of section 1129(a)(4) of the Bankruptcy Code.

K.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).   The Proponents have complied with the requirements of section 1129(a)(5) of the Bankruptcy Code.  As indicated in paragraph G(vii) above, the Proponents have disclosed the identity of the persons proposed to serve as initial directors or officers of the Reorganized Debtors after confirmation of the Plan.  In addition, the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public

policy. Each director, officer or manager shall serve from and after the Effective Date pursuant to the terms of the certificates of incorporation or other constituent documents of the Reorganized Debtors and applicable state corporation law.

L.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  After confirmation of the Plan, the Reorganized Debtors' businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission.      Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases or with respect to the Plan.

M.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).      The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis attached to the Disclosure Statement as Exhibit "D" and other evidence proffered or adduced at the Confirmation Hearing, including the Stewart Declaration, (1) are persuasive and credible, (2) have not been controverted by other persuasive evidence or have not been challenged, (3) are based on reasonable and sound assumptions, (4) produce a reasonable estimate of the liquidation values upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and (5) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

N.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1 and 6 of the Plan are Classes of unimpaired Claims and Equity Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Classes 2 and 5 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  No holder of any Claim in Class 4, if any, has voted to accept or reject the Plan.  Therefore, Class 4 is

deemed to accept the Plan for purposes of section 1129(a)(8). Class 3 voted to reject the Plan. However, in accordance with a stipulation filed on July 14, 2010 and approved herein by this Court, Fagen has withdrawn its objection to the Plan and changed its votes to reject the Plan to votes to accept the Plan. Accordingly, Class 3 has voted to accept the Plan. Classes 7 and 8 are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to Classes 7 and 8 (the "Rejecting Classes"), the Plan is nevertheless confirmable because the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes. See paragraph T below.

O.    Treatment of Administrative Expense and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims and Allowed Priority Tax Claims pursuant to sections 2.5 and 2.6 of the Plan, respectively, satisfies the requirements of sections 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

P.    Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)). At least one impaired Class under the Plan has voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Q.    Feasibility (11 U.S.C. § 1129(a)(11)). The Reorganized Debtors' Projected Financial Information contained in Exhibit "C" to the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other persuasive evidence or have not been challenged, (3) are based on reasonable and sound assumptions, (4) establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized

Debtors, and (5) after giving effect to the Plan and the Exit Credit Facility, the Reorganized Debtors will be solvent, *i.e.,* the value of their assets will exceed their liabilities and will be adequately capitalized, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

R. Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)). All fees payable under section 1930 of title 28 of the United States Code (the "Quarterly Fees") have been paid or will be paid pursuant to section 13.2 of the Plan by the Reorganized Debtors on or before the Effective Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

S. Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16). Sections 1129(a)(13)-(16) are inapplicable because the Debtors (i) do not provide retiree benefits, (ii) have no domestic support obligations, (iii) are not individuals, and (iv) are for-profit businesses.

T. Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). The Proponents presented uncontroverted evidence at the Confirmation Hearing, and the Court hereby finds and concludes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each of the Rejecting Classes, as required by section 1129(b)(1) of the Bankruptcy Code. The Rejecting Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code because the holders of such Equity Interests will not receive or retain any property under the Plan on account of their respective Equity Interests. The holders of Equity Interests in Classes 7 and 8 are subordinated to the holders of Claims in Classes 2 and 5 and therefore are not entitled to receive or retain any property under the Plan since holders of Claims in Class 2 and Class 5 will not be paid in full. Thus, the Plan may be

confirmed notwithstanding the deemed rejection of Classes 7 and 8 under Section 1129(c) of the Bankruptcy Code.

U.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended.

V.    Assumption. Article XI of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(a) and (b) of the Bankruptcy Code. The assumption of those executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts (as filed with the Plan Supplement and as may be amended until the Effective Date) is in the best interests of the applicable Debtor party to such contracts or leases, its Estate, and all parties in interest in the Chapter 11 Cases. The Plan and this Confirmation Order each adequately provides for the timely payment of cure amounts in Cash in accordance with section 365(b)(1) of the Bankruptcy Code.

W.    Rejection. The executory contracts and unexpired leases of the Debtors to be rejected on the Effective Date in accordance with the Plan are burdensome and, as such, the rejection thereof as of the occurrence of the Effective Date is in the best interests of the applicable Debtor party to such contracts or leases, its Estate, and all parties in interest in the Chapter 11 Cases.

X.    Substantive Consolidation. No creditor of any of the Debtors will be prejudiced by the substantive consolidation of the Chapter 11 Cases to the extent set forth in the Plan; such substantive consolidation will benefit all creditors of the Debtors.

Y.    Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in section 1129(a) and (b) and of the Bankruptcy Code.

Z.     Satisfaction of Conditions to Confirmation.     All conditions precedent to confirmation of the Plan, as set forth in section 9.1 of the Plan, if not waived pursuant to section 9.3 of the Plan, have been or will be satisfied upon entry of this Confirmation Order.

AA.     Good Faith Solicitation (11 U.S.C. § 1125(e)).     Based upon the record before the Court, the Proponents have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

BB.     Releases, Exculpations and Injunctions.

(i)     The Secured Lenders have valid, enforceable and perfected Liens on all or substantially all of the assets of the Debtors.

(ii)     The value of the Collateral securing the Claims of the Secured Lenders, on a going concern basis, is less than the Allowed Claims of the Secured Lenders. As a result, general unsecured creditors are not legally entitled to any recovery under the Plan.

(iii)     In consideration for the releases and injunctions provided in section 6.14 of the Plan and to achieve a consensual plan of reorganization, the Secured Lenders have agreed to permit a distribution to general unsecured creditors of value otherwise distributable to the Secured Lenders, to waive any recovery on account of the Secured Lenders' Class 5 deficiency claims, and to waive preference claims under section 547 of the Bankruptcy Code.

(iv)     The Creditors' Committee conducted a thorough investigation as to potential causes of actions against, *inter alia*, the Secured Lenders and the Debtors' officers and directors. Based on such investigation, the willingness of the Secured Lenders to provide a distribution to general unsecured creditors and to achieve a consensual plan of reorganization,

the Creditors' Committee agreed to support the Plan, which provides releases for, among others, the Agent, the Secured Lenders, and the Debtors' officers and directors.

(v) The Plan provides for various releases, exculpations and injunctions. With regard to the releases contained in section 6.14 of the Plan, each holder of an impaired Claim against the Debtors that voted to accept the Plan is deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases, exculpations and injunctions contained in the Plan. Furthermore, the releases, exculpations and injunctions provided in the Plan (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtors, their Estates and their creditors, and are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (iv) are consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code.

CC. <u>Retention of Jurisdiction</u>. The Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

DD. <u>Plan Documents</u>. The Plan Documents, as they may be amended as contemplated and permitted by the Plan, have been negotiated in good faith and are, in the judgment of the parties, necessary and appropriate to effectuate the Plan and the Court so finds.

EE. <u>Exit Credit Facility, New Term Loan Facility, and Fagen Note</u>. The Exit Credit Facility, the New Term Loan Facility, and the Fagen Note are essential elements of the Plan and entry into these documents substantially in the form set forth in the Plan Documents (provided that the Exit Facility and the New Term Facility shall be subject to modification and amendment

prior to the occurrence of the Effective Date in accordance with section 1.3 of the Plan) is in the best interests of the Debtors, their Estates, and their creditors. The Proponents have exercised reasonable business judgment in determining to enter into the Exit Credit Facility, the New Term Loan Facility and the Fagen Note substantially on the terms described therein. The Proponents have provided sufficient and adequate notice of the Exit Credit Facility, the New Term Loan Facility and the Fagen Note to all parties in interest. All documents necessary to implement the Exit Credit Facility, the New Term Loan Facility and the Fagen Note shall, upon execution or as otherwise provided in the Plan, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law. The credit to be extended is the result of arms-length negotiations conducted in good faith. The credit will be made to solvent borrowers, after giving effect to the Plan, for reasonably equivalent value in an arm's-length transaction. In light of the good-faith, arm's-length negotiations between the parties, any pre-funding commitment fees and deposits paid by or on behalf of the borrowers are reasonable and necessary and made by solvent borrowers, after giving effect to the Plan, for reasonably equivalent value. The liens, covenants, and protections afforded to the Exit Facility Agent, the Exit Facility Lenders, the New Term Loan Facility Agent, the New Term Loan Facility Agent, and Fagen are reasonable and necessary for the borrowers to obtain credit and were not given for any improper purpose. The liens and security interests granted to the Exit Facility Agent and the Exit Facility Lenders in the Exit Credit Facility are senior to all other liens and security interests. The Exit Facility Agent, the Exit Facility Lenders, the New Term Loan Facility Agent, the New Term Loan Facility Agent, and Fagen are extending credit under the Exit Credit Facility in reliance on the terms of this Confirmation Order and the Exit Credit Facility, the New Term Loan Facility and the Fagen Note.

## DECREES

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

1. <u>Confirmation</u>. The Plan is approved and confirmed under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement and all other Plan Documents substantially in the form filed with the Court with such changes as may be required by the Agent, the Exit Facility Agent or the New Term Loan Facility Agent, as applicable, at any time up to and including the occurrence of the Effective Date (subject to and in accordance with the Plan) are incorporated by reference into and are an integral part of the Plan and this Confirmation Order. All references to the Plan shall hereby be deemed to refer to the Plan, the Plan Supplement, and the Plan Documents. The Agent, the Exit Facility Agent, the New Term Loan Facility Agent, Fagen, the Debtors and all parties in interest are authorized and directed to carry out, and comply with, the provisions of the Plan and the Plan Documents, and to take all action reasonably necessary to effectuate the Plan and the Plan Documents. The Agent, the Exit Facility Agent and the New Term Loan Facility Agent, in the exercise of their sole and absolute discretion, but subject to and in accordance with the terms of the Plan, are authorized to modify or make additions to or subtractions from the Plan or any exhibit, schedule or appendix to the Plan or any Plan Document until the Confirmation Date; provided, however, that the Plan should not be modified following the Confirmation Date except with Creditors' Committee approval or Court approval.

2. <u>Objections and Stipulations</u>. All Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to Confirmation of the Plan included therein are overruled on the merits. The following stipulations are approved: (i) the *Stipulation By And Among The Debtors, WestLB AG, New York Branch, as Administrative Agent, and*

*Fagen, Inc. (I) Withdrawing Plan Objection; and (II) Changing Vote With Respect to Plan* dated July 14, 2010; and (ii) the *Stipulation By And Among The Debtors, WestLB AG, New York Branch, as Administrative Agent, and ICM, Inc. Withdrawing Objection* dated July 14, 2010.

3. <u>Plan Supplement; Other Plan Documents</u>. The forms, terms and provisions of each of the documents contained in the Plan Supplement, any other Plan Document and any amendments, modifications, or supplements to any Plan Document, all documents and agreements related thereto or to consummation and implementation of the Plan and any other documents or agreements introduced into evidence at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and hereby approved, substantially in the form filed with the Court, including, but not limited to, (a) the New Term Loan Facility, (b) the Long Term Incentive Plan and Stock Option Agreement, (c) the Exit Credit Facility, (d) the Fagen Note, (e) the Shareholders' Agreement, (f) the Amended White Energy Certificate of Incorporation, (g) the Amended White Energy By-Laws, (h) the Amended Certificate of Incorporation or Certificate of Formation, as applicable, of the Reorganized Subsidiaries, and (i) the Amended By-Laws or Operating Agreement, as applicable, of the Reorganized Subsidiaries. After entry of this Confirmation Order, the Prepetition Agent (After Consultation with the Debtors) and the Requisite Secured Lenders shall have the right to modify any Plan Document or other document referred to herein at any time through and including the Effective Date; <u>provided, however</u>, that the Plan should not be modified following the Confirmation Date except with Committee approval or Court approval. Each of the Plan Documents shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms.

4. <u>Settlements and Compromises</u>. The settlements and compromises set forth in the Plan, including settlements and compromises reflected in Section 4.4.4 of the Plan relating to the Fagen Distribution, are approved in all respects.

5. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, jurisdiction over those items and matters set forth in Article XII of the Plan and any related transactions.

6. <u>Long Term Incentive Plan and Stock Option Agreement</u>. Reorganized White Energy, Inc. shall adopt the Long Term Incentive Plan and Stock Option Agreement on the Effective Date. The solicitation of votes on the Plan shall be deemed a solicitation of the holders of New Common Stock for approval of the Long Term Incentive Plan and Stock Option Agreement for purposes of sections 162(m) and 422 of the Internal Revenue Code of 1986, as amended.

7. <u>Officers and Directors</u>. The initial Board of Directors of Reorganized White Energy, Inc. shall be E. Keith Min, Ned Kleinschmidt, Donald E. Gates and Lawrence D. Thompson. The fifth seat on the board of directors shall be reserved for the chief executive officer, once the chief executive officer has been selected by the Board of Directors of Reorganized White Energy, Inc. David Diwik's employment as chief executive officer shall be terminated effective as of the Effective Date and any agreement, if any, between David Diwik and the Debtors shall be rejected pursuant to section 11.1.1 of the Plan.

8.     Intercreditor Agreements To Be Entered into On The Effective Date.  Subject to the terms of the Working Capital Intercreditor Agreement and the Secured Lender Intercreditor Agreement (the "Intercreditor Agreements") to be entered into on the Effective Date by and among Reorganized White Energy Holdings Company, LLC, the Exit Facility Agent, the New Term Loan Facility Agent, Fagen, the Borrowers and the Subsidiaries party to the agreements from time to time (capitalized terms having the respective meanings ascribed to them in the Intercreditor Agreements), the liens and security interests granted under or in respect of the New Term Loans, the New Term Loan Facility, and the Working Capital Facility shall be perfected immediately upon the occurrence of the Effective Date without the necessity of any other or further act or instrument of any kind or nature.

9.     Plan Classification Controlling.    The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

10.     Binding Effect.  Pursuant to section 1141(a) of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise provided in the Plan or this Confirmation Order, the Plan and its provisions (including all Plan Documents) and this Confirmation Order shall be binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Disbursing Agent, (iv) any entity acquiring or receiving property as a distribution under the Plan, and (v) any holder of a Claim against or Equity Interest in the Debtors, including all Governmental Entities, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

11.     Revesting of Assets (11 U.S.C. § 1141(b), (c)).  In accordance with section 6.8 of the Plan, upon the Effective Date, all property of the respective Estate of each Debtor, together

with any property of each Debtor that is not property of its Estate and that is not specifically disposed of or released in the Plan, shall re-vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests (and any and all other rights and claims under other laws whether arising by agreement or statute, including any Claim arising for successor liability, regardless of when such Claim arose), except as specifically provided in the Plan, this Confirmation Order, the documents contained in the Plan Supplement, or any Plan Document, including the Exit Credit Facility, the New Term Loan Facility or the Fagen Note. From and after the Effective Date, the Reorganized Debtors, as applicable, may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

12.     Exemption from Stamp Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code (a) the issuance, transfer, or exchange of any notes, securities, instruments, or documents, (b) the creation of any other Lien, mortgage, deed, trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer from a Debtor to a Reorganized Debtor or any other person or entity under, pursuant to, in furtherance of, or in connection with the Plan including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or the re-vesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan including, without limitation, this Confirmation Order, shall not be subject to any document

recording tax, stamp tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or state governmental unit in which any instrument or document hereunder is to be recorded shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument or document without requiring the payment of any filing fees, documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax or other governmental assessment.

13. Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. §§ 365 and 1123(b)(2)). Pursuant to section 11.1 of the Plan and sections 365(a) and 1123(b)(2) of the Bankruptcy Code, any Executory Contract which (a) is not listed on the Schedule of Assumed Executory Contracts, (b) has not expired by its own terms on or prior to the Effective Date, (c) has not been assumed or rejected with the approval of the Court on or prior to the Effective Date, or (d) is not the subject of a motion to reject the same pending as of the Effective Date, shall be rejected by the applicable Reorganized Debtor effective on the occurrence of the Effective Date; provided, however, that the Prepetition Agent (After Consultation with the Debtors) with the consent of the Requisite Secured Lenders, has the right, on or prior to the Effective Date, to amend the Schedule of Assumed Executory Contracts, to delete any Executory Contract therefrom or add any Executory Contract thereto, in which event such Executory Contract(s) shall be deemed to be rejected or assumed by the Reorganized Debtors, as the case may be. The Reorganized Debtors shall have no liability under such rejected Executory Contracts except as is specifically provided in the Plan and in this Confirmation Order.

14. Cure Amounts in Connection with Assumption. With respect to each such Assumed Executory Contract assumed by a Reorganized Debtor, any monetary amounts required as cure payments shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by

payment of the cure amount in Cash as soon as practicable after and in no event later than thirty (30) days after the latest of: (a) the Effective Date; (b) the date following notice to the Reorganized Debtors of the amount due; (c) the resolution by Final Order of any dispute between the Reorganized Debtor and the other party to the Assumed Executory Contract as to such amounts due; or (d) upon such other terms as may be agreed upon by the non-Debtor party as such Assumed Executory Contract and the Agent, After Consultation with the Debtors, or in each case, as soon thereafter as is practicable, the parties to such Assumed Executory Contract may agree, or, in each case, as soon thereafter as practicable. In the event of a dispute regarding (i) the amount of any Cure Payment, (ii) the ability of the applicable Debtor, Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Assumed Executory Contract or (iii) any other matter pertaining to assumption of the Executory Contract, the Cure Payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such dispute. The Proponents shall provide notice of the proposed assumption of the Executory Contracts and proposed Cure Payment amounts (the "Assumption Notice") to the other party to the Executory Contract (the "Applicable Third Party") within seven (7) days after the Confirmation Hearing; provided, however, that if any Executory Contract is added to the Schedule of Assumed Executory Contracts subsequent to the Confirmation Hearing (but no later than the occurrence of the Effective Date), then the Proponents shall provide the Assumption Notice to the Applicable Third Party within seven (7) days after such Executory Contract is assumed. The Applicable Third Party shall have until twenty (20) days after service of the Assumption Notice to file an objection to the proposed assumption and/or the proposed Cure Amount, absent which such Executory Contract shall automatically become an Assumed

Executory Contract without further order of this Court. In the event an Applicable Third Party files an objection, no monetary amounts required as Cure Payments shall be made until resolution of the dispute by a Final Order of this Court. In the event of a conflict between the notice and objection procedures set forth in sections 11.1 or 11.2 of the Plan and this Confirmation Order, the terms of the Confirmation Order shall control (notwithstanding anything else in the Plan to the contrary).

15.    Intentionally Deleted.

16.    Bar Date for Rejection Damage Claims. Pursuant to section 11.3 of the Plan, if the rejection of an Executory Contract pursuant to section 11.1 of the Plan results in damages to the other party or parties to such Executory Contract, a Claim for such damages, if not heretofore evidenced by a filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or their Estates, assets, properties or interests in properties or against the Reorganized Debtors or their Estates, assets, properties or interests in properties, unless a Proof of Claim is filed with the Court and served upon the Debtors, their counsel and counsel for the Agent within thirty (30) days after the service of (a) notice of entry of the Confirmation Order and (b) other notice that such Executory Contract has been rejected.

17.    Post-Petition Agreements. Any and all agreements entered into by the Debtors after the Petition Date and up to and including the Effective Date, that were outside the ordinary course of business of the Debtors, and were not approved by the Bankruptcy Court, including, without limitation, employment agreements, are null and void and shall have no force or effect.

18.    General Authorizations. Pursuant to section 1142(b) of the Bankruptcy Code, (i) each of the officers of the Debtors and the Reorganized Debtors and (ii) all other necessary and appropriate parties, including, but not limited to the Exit Facility Agent, the Exit Facility

Lenders, the New Term Loan Facility Agent, the New Term Facility Lenders and Fagen, are authorized and empowered to (a) execute, deliver, file or record such contracts, documents, instruments, releases, indentures and other agreements or documents, (b) perform any act that is necessary, required, appropriate or desirable, (c) comply with, effectuate and further evidence the terms and provisions of the Plan, any document contained in the Plan Supplement, and any other Plan Document necessary to consummate the Plan, whether or not specifically referred to in the Plan or any Plan Document, without further order of the Court. In addition, (i) the Debtors, (ii) the Reorganized Debtors, and (iii) all other necessary parties are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan.

19. <u>Securities Laws Exemption</u>. The offering, issuance, distribution and sale by Reorganized White Energy, Inc. and the other Reorganized Debtors of notes (and the guarantees thereof) or equity securities under the Plan are exempt from the provisions of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration or qualification in connection with the offer, issuance, distribution, or sale of a security by reason of section 1145(a) of the Bankruptcy Code. The offering, issuance and distribution and sale by Reorganized White Energy, Inc. and the other Reorganized Debtors of the notes and the related guarantees in connection with the New Term Loan Facility and the Exit Credit Facility in accordance with the Plan are exempt from the provisions of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration or qualification for the offer, issuance, distribution or sale of a security by reason of section 4(2) of the Securities Act of 1933, as amended, and Regulation D promulgated thereunder. Furthermore, the offer, issuance,

distribution and sale of the notes and the related guarantees in connection with the New Term Loan Facility and the Exit Credit Facility are exempt from the Trust Indenture Act of 1939, as amended (the "TIA"), by virtue of Section 304(a)(9) of the TIA, and the offer, issuance, distribution and sale of such notes and guarantees are exempt from the TIA by virtue of Section 304(b) of the TIA because the offer, issuance, distribution and sale of the notes and the related guarantees) are being made only to "accredited investors" within the meaning of Rule 501(a) promulgated under the Securities Act of 1933, as amended.

20. Substantive Consolidation. The substantive consolidation of the Chapter 11 Cases for certain purposes related to the Plan, including, but not limited to, for purposes of voting, confirmation and distribution, is hereby approved. On and after the Effective Date: (a) no Plan Distributions shall be made under the Plan on account of the intercompany claims among the Debtors; (b) all guarantees by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors. The foregoing consolidation of the Debtors, however, shall not (other than for purposes related to funding distributions under the Plan and as set forth above in this paragraph) affect: (a) the legal and organizational structure of the Reorganized Debtors; (b) pre- and post-Petition Date Liens, guarantees and security interests that are required to be maintained (i) in connection with Executory Contracts that were entered into during the Chapter 11 Cases or that have been or will be assumed pursuant to section 365 of the

Bankruptcy Code, (ii) pursuant to the Plan, or (iii) in connection with the Exit Credit Facility, the New Term Loan Facility, the New Term Notes and the Fagen Note; or (c) distributions out of any insurance policies or distributions out of proceeds of such policies. As of the Effective Date, each of the Reorganized Debtors shall be deemed to be properly capitalized, legally separate and distinct entities.

21.     Governmental Approvals Not Required.  This Confirmation Order shall constitute all of the approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, any document contained in the Plan Supplement, any other Plan Document, and any documents, instruments, or agreements, and any amendments or modifications thereto.     Pursuant to Article VI of the Plan, Reorganized White Energy, Inc. is hereby authorized to execute and file the Amended White Energy Certificate of Incorporation and the Amended White Energy By-Laws with and shall be accepted by the Secretary of the State of Delaware and recorded in accordance with section 103 of the Delaware Corporation Law and shall thereupon become effective in accordance with its terms and the provisions of the Delaware Corporation Law.  In addition, each of the Subsidiaries that is a limited liability company shall file its amendment to its formation documents with the Secretary of State of its jurisdiction of organization or formation, as applicable, on the Effective Date.

22.     Exit Credit Facility and New Term Loan Facility.  The Exit Facility Agent, the Exit Facility Lenders, the New Term Loan Facility Agent, and the New Term Loan Facility Lenders are good-faith lenders under 11 U.S.C. § 364.  The provisions of the Exit Credit Facility

and the New Term Loan Facility are approved in their entirety. The Debtors and the Reorganized Debtors are hereby authorized to execute any documents required to effectuate the Exit Credit Facility and the New Term Loan Facility without further approval of the board of directors of the Debtors or the Reorganized Debtors. The Debtors, the Reorganized Debtors, the Exit Facility Agent and the New Term Loan Facility Agent are authorized to file any necessary terminations and releases related to the Exit Credit Facility and the New Term Loan Facility without any consent from third parties. The Exit Credit Facility and the New Term Loan Facility shall constitute legal, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Credit Facility and the New Term Loan Facility shall be deemed to be approved and shall be legal, binding and enforceable Liens on the collateral granted thereunder. In furtherance of the foregoing, the Reorganized Debtors and any other person granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of any state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that would be necessary under applicable law to give notice of such Liens and security interests to third parties. The Liens and security interests granted to the Exit Facility Agent and the Exit Facility Lenders in the Exit Credit Facility are hereby senior to all other Liens and security interests and perfected upon entry of the Confirmation Order and the advance of funds under the Exit Credit Facility.

23.    New LLC Agreement.    If a holder of a Secured Claim does not execute the New LLC Agreement on or before the 90th day following the Effective Date, then such Secured

Lender shall be deemed to have waived its interests in the Class 2 New Common Stock and waived its membership interest in the New LLC.

24. Stockholders' Agreement. The provisions of the Stockholders' Agreement are approved in their entirety. The Stockholders' Agreement shall be a valid, binding, and enforceable agreement not in conflict with any federal or state law, and all provisions of the Stockholders' Agreement shall be effective and binding upon Fagen.

25. Fagen Note. The provisions of the Fagen Note and related documents effectuating the settlement with Fagen are approved in their entirety. The Debtors and the Reorganized Debtors are hereby authorized to execute any documents, including the Fagen Note, required to effectuate the settlement with Fagen without further approval of the board of directors of the Debtors or the Reorganized Debtors. The Fagen Note shall constitute a legal, binding and authorized obligation of the Reorganized Debtors, enforceable in accordance with its terms.

26. Acceptance and Execution of Plan Documents. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan, the documents contained in the Plan Supplement, and all other Plan Documents including, without limitation, documents and instruments for recording in county and state offices where any Plan Document may need to be filed in order to effectuate the Plan or to perfect the Lien and security interest under the New Term Loan Facility and the Exit Credit Facility.

27. Equity Interests. Each holder of a Subsidiary Equity Interest will retain its Subsidiary Equity Interest. On the Effective Date, all Preferred White Energy Equity Interests and all Common White Energy Equity Interests shall be deemed cancelled and extinguished,

without the necessity of holders of Equity Interests to surrender their certificates or other instruments evidencing ownership of such Equity Interests.

28.     Dissolution of Creditors' Committee.   The Creditors' Committee will dissolve and its members shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases on the Effective Date. The Creditors' Committee's professionals will have standing and the right to be heard on their final fee applications after the Effective Date.

29.     Disbursing Agent.   Upon the occurrence of the Effective Date, Reorganized White Energy, Inc. shall be appointed to serve as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan. Pursuant to the terms and provisions of and except as otherwise provided in the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Plan Distribution Date therefor.

30.     Payment of Fees.   All fees payable by the Debtors on or before the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors on or before the Effective Date and all such fees payable thereafter shall be paid by the Reorganized Debtors.

31.     Final Fee Applications.   Pursuant to sections 2.3, 2.4 and 2.5 of the Plan, all entities employed in the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code or otherwise, including the professionals seeking compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code, for services rendered to the Debtors and the Creditors' Committee prior to the Effective Date and Claims for making a substantial contribution under

section 503(b)(4) of the Bankruptcy Code must be filed and served on the Reorganized Debtors, their counsel, the Agent and its counsel not later than forty-five (45) days after the Effective Date; such fees, expenses and claims shall be paid in full in such amounts as are allowed by the Court (i) upon the later of (A) the Distribution Date and (B) the date upon which a Final Order relating to the allowance of any such Administrative Expense Claim is entered. The Debtors are not authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date unless such payment shall be upon application to and approved by the Court.

32. Discharge of Claims and Termination of Equity Interests. Pursuant to section 13.5 of the Plan, except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and Plan Distributions to be made under the Plan and this Confirmation Order shall (i) completely satisfy and discharge all debts and Claims that arose at any time before the Effective Date including, but not limited to, any debt of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, and (ii) terminate all Equity Interests, of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141(d)(1) of the Bankruptcy Code; *provided, however*, that each holder of a Subsidiary Equity Interest will retain its Subsidiary Equity Interest and will not receive any Plan Distribution. Except as otherwise provided in the Plan or this Confirmation Order, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in and any and all alter-ego or derivative claims against present or former stockholders of any Debtor, shall be, and shall be deemed to be, discharged, satisfied, released, terminated and extinguished in full, and all holders of Claims against the Debtors and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors and

assigns, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not (i) such holder has filed a Proof of Claim or proof of Equity Interest, (ii) such holders Claim or Equity Interest is allowed under section 502 of the Bankruptcy Code, (iii) the holder of such Claim or Equity Interest has voted to accept the Plan or (iv) the facts or legal bases surrounding such holders Claim or Equity Interest were known or existed prior to the Effective Date.

33.     Injunction. Each Person that is a holder of a Claim and/or an Equity Interest and any other party in interest that voted to accept the Plan and each of their respective Related Persons is permanently, forever and completed stayed, restrained, prohibited and enjoined from, directly or indirectly, derivatively or otherwise, commencing or continuing any Released Action against any Released Party or any of their Related Persons. Nothing herein shall prejudice any right, remedy, defense, claim, cross-claim or counterclaim or third-party claim that any Person may have against any Person other than with respect to the Released Actions against the Released Parties or any of their Related Persons.

34.     Automatic Stay. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code (the "Automatic Stay"), or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the occurrence of the Effective Date. Subject to the injunctive relief contained in the Plan and herein on the Effective Date, the Automatic Stay shall be dissolved and of no further force or effect.

35.     Releases and Injunctions. The release and injunction provisions contained in section 6.14 of the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their Estates, and such provisions are hereby approved and shall

be effective and binding upon all persons and entities. All holders of Claims and Equity Interests and other parties in interest that voted to accept the Plan, along with their respective present or former employers, agents, officers, directors or principals, shall hereby be permanently and forever barred, restrained and enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

36. Except as otherwise provided in the Plan, the Disbursing Agent, together with its officers, directors, employees, agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained herein shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.

37. None of the Agent, the Exit Facility Agent, the Secured Lenders, the Creditors' Committee, the Debtors or the Reorganized Debtors or any of their respective Related Parties, officers, directors, members, employees, agents, representatives, advisors, attorneys or

successors and assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, (a) the filing and prosecution of the Chapter 11 Cases, (b) the negotiation, filing and pursuit of approval of the Disclosure Statement, (c) the negotiation, filing and pursuit of confirmation of the Plan, (d) the consummation of the Plan, or (e) the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects shall be entitled to rely up on the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.

38. Retention of Causes of Action. Pursuant to section 6.13 of the Plan, no Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Disbursing Agent will not pursue any and all available Causes of Action against them. The Debtors, the Disbursing Agent and the Estates expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan. Nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Debtors or the Disbursing Agent may choose to assert on behalf of the Debtors' respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including (i) any and all Claims against any Person, to the extent such Person asserts a Claim, cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, the Reorganized Debtors, their officers, directors or representatives and (ii) the turnover of any property of any of the Debtors' Estates or the Reorganized Debtors' estates. The Disbursing

Agent is hereby appointed representative as the to the Reorganized Debtors, and may pursue, litigate, compromise, settle, transfer or assign any such rights, claims, causes of action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successors who hold such rights. Notwithstanding the foregoing, all Claims and Causes of Action under section 547 of the Bankruptcy Code are hereby waived and released.

39. <u>Cancellation of Existing Securities and Agreements</u>. Pursuant to section 13.3 of the Plan, except for purposes of evidencing a right to distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim against any of the Debtors, notes and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be canceled and terminated and deemed null and void, satisfied and discharged and of no further force and effect as against any of the Debtors or the Reorganized Debtors, *provided, however*, that the provisions of the Credit Agreement governing the relationship of the Agent and the Secured Lenders, including, but not limited to, those provisions relating to the Agent's rights of indemnification from the Secured Lenders, shall not be affected by and shall survive the Plan, entry of this Confirmation Order and the occurrence of the Effective Date.

40. <u>Non-Occurrence of Effective Date</u>. In the event the Effective Date does not occur, and upon written notification submitted by the Debtors to the Court, (a) the Confirmation Order shall be vacated; (b) no distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan, the Disclosure Statement or the documents

contained in the Plan Supplement, or other Plan Documents shall be deemed to (i) constitute a waiver or release of any claims by or against the Debtors or any other entity, (ii) prejudice in any manner the rights of the Debtors, the Agent, the Secured Lenders, the Creditors' Committee, or any other entity in any further proceedings involving the Debtors, or (iii) constitute or be deemed to constitute an admission, acknowledgment, offer or undertaking by the Debtors or any other Person in any respect.

41. <u>Notice of Entry of Confirmation Order</u>. On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of this Confirmation Order (the "<u>Notice of Confirmation</u>"), to be delivered to such parties by first-class mail, postage prepaid. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

42. <u>Notice of Effective Date</u>. Within ten (10) Business Days following the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on those entities listed in Bankruptcy Rule 3020(c).

43. <u>Administrative Claim Bar Date</u>. All requests for payment of an Administrative Claim (other than (i) Administrative Claims incurred by the Debtors in the ordinary course of business after the Petition Date, (ii) Administrative Claims that have been Allowed by order of the Court on or before the Effective Date, (iii) Section 503(b)(9) Claims and other Administrative Claims for which a Proof of Claim was filed on or before the Bar Date, and (iv) fees or charges assessed by the Debtors under section 1930 of title 28 of the United States

Code) must be filed with the Court and served on counsel for the Debtors, the Creditors' Committee, counsel for the Agent and the U.S. Trustee not later than (x) thirty (30) days after service of the Notice of Confirmation, in the case of requests for payment of Administrative Claims other than Fee Claims (the "General Administrative Claim Bar Date") and (y) forty-five (45) days after the Effective Date (the "Final Fee Application Bar Date"), in the case of Final Fee Applications seeking payment of Fee Claims; *provided, however*, that (A) any Section 503(b)(9) Claim or other Administrative Claim that was required pursuant to the terms of the Bar Date Order to be filed on or before the Bar Date and was not filed on or before the Bar Date is barred based on the Bar Date Order and shall remain forever barred and discharged; and (B) any Administrative Claim or Fee Claim that is not filed on or before the applicable Administrative Claim Bar Date shall result in such Administrative Claim or Fee Claim being forever barred and discharged (the General Administrative Claim Bar Date and the Final Fee Application Bar Date shall be collectively referred to herein as the "Administrative Claim Bar Date"). Unless the Debtors and/or the Prepetition Agent object in whole or in part to a timely filed request for payment of an Administrative Claim within sixty (60) days after the Effective Date, such request for payment of an Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtors and/or the Agent object to a request for payment of an Administrative Claim in whole or in part, the Court shall determine the Allowed amount of such Administrative Claim and the requested Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Final Fee Application has been properly and timely filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an

Administrative Claim which is paid or payable by a Debtor in the ordinary course of business or by order of this Court.

44.     Effective Date. On the Effective Date, (i) all necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan; (ii) all agreements and other instruments that are exhibits to the Plan, Plan Documents or otherwise included in the Plan Supplement shall be acceptable to the Requisite Secured Lenders and the Prepetition Agent (After Consultation with the Debtors), each in the exercise of its sole and absolute discretion; (iii) the Exit Credit Facility shall have been entered into and all conditions to the initial draw thereunder shall have been satisfied in accordance with the terms thereof; (iv) the New Term Loan Facility shall have been entered into by all of the parties thereto, and the New Term Loan Notes shall have been issued thereunder; (v) the Fagen Note shall have been issued to the holder of the Fagen Claim and the Fagen Equity Distribution issued to the holder of the Fagen Claims; (v) the New Common Stock to be issued under the Plan shall have been duly authorized and, upon issuance, shall be validly issued and outstanding; (vi) the New LLC shall have been formed by filing a certificate of formation with the Delaware Secretary of State; (vii) all fees, reasonable costs and expenses of the Prepetition Agent incurred under the Credit Agreement on or prior to the Effective Date shall have been paid in full; (viii) the Stockholders' Agreement shall have been entered into by all the parties thereto; and (ix) the deposit of Cash required by section 4.6.5 of the Plan shall have been made. Upon the occurrence of the Effective Date, the Plan shall be deemed substantially consummated.

45.     References to Plan Provisions. The failure specifically to include or reference any particular provision of the Plan or any particular document in the Plan Supplement, or any other Plan Document in this Confirmation Order, shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the Plan be confirmed (including the documents in the Plan Supplement and any other Plan Document) in its entirety.

46.     Modification, Vacatur or Reversal of Confirmation Order. If any provision of this Confirmation Order is hereafter modified, vacated or reversed by subsequent order of the Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order; nor shall such reversal, modification or vacatur hereof affect the validity or enforceability of such acts or obligations. Notwithstanding any reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and of the Plan and the documents contained in the Plan Supplement and all other Plan Documents, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

47.     Conflicts Between Confirmation Order and Plan. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, in the event there is any inconsistency, discrepancy or conflict between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and control.

48.     Conflicts Between the Plan, Disclosure Statement and Plan Documents. In the event there is any inconsistency, discrepancy or conflict between (a) the terms and provisions of the Plan and the terms and provisions of the Disclosure Statement or (b) the terms and provisions

of the Plan and any document contained in the Plan Supplement, or any other Plan Document, the terms and provisions of the Plan shall control and govern, *provided, however*, in the event there is any inconsistency, discrepancy or conflict between the terms and provisions of the Plan and the terms and provisions of the Exit Credit Facility, the New Term Loan Facility, or any other Plan Document, the terms and provisions of the Exit Credit Facility, the New Term Loan Facility or such other Plan Document, as applicable, shall control and govern.

49.     Further Assurances.  The Debtors, the Reorganized Debtors and all holders of Claims and Equity Interests receiving Plan Distributions under this Plan and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan, the documents contained in the Plan Supplement, and all other Plan Documents.

50.     Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, the documents contained in the Plan Supplement, and all other Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

51.     Final Order. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon entry hereof. Notwithstanding Fed. R. Bank. P. 3020(e), 6004(h), 6006(d) and 7062 to the extent applicable, the Court finds that there is no reason for delay in the implementation of this Confirmation Order and thus this Confirmation Order shall be effective and enforceable immediately upon entry.

Dated:  Wilmington, Delaware
        July 15, 2010

 

        HONORABLE CHRISTOPHER C. SONTCHI
        UNITED STATES BANKRUPTCY JUDGE